**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI-DADE DIVISION**

**CASE NO. 11-21233-CIV-ALTONAGA/Simonton**

RAY WILLIAMS; LUIS JUAREZ;
and MIGDALLAH JUAREZ, on behalf of
themselves and all others similarly situated,

        Plaintiffs,

v.

WELLS FARGO FINANCIAL INC.;
WELLS FARGO FINANCIAL AGENCY CO.;
WELLS FARGO FINANCIAL AMERICA INC.;
WELLS FARGO FINANCIAL FLORIDA INC.;
WELLS FARGO SERVICING SOLUTIONS, LLC;
WELLS FARGO FINANCIAL LEASING INC.;
WELLS FARGO FINANCIAL SYSTEM FLORIDA INC.;
WELLS FARGO INSURANCE;
QBE INSURANCE CORPORATION; and
STERLING NATIONAL INSURANCE AGENCY,

        Defendants.
_____/

**DEFENDANTS QBE INSURANCE CORP. AND QBE FIRST INSURANCE
AGENCY, INC.'S (F/K/A STERLING NATIONAL INSURANCE AGENCY,
<u>INC.) MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF LAW</u>**

Defendants QBE Insurance Corp. and QBE FIRST Insurance Agency, Inc. (f/k/a Sterling National Insurance Agency, Inc.) (together, "QBE" or the "QBE Defendants"), respectfully move this Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss all claims in the Complaint against QBE.  The grounds for this motion are:

1. Plaintiffs have failed to state a claim for breach of an implied covenant of good faith and fair dealing and failed to state a claim for unconscionability because there was no contractual relationship between Plaintiffs and QBE, nor have Plaintiffs alleged such a relationship.

2. Plaintiffs have failed to state a claim under Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201 *et seq.* (West 1973) ("FDUTPA"), because the statute does not apply to QBE's business activity and Plaintiffs have failed to plead factual allegations with the requisite specificity to survive a motion to dismiss.

3. Plaintiffs have failed to state a claim under section 8 of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607 (1974), because QBE's business activity was not incident to or a part of a real estate settlement service, was not a result of a referral, Plaintiffs' claim is barred by the statute of limitations, and Plaintiffs have otherwise failed to plead factual allegations with the requisite specificity to survive a motion to dismiss.

4. Plaintiffs have failed to state a claim for unjust enrichment because Plaintiffs have not alleged, and cannot allege, that QBE received a benefit from Plaintiffs, or received a benefit from Plaintiffs without adequate consideration.

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

The totality of Plaintiffs' allegations are premised on contractual relationships that do not exist. Most significantly, the named Wells Fargo entities (collectively, "Wells Fargo" or the "Wells Fargo Defendants") did not originate or service Plaintiffs' loans.[1] Accordingly, the relationship alleged – that the QBE Defendants engaged in wrongdoing by placing insurance on loans serviced by the Wells Fargo Defendants – is, quite simply, Plaintiffs' invention. As a result, the facts alleged by Plaintiffs yield a putative class with exactly zero members.

Putting aside Plaintiffs' fatal pleading problems regarding the named parties, Plaintiffs have failed to state a claim against QBE because they have failed to plead a contractual relationship between themselves and the QBE Defendants and therefore they do not allege the facts necessary to prevail on their contractual claims. For this reason, Plaintiffs' breach of an implied covenant of good faith and fair dealing and unconscionability claims, which are rooted in a contractual relationship which Plaintiffs do not allege, should be dismissed. Plaintiffs' statutory allegations are similarly misplaced. QBE is not subject to liability under FDUTPA and Plaintiffs' related allegations are insufficient to meet the required Federal Rule of Civil

---

[1] Plaintiffs' loans were not serviced by Wells Fargo Financial, Inc., or any other named Wells Fargo Defendant, but instead by Wells Fargo Home Mortgage, an entity wholly distinct from the named Defendants.

2

Procedure 9(b) pleading standard.  Plaintiffs have failed to state a claim against QBE under section 8 of RESPA because they do not adequately allege that QBE received referrals for business incident to or a part of a real estate settlement service and their allegations are otherwise barred by the statute of limitations and insufficient to sustain a cause of action against QBE. Finally, Plaintiffs' unjust enrichment claim should be dismissed because Plaintiffs have not alleged that the QBE Defendants received a benefit without consideration, as required by well-established Florida case law.

## BACKGROUND

When Plaintiffs obtained the mortgages that are the subject of this case, they entered into a contract with their mortgage lender and agreed to maintain homeowners insurance on their properties to protect their own interests in the mortgaged properties as well as those of the lender, Wachovia and later Wells Fargo Home Mortgage ("WFHM"), neither of whom is named in this action.  (*See* Pls.' Compl., Docket 1 at ¶¶ 45, 55 (S.D. Fla. filed April 7, 2011) ("Compl.").)  Plaintiffs do not dispute that they were obligated to maintain continuous insurance coverage, and they admit that their loan servicer had the authority to place hazard insurance on the mortgaged properties if the borrowers failed to fulfill their obligations to provide continuous coverage.  (Compl. ¶ 44.)  These standard mortgage provisions are authorized by state statute. *See, e.g.*, Fla. Stat. Ann. § 655.946 (West 1992).  Plaintiffs also admit that their loan documents informed them that the insurance provided by their servicer, known as lender-placed or force-placed insurance ("LPI"), likely would be more expensive than a "voluntary" insurance policy that they could obtain on their own.  (Compl. ¶ 69.)

To identify which properties in a lender's portfolio are not adequately insured, servicers, here WFHM, hire third parties, such as QBE, to monitor individual properties and send borrowers notifications when their insurance has lapsed.  These notifications are sent in addition to the lapse/cancellation notices borrowers receive from their own insurance companies.  (*See* Compl. ¶¶ 50, 52, 61, 64.)  QBE employees also contact the insurance agent or borrower directly to confirm a suspected lapse before any charges accrue.  In Florida, QBE also generally attempts to call borrowers to encourage them to obtain voluntary policies to avoid the increased premium cost associated with LPI.

Pursuant to QBE's service contracts with WFHM, upon a lapse of voluntary coverage, the property is insured automatically, even if the property is damaged or otherwise uninsurable

3

by voluntary insurers, and even if WFHM or QBE are unaware of the lapse.  Indeed, should the property be destroyed at any time on or after the day after a borrower's voluntary policy lapses, the property is insured and the mortgagor is protected without having taken any action to protect himself.  Notably, the servicer, not the borrower, is assessed the annual premium by QBE.  The loan documents, to which the lender and borrower are parties and to which QBE is not a party, specifically authorize the loan servicer to bill the borrower for the LPI premiums.

LPI coverage is in place only for the minimum period necessary.  Once the borrower obtains voluntary (rather then lender-placed) coverage, the LPI is cancelled and unearned premiums are reimbursed from the date that voluntary coverage was reinstated, regardless of when the borrower provides notification that such voluntary coverage was reinstated.

QBE provides a critical service to protect borrowers and lenders from the risks of damage or destruction when borrowers fail to maintain the hazard insurance required on their properties by their mortgage documents.  LPI is intended as a stop-gap when borrowers have failed to heed the multiple notifications provided to them by their voluntary insurance provider and by their servicer, through QBE, to obtain a policy of their own choosing to replace their lapsed policy.  Absent this stop-gap coverage, borrowers would be subject to financial devastation and ruin in the event of damage or destruction to their home.  Moreover, lenders would not lend money without this failsafe protection.

## **PLAINTIFFS' ALLEGATIONS**[2]

Plaintiff Williams obtained a mortgage from Wachovia Bank and servicing responsibility was later transferred to WFHM.  (Compl. ¶ 45.)  On October 17, 2010, Williams' hazard insurance, which was required by his mortgage, lapsed.  (Compl. ¶ 46.)  Williams was able to secure new hazard insurance on November 15, 2010, but the property was not insured by a voluntary policy between October 17 and November 15, 2010.  (Compl. ¶ 47.)  Williams' mortgage required continuous coverage throughout its duration.  (Compl. ¶ 44.)  Williams does not allege that he notified Wells Fargo when his new insurance coverage was in place.

On December 27, 2010, Williams received notice from QBE that the LPI policy, which had been placed on his property due to the lapse, and cancelled after Williams tendered proof that he had obtained voluntary insurance to cover the mortgaged property, had dates of coverage

---

[2] These allegations are taken from Plaintiffs' Complaint.  Defendants do not admit them by including them here, but merely reference them for purposes of resolving this motion.

of October 17, 2010 to November 15, 2010 and listed the *pro rata* premium for that period of coverage. (Compl. ¶ 50; *see also* Ex. 1 to the Michael Seminario Declaration ("Seminario Decl.").)[3] It is also relevant that Williams actually received at least three notices prior to December 27 informing him that temporary insurance had been issued on the property effective October 17, 2010 and requesting proof of voluntary insurance coverage for the property.[4] In these notices, Williams was reminded that he had the right to purchase his own hazard insurance independently, and in fact was encouraged to do so, and reminded that if he did not, the insurance obtained for his property would be through Wells Fargo Insurance, Inc., a licensed insurance agency and an affiliate of Wells Fargo Bank, N.A. (Seminario Decl. Ex. 3.) The notices also stated that Wells Fargo Insurance, Inc. would receive a commission on that insurance policy. (*Id.*)

The Juarez Plaintiffs obtained a mortgage from Wachovia Bank, and the servicing responsibility was subsequently transferred to WFHM. (Compl. ¶ 55.) The Juarezes' mortgage required continuous hazard insurance coverage throughout its duration. (Compl. ¶ 44.) On March 3, 2010, the existing insurance coverage lapsed. (Compl. ¶ 56.) On May 11, 2010, WFHM sent the Juarezes a notice indicating that its records reflected an expiration of insurance coverage and there had been no notification of a replacement policy. (Seminario Decl. Ex. 6.)

---

[3] This Court may properly consider the underlying documents in this action without converting this motion to dismiss into a motion for summary judgment because the documents are referenced in Plaintiffs' complaint and are integral to understanding Plaintiffs' allegations. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (stating that documents incorporated by reference in a complaint can be considered on a Rule 12(b)(6) motion to dismiss); *Halmos v. Bomardier Aerospace Corp.*, 404 F. App'x 376, 377 (11th Cir. 2010) (on a motion to dismiss, the court primarily considers the allegations in the complaint but is not necessarily limited to the four corners of the complaint); *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (holding that there was no error when the district court considered a contract that was central to the dispute on a motion to dismiss). Indeed, the Eleventh Circuit has noted that the rules for considering 12(b)(6) motions permit consideration of allegations within their context. *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999).

[4] On November 1, 2010, Wells Fargo sent Williams a notice indicating that it had come to its attention that it did not have a current insurance policy for Williams' property. (Seminario Decl. Ex. 2.) The notice requested that Williams send proof of his current policy immediately. (*Id.*) On December 2, 2010, Wells Fargo sent Williams a notice informing him that temporary insurance had been issued on the property effective October 17, 2010. (Seminario Decl. Ex. 3.) On that same day, QBE also sent a "90-Day Binder" to Williams, which specified the policy term of October 17, 2010 through October 17, 2011, and listed all applicable premiums and fees that would be assessed for that coverage. (Seminario Decl. Ex. 4.) On December 13, 2010, QBE sent Williams a notice indicating that the LPI policy, which had been placed on his property due to the lapse in voluntary coverage, was cancelled after Williams tendered proof that he had obtained voluntary insurance to cover the mortgaged property. (Seminario Decl. Ex. 5.) That notice listed the effective dates of coverage and the *pro rata* share of the annual premium. (*Id.*)

5

Thereafter, Mr. Juarez contacted Wells Fargo stating that his insurance had lapsed and that he was working on repairing his roof to obtain new insurance. (Compl. ¶ 57.)

Not having received evidence of any insurance coverage, on June 10, 2010, WFHM sent the Juarezes a notice stating that temporary insurance had been obtained effective March 3, 2010. (Seminario Decl. Ex. 7.) On that same day, QBE sent the Juarezes a notice listing the coverage dates for the LPI policy as March 3, 2010 to March 3, 2011 and listed the corresponding premium for the coverage. (Seminario Decl. Ex. 8.) On July 16, 2010, Wells Fargo sent another explanatory notice and QBE sent the Juarezes the additional insured certificate listing the same coverage dates and corresponding premium. (Compl. ¶ 61; Seminario Decl. Exs. 9, 10.) In August 2010, Mr. Juarez obtained his own insurance and remitted proof of the insurance to Wells Fargo. (Compl. ¶ 58.) The LPI policy was then cancelled and the unearned premium reimbursed from the date of the inception date of the voluntary policy. (Seminario Decl. Ex. 11.)

## MOTION TO DISMISS STANDARD

To survive a motion to dismiss, a plaintiff's pleadings must contain factual allegations that are "enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, a plaintiff's claim must be "plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). While the allegations in the complaint are assumed to be true, the allegations must amount to more than mere labels and conclusions or a mere formulaic recitation of the elements of a cause of action. *Twombly*, 550 U.S. at 545. Legal conclusions are not entitled to an assumption of truth. *Iqbal*, 129 S. Ct. at 1949-50.

## ARGUMENT

Plaintiffs' Complaint against the QBE Defendants should be dismissed for several independent reasons. Plaintiffs' contract-based causes of action should be dismissed for failure to allege a contractual relationship between Plaintiffs and the QBE Defendants. Plaintiffs' statutory causes of action should be dismissed because QBE's business activities do not fall within the scope of the statutes, Plaintiffs claim is barred by the statute of limitations and because Plaintiffs have otherwise failed to plead factual allegations that raise their right to relief against QBE above the speculative level. Finally, Plaintiffs' unjust enrichment claim fails because Plaintiffs have not alleged that QBE received a benefit without conferring consideration.

## I.      Plaintiffs' Contract-Based Claims Should Be Dismissed As To QBE For Lack Of A Contractual Relationship.

Plaintiffs have not alleged the existence of a contractual relationship between themselves and QBE. Nor could they; Plaintiffs' only contractual relationships were between themselves and their mortgage lender, Wachovia, and/or their mortgage servicer, WFHM. (*See* Compl. ¶¶ 103, 105, 120.) As a result, Plaintiffs have failed to state a claim against QBE for breach of an implied covenant of good faith and fair dealing and for unconscionability because these claims can be properly pled only where a contractual relationship exists. *See Twombly*, 550 U.S. at 558 ("when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure and money by the parties and the court" (internal quotations omitted, alteration in the original)). Counts I and III should therefore be dismissed as to QBE.

### A.      Plaintiffs Have Failed to State A Claim That QBE Breached An Implied Covenant Of Good Faith And Fair Dealing.

Under Florida law, there is no independent cause of action for breach of an implied covenant of good faith and fair dealing. *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1316-17 (11th Cir. 1999) (citing *City of Riviera Beach v. John's Towing*, 691 So. 2d 519, 521 (Fla. Dist. Ct. App. 1997); *Hospital Corp. of America v. Florida Medical Ctr., Inc.*, 710 So. 2d 573, 575 (Fla. Dist. Ct. App. 1998)); *Barnes v. Diamond Aircraft Indus., Inc.*, 499 F. Supp. 2d 1311, 1320 (S.D. Fla. 2007) (citing *Ins. Concepts and Design, Inc. v. Healthplan Servs., Inc.*, 785 So. 2d 1232, 1234 (Fla. Dist. Ct. App. 2001)). Rather, the covenant is an implied duty that arises out of the contractual obligations of each party to a contract. *Burger King Corp.*, 169 F.3d at 1316-17. Where there is no allegation of breach of an express provision of the contract, there can be no claim of breach of a covenant of good faith and fair dealing. *Id.* at 1316-18 (holding that the plaintiff's claim failed because he did not cite an express provision of the agreement that had been breached); *Barnes*, 499 F. Supp. 2d at 1320. Accordingly, where there is no contract between the parties, there can be no breach of an implied covenant of good faith and fair dealing. *See Shibata v. Lim*, 133 F. Supp. 2d 1311, 1319 (M.D. Fla. 2000) (stating that plaintiff must "demonstrate a failure or refusal to discharge contractual responsibilities" which, among other things, deprives the plaintiff of the benefits of the agreement).

7

Because Plaintiffs have not pled a contractual relationship between themselves and QBE and because Plaintiffs' contractual relationships were with their mortgage lender and servicer, and not with QBE, (Compl. ¶¶ 103-104), Plaintiffs have failed to state a claim against QBE for breach of an implied covenant of good faith and fair dealing. *See Intercoastal Realty, Inc. v. Tracy*, 706 F. Supp. 2d 1325, 1335-36 (S.D. Fla. 2010) (dismissing claim of breach of implied covenant of good faith and fair dealing because Plaintiff did not adequately allege a breach of contract); *see also Iqbal*, 129 S. Ct. at 1952 (dismissing claim because factual allegations were insufficient to meet the elements of the cause of action). Indeed, none of the methods Plaintiffs list in which the Defendants allegedly breached a duty of good faith and fair dealing relate to the QBE Defendants. (*See* Compl. ¶ 105.) Accordingly, this count should be dismissed.[5]

> B. **Plaintiffs Have Failed to State A Claim Of Unconscionable Actions by QBE.**

As with the breach of an implied covenant of good faith and fair dealing, unconscionability is a claim based in contract. A claim of unconscionability is made by a party attempting to avoid enforcement of the contract as a whole or certain terms of the contract. *See, e.g., Gainsville Health Care Ctr., Inc. v. Weston*, 857 So. 2d 278, 284 (Fla. Dist. Ct. App. 2003). Where, as here, there is no allegation of a contractual relationship, and indeed the parties never entered into a contract, a claim of unconscionabilty cannot be sustained. *See State v. De Anza Corp.*, 416 So. 2d 1173 (Fla. Dist. Ct. App. 1982) (affirming dismissal of unconscionability claim because plaintiff did not allege a contract); *see also Gainsville Health Care Ctr., Inc.*, 857 So. 2d at 284 (requiring *a contract* to be both procedurally and substantively unconscionable to be held unenforceable). Plaintiffs have not asserted, and cannot assert, a contractual relationship between themselves and QBE. Indeed, the Complaint cites to the mortgage instrument, to which QBE was not a party, and does not cite any other agreements. (Compl. ¶¶ 120, 123-124.) As a result, Plaintiffs have failed to state a claim of unconscionability against QBE.

> II. **Plaintiffs' Statutory Claims Against QBE**
>
> **Should Be Dismissed For Failure To State A Claim.**

Plaintiffs assert that all of the Defendants, including the QBE Defendants, violated FDUTPA and RESPA. These claims fail, however, because (1) FDUTPA does not apply to the

---

[5] No Florida court has recognized a common law action for breach of good faith and fair dealing in the first party property insurance context. The question is currently certified before the Florida Supreme Court. *See Chalfonte Condo. Apartment Ass'n, Inc. v. QBE Ins. Corp.*, 561 F.3d 1267 (11th Cir. 2009) (certifying questions to the Florida Supreme Court, which are being considered as Case No. SC09-441).

8

QBE Defendants, which are entities regulated by the laws overseen by the Florida Office of Insurance Regulation ("OIR"); (2) Plaintiffs have not alleged and cannot show that QBE's business activity is a result of referrals for real estate settlement services; (3) Plaintiffs' RESPA claim is barred by the statute of limitations, and (4) Plaintiffs' allegations are otherwise insufficient to state a claim under either FDUTPA or section 8 of RESPA.

### A. Plaintiffs' FDUTPA Claim Should Be Dismissed As To QBE Because It Does Not Apply To Persons Or Activities Regulated By The Office Of Insurance Regulation.

Plaintiffs assert a cause of action against all the Defendants for allegedly violating FDUTPA. Plaintiffs' claim fails as to QBE, however, because QBE's activity is regulated under the laws administered by the OIR, and FDUTPA does not apply to activity so regulated. Furthermore, Plaintiffs allegations lack the specificity required to maintain a FDUTPA claim. Accordingly, Plaintiffs' Count V, which was asserted only as to the putative Florida subclass, should be dismissed.

#### 1. Plaintiffs' FDUTPA Claim Does Not Apply to QBE.

FDUTPA states that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Fla. Stat. Ann. § 501.204. This statutory structure does not apply, however, to "[a]ny person or activity regulated under laws administered by [t]he Office of Insurance Regulation of the Financial Services Commission." Fla. Stat. Ann. § 501.212(4)(a). Accordingly, it does not apply to QBE. *See, e.g.*, Fla. Stat. Ann. §§ 626.919, 626.921. Thus, Plaintiffs' FDUTPA claim should be dismissed as to QBE. *See Zarrella v. Pacific Life Ins. Co.*, 755 F. Supp. 2d 1218, 1226 (S.D. Fla. 2010) (dismissing FDUTPA claim because the statute does not apply to insurance companies); *Int'l Brokerage & Surplus Lines, Inc. v. Liberty Mut. Ins. Cos.*, No. 8:06-cv-104-T-30MSS, 2007 WL 220172, at *9 (M.D. Fla. Jan. 26, 2007) (dismissing FDUTPA claim asserted against an entity providing insurance related services and coverage).

#### 2. Plaintiffs' Allegations Are Insufficient To State A Claim Against QBE.

Even if FDUTPA applied to QBE, which it does not, Plaintiffs have failed to state a claim because their allegations lack the specificity required by FDUTPA. To prevail on a FDUTPA

9

claim, Plaintiffs must show (1) a deceptive act or unfair practice, (2) causation, and (3) actual damages. *See N. Am. Clearing, Inc. v. Brokerage Computer Sys., Inc.*, 666 F. Supp. 2d 1299, 1310 (M.D. Fla. 2009) (citing *City First Mortg. Corp. v. Barton*, 988 So. 2d 82, 86 (Fla. Dist. Ct. App. 2008)). To survive a motion to dismiss, a FDUTPA claim must be pled with the level of particularity required by Federal Rule of Civil Procedure 9(b). *Zlotnick v. Premier Sales Group, Inc.*, 431 F. Supp. 2d 1290 (S.D. Fla. 2006).

Plaintiffs fail to meet the required level of specificity to survive a motion to dismiss because Plaintiffs do not identify the particular practices of QBE that are allegedly unfair or deceptive and they fail to allege that any such practices caused them to suffer actual damages. *See Macias v. HBC of Florida, Inc.*, 694 So. 2d 88, 90 (Fla. Dist. Ct. App. 1997) (affirming dismissal of FDUTPA claim for failure to state a claim and listing similar cases). Instead, Plaintiffs merely provide conclusory allegations that all of the Defendants engaged in "unconscionable acts or practices and used unfair or deceptive acts." (Compl. ¶ 134.) Plaintiffs do not allege, nor could they, that QBE was involved in the negotiation or origination of their mortgage loans, and they do not tie their claim of damages to actions taken by QBE. Thus, Plaintiffs have not alleged any independent actions by QBE that make it plausible that QBE's actions were unfair or deceptive. *See Twombly*, 550 U.S. at 570 (dismissing claims because they did not cross the line "from conceivable to plausible"). Plaintiffs' FDUTPA claim should therefore be dismissed as to QBE.

Notably, Plaintiffs' allegations also should be dismissed because they arise out of the contractual relationship that they had with their lender, and not with QBE. (*See* Compl. ¶¶ 135-136). QBE cannot be held liable under a contract to which it was not a party. *See Zlotnick*, 431 F. Supp. 2d at 1294-95 (dismissing FDUTPA claim against defendant who was not a party to the agreement of which the plaintiff complained).

Even if QBE had been a party to Plaintiffs' mortgages, which it was not, the actions of which Plaintiffs complain were specifically permitted by the contracts Plaintiffs entered into with their lender. Such a situation does not give rise to a FDUTPA violation. In *Zlotnick*, for instance, Judge Ryskamp dismissed a FDUTPA claim because the express terms of the agreement between the parties permitted the action taken by defendant. 431 F. Supp. 2d at 1295. Similarly, in this case, Plaintiffs' claim should be dismissed because Plaintiffs allege that actions permitted by the contracts they signed amount to wrongdoing. Plaintiffs make these allegations

even though they do not assert a breach of contract and they admit that the terms of their contracts required them to maintain insurance and permitted their servicer to place insurance on the mortgaged properties if their voluntary insurance coverage lapsed.  (Compl. ¶ 44.)  Indeed, Plaintiffs have not alleged that actions by any of the Defendants violated the terms of the express contract governing the relationship between Plaintiffs and their loan servicer.  Accordingly, Plaintiffs have failed to state a FDUTPA claim and their cause of action should be dismissed.

### B. Plaintiffs' RESPA Claim Against QBE Should Be Dismissed For Failure To State A Claim.

The purpose of RESPA was to reduce the closing costs charged to borrowers to settle a real estate transaction.  *Sosa v. Chase Manhattan Mortg. Corp.*, 348 F.3d 979, 981 (11th Cir. 2003).  Despite the fact that QBE was not involved in the closing of either of the mortgages obtained by the Plaintiffs from Wachovia, Plaintiffs allege generally that all of the Defendants violated section 8 of RESPA, 12 U.S.C. § 2607, for actions that took place long after the real estate transactions were settled.  (*See* Compl. ¶¶ 141-155).  This claim should be dismissed against QBE.  First, QBE's business actions are not subject to RESPA because they are not incident to or a part of a real estate settlement service and did not result in or from a referral.  Additionally, even if QBE was subject to RESPA, Plaintiffs' claim is barred by RESPA's one-year statute of limitations.  Finally, Plaintiffs' allegations are insufficient to state a claim under the Federal Rules of Civil Procedure.

#### 1. QBE's Business Is Not Incident To Or A Part Of A Real Estate Settlement Service And Was Not A Result Of A Referral.

Plaintiffs' RESPA claim fails as to QBE because QBE's alleged actions in this case were not incident to or a part of a real estate settlement service and did not result in or from a referral from Wells Fargo.  Section 8(a) of RESPA states:

> No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

11

12 U.S.C. § 2607(a).[6] Plaintiffs have failed to allege that the tracking services and insurance provided by QBE are incident to or a part of a real estate settlement service or that they resulted from a referral.

The applicable regulations define a settlement service as "the process of executing legally binding documents regarding a lien on property that is subject to a federally related mortgage loan. This process may also be called 'closing' or 'escrow' in different jurisdictions." Real Estate Settlement Procedures Act, 24 C.F.R. § 3500.2(b) (2009). Although the regulations discuss the "[p]rovision of services involving hazard, flood, or other casualty insurance or homeowner's warranties" as a settlement service, 24 C.F.R. § 3500.2(b), this ordinary course insurance, put in place at closing, is wholly separate from the LPI product managed by QBE. Indeed, QBE was not involved with the terms of Plaintiffs' mortgages when the loans were closed or with the inclusion of the LPI provision in the loan documents. Rather, QBE's insurance products are contingency products only to be used *after* a loan has been settled *if* a borrower fails to maintain the continuous voluntary coverage contemplated by their mortgage documents and referenced in the applicable RESPA regulations, cited above. Indeed, borrowers are not required to obtain insurance through QBE and they are able to avoid LPI by maintaining the voluntary hazard insurance coverage required by their contract with their lender. *See Cohen v. J.P. Morgan Chase & Co.*, 608 F. Supp. 2d 330, 345-46 (E.D. N.Y. 2009) (conducting a temporal analysis and concluding that fees charged for services that take place after the closing of a loan are not fees for settlement services). Thus, QBE's relationship with mortgage servicers is as a provider of goods and services after loans have closed and QBE's business is not incident to or a part of a settlement service. *See McAnaney v. Astoria Fin. Corp.*, 357 F. Supp. 2d 578 (E.D. N.Y. 2005) (various servicing fees such as facsimile fees, attorney document preparation fees, and recording fees charged by mortgagees at time mortgagors prepaid their mortgage loans were not fees for "settlement services" prohibited by RESPA; disputed fees all related to actions that occurred well after the property transfer between the buyer and the seller). Thus, Plaintiffs' claims against QBE should be dismissed.

---

[6] It is unclear whether Plaintiffs are attempting to allege a violation of subsection (a) or subsection (b) of section 8. Plaintiffs do not allege that QBE received consideration for goods or services that were not provided. Accordingly, Plaintiffs have not stated a claim under section 8(b) of RESPA. *See Sosa*, 348 F.3d at 983 (concluding that plaintiffs failed to state a claim under section 8(b) of RESPA because they did not allege that the defendant "'accept[ed] any portion, split or percentage of any charge . . . for the rendering of a real estate settlement service . . . other than for services actually performed'" (quoting section 8(b)).

Furthermore, Plaintiffs have failed to allege adequately that any actions undertaken by QBE were the result of a referral for settlement services. WFHM engaged QBE to provide certain goods and services and WFHM provided consideration for those goods and services. This does not amount to a referral of business related to a real estate settlement service. *See Krupa v. Landsafe, Inc.*, 514 F.3d 1153, 1156 (11th Cir. 2008) (noting that section 8(a) prohibits "kickbacks" for the referral of business and not for anything else). Plaintiffs' have not alleged that QBE gave or received any fees or commissions in the form of a referral and they have not alleged any link between such a fee or commission and the number of loans for which QBE provided tracking services or insurance. Furthermore, because QBE provides both tracking services and insurance, and because there was no guarantee that any loans or any particular loans would need insurance, it cannot be said that Wells Fargo referred insurance business to QBE in a manner prohibited by RESPA. *See id.* For these reasons, Plaintiffs' RESPA claim against QBE should be dismissed.

### 2. Plaintiffs' Claim Is Barred By the Statute Of Limitations.

Even if this Court concluded that QBE's business activity regarding the Plaintiffs was incident to a settlement service, which it should not, Plaintiffs' claim should still be dismissed because it is barred by the statute of limitations. RESPA has a one-year statute of limitations, which begins the date the loan closed. 12 U.S.C. § 2614; *Girgis v. Countrywide Home Loans, Inc.*, 733 F. Supp. 2d 835, 846-47 (N.D. Ohio 2010) (dismissing claim under section 8 of RESPA due to expired statute of limitations); *see also Palestini v. Homecomings Financial, LLC*, No. 10CV1049-MMA, 2010 WL 3339459, at *4 (S.D. Cal. Aug. 23, 2010) (dismissing claim because it was filed more than one year after the loan closed). Plaintiffs do not allege that they obtained the subject mortgage loans on or after April 7, 2010, and indeed they did not. Moreover, Plaintiffs have not pled any exceptions to the application of the statute of limitations and their claim therefore fails. *See Thomas v. Ocwen Fed. Bank FSB*, No. 01 C 4249, 2002 WL 99737, at *3-4 (N.D. Ill. Jan. 25, 2002) (dismissing allegation that lender-placed insurance violated section 8 of RESPA because the loan closed more than one year prior to the filing of the suit and no exceptions applied to toll the statute).

### 3. Plaintiffs' Allegations Are Insufficient To State A Claim Against QBE.

13

Even if section 8 applied to QBE, which it does not, and the statute of limitations had not run, Plaintiffs' claim should be dismissed because their allegations are focused on the named Wells Fargo Defendants, and otherwise amount to nothing more than mere legal conclusions that lack sufficient factual specificity to satisfy the pleading requirements of the Federal Rules of Civil Procedure.

Plaintiffs allege generally that Defendants were involved in accepting or paying "kickbacks" that were part of a real estate settlement service involving federally related mortgage loans in violation of RESPA. (Compl. ¶ 153.) Plaintiffs mention QBE only tangentially in their allegations. The Complaint alleges that Wells Fargo is a "person" under section 8 and that Wells Fargo is prohibited from accepting any "fee, kickback, or thing of value" for the referring business "incident to or a part of a real estate settlement service involving a federally related mortgage loan." (Compl. ¶¶ 143-144, 150.) The Complaint also only seeks a judgment against, and damages from, the Wells Fargo Defendants. (Compl. ¶¶ 154-155.) The pleadings are therefore wholly insufficient to provide QBE with reasonable notice of the claims against it and Plaintiffs' claim should be dismissed as against QBE. *See Thomas*, 2002 WL 99737, at *5 (dismissing claim where it was unclear against which defendant it was being brought).

Additionally, Plaintiffs' RESPA claim fails because the factual allegations lack enough specificity to give rise to a plausible claim. Plaintiffs' claim should be dismissed as against QBE because they do not allege that QBE gave or accepted any portion of a charge that Plaintiffs were assessed in connection with their loan closings. *See Carmen v. Metrocities Mortg. Corp.*, No. 08-2729 (RBK/JS), 2009 WL 1416038, at *5 (D. N.J. May 18, 2009) (dismissing RESPA claim for failure to allege receipt of fee charged during the closing). Indeed, Plaintiffs do not explain when any alleged kickbacks occurred, why they occurred, or who was involved. *See Lane v. Vitek Real Estate Indus. Group*, 713 F. Supp. 2d 1092 (E.D. Cal. 2010) (borrowers claim fails because they did not explain what the kickbacks were, when they occurred, or which defendants received them, but instead, simply allege the existence of secret kickbacks and lumped the actions of defendants together); *see also Iqbal*, 129 S. Ct. at 1949 (stating that a complaint is insufficient if it makes naked assertions without further factual allegations). Plaintiffs have therefore failed to state a claim under RESPA.

To the extent that Plaintiffs assert that the LPI premiums in and of themselves violated RESPA, which is entirely unclear from the pleadings, Plaintiffs' claim also fails. Plaintiffs admit that they had an obligation to maintain homeowners insurance and admit that they knew that failure to do so would confer upon their servicer the right to select and arrange coverage and to bill them for that coverage. (Compl. ¶¶ 46, 56.) Furthermore, Plaintiffs' broad allegation that the LPI premiums charged by their servicer were excessive is made without reference to any comparable product pricing. Indeed, Plaintiffs admit that their loan documents warned that the insurance provided by their servicer could be more costly than voluntary insurance coverage and they do not allege any sort of breach of contract. (Compl. ¶ 69.) Plaintiffs' allegations are therefore insufficient to state a claim and should be dismissed. *See Girgis*, 733 F. Supp. 2d 835 (borrowers did not state amount or date of fees and did not provide any evidence that a defendant charged any real estate settlement fees that were not actually for settlement services); *Campbell v. Machias Sav. Bank*, 865 F. Supp. 26 (D. Me. 1994) (in order to properly state a claim for kickbacks and unearned fees under RESPA, plaintiff had to allege that overcharge was in nature of portion, split, or percentage of any charge given to third party, and it was not enough to claim that bank simply kept overcharge as windfall for itself); *Morales v. Countrywide Home Loans, Inc.*, 531 F. Supp. 2d 1225, 1227-28 (C.D. Cal. 2008) (noting that the legislative history of RESPA makes it clear that it is not a price-control statute and discussing agreement among courts that overcharges do not violate section 8(b) of RESPA).

Finally, Plaintiffs have failed to allege that any payment made to QBE was not for goods or services actually performed, which are specifically *permitted* by RESPA. 12 U.S.C. § 2607(c). Even if QBE's business was somehow related to a settlement service and it could be said that mortgage servicers referred business to QBE as described in section 8(a), which it cannot, QBE is compensated in exchange for the provision of goods and services. Namely, it charges mortgage servicers a fee for tracking the servicer's mortgage portfolios and for providing insurance coverage on mortgages within the servicer's portfolio that are not adequately insured. Plaintiffs have failed to allege, and cannot allege, anything to the contrary and their claim should therefore be dismissed. *See Cedeno v. IndyMac Bancorp, Inc.*, No. 06-6438, 2008 WL 3992304, at *4 (S.D. N.Y. Aug. 26, 2008) (dismissing case for failure to state a claim due to applicability of safe harbor provision in section 8(c)).

### III. Plaintiffs' Unjust Enrichment Claim Should Be Dismissed As To QBE Because Plaintiffs Did Not Confer A Benefit, Or A Benefit Without Adequate Consideration, On QBE.

Plaintiffs allege that, along with the Wells Fargo Defendants, the QBE Defendants were unjustly enriched by the placement of insurance on Plaintiffs' mortgaged properties. (Compl. ¶¶ 126-130.) To state a claim of unjust enrichment against QBE, Plaintiffs were required to plead that: (1) Plaintiffs conferred a benefit to QBE, (2) QBE had knowledge of the benefit, (3) QBE accepted or retained the benefit conferred, and (4) under the circumstances, it was inequitable for QBE to retain the benefit without paying for it. *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1274 (11th Cir. 2009) (citing *Rollins, Inc. v. Butland*, 951 So. 2d 860, 876 (Fla. Dist. Ct. App. 2006)).

Plaintiffs allege that all of the Defendants received a benefit from the placement of insurance on Plaintiffs' mortgaged properties. (Compl. ¶ 127.) This allegation is insufficient, however, because the mere receipt of an indirect benefit alone does not amount to unjust enrichment. *See Huntsman Packaging Corp. v. Kerry Packaging Corp.*, 992 F. Supp. 1439, 1446 (M.D. Fla. 2009) (noting that the benefit conferred on the defendant must be direct to prevail on a claim of unjust enrichment); *West Coast Life Ins. Co. v. Life Brokerage Partners LLC*, No. 08-80897, 2009 WL 2957749, at *11 (S.D. Fla. Sept. 9, 2009) (dismissing claim because allegation that defendant "received compensation for its role in the transactions" was insufficient). Plaintiffs do not allege that they paid their insurance premiums, or any other fees, to QBE. Indeed, QBE never collects fees or premiums directly from a borrower and did not do so with regard to either the Williams or Juarez Plaintiffs. Furthermore, any benefit QBE received was a result of its agreement with WFHM to provide insurance coverage on various WFHM portfolios. QBE charged WFHM a fee and received payment from WFHM for that insurance. Indeed, that fee was predetermined and based on the general factors of the WFHM portfolio and not on Plaintiffs' individual properties. As a result, QBE did not receive a direct benefit from Plaintiffs sufficient to support a claim for unjust enrichment. *See Huntsman Packaging Corp.*, 992 F. Supp. at 1446 (holding that the benefit conferred on the defendant must be "a direct benefit" to maintain a cause of action for unjust enrichment); *West Coast Life Ins. Co.*, 2009 WL 2957749, at *11.

16

Even if there had been a line of payment between Plaintiffs and QBE with regard to the payment of insurance premiums, which there was not, Plaintiffs' claim still fails because the Plaintiffs received the benefit of the insurance coverage in exchange for the insurance premiums they paid. There can be no claim for unjust enrichment when adequate consideration is provided for the benefit conferred. *Baptista v. JPMorgan Chase Bank, N.A.*, No. 10-13105, --- F.3d ---, 2011 WL 1772657, at *2 n.3 (11th Cir. May 11, 2011) (citing *Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322, 331-32 (Fla. Dist. Ct. App. 2007). Plaintiffs agreed to the provision of LPI in their mortgage documents should they let their voluntary insurance coverage lapse, and they were given notice that the cost could be higher than what they could obtain through voluntary insurance coverage. (Compl. ¶¶ 44, 69.) Furthermore, without the coverage, Plaintiffs would have been in violation of their mortgage contracts and exposed to serious and potentially irreparable financial harm should their properties have been damaged or destroyed and had they not had the ability to repay their mortgages without insurance proceeds. Thus, Plaintiffs received the benefit of the bargain into which they entered with their lender. *See Am. Safety Ins. Serv., Inc.*, 959 So. 2d at 331-32 (noting that parties entered into agreements and received exactly what they bargained for and therefore defendant was not unjustly enriched); *Baptista*, 2011 WL 1772657, at *2 n.3. As a result, Plaintiffs have failed to state a claim of unjust enrichment against QBE.

Finally, Plaintiffs' unjust enrichment claim fails because Plaintiffs could have avoided any benefit they indirectly conferred on QBE. As alleged in the Complaint, at origination, not only did the mortgage contracts inform Plaintiffs that they were required to maintain insurance coverage, the mortgage documents also stated that if they failed to maintain coverage, coverage would be obtained on their behalf, likely at a higher price than what they could procure and maintain on their own. (Compl. ¶¶ 44, 69.) Plaintiffs could have avoided the LPI premiums altogether by maintaining their own insurance coverage, or could have minimized the LPI premiums by quickly obtaining replacement coverage upon a lapse; indeed, Plaintiff Williams did so by obtaining a voluntary policy within a month of his prior policy's lapse. Because Plaintiffs had the ability and opportunity to avoid the higher insurance premiums, their claim for unjust enrichment fails. *See Baptista*, 2011 WL 1772657, at *2 n.3 (affirming dismissal of unjust enrichment claim because plaintiff received a benefit for the fee imposed and could have

avoided the fee by not accepting the benefit). Accordingly, Plaintiffs' unjust enrichment claim should be dismissed.[7]

## CONCLUSION

For the foregoing reasons, QBE respectfully requests that this Court grant its Motion to Dismiss and dismiss Counts I, III, IV, and V as against QBE.

Respectfully submitted,

Dated:  June 13, 2011

 s/ William S. Berk
William S. Berk (Bar ID # 349828)
wberk@berklawfirm.com
William Xanttopoulous (Bar ID # 997668)
william@wxlaw.net
**Berk, Merchant & Sims, PLC**
2 Alhambra Plaza, Suite 700
Miami, FL 33134
Telephone: (786) 338-2851
Facsimile: (786) 364-1814

Andrew L. Sandler (*pro hac vice*)
asandler@buckleysandler.com
Robyn C. Quattrone (*pro hac vice*)
rquattrone@buckleysandler.com
Jennifer A. Slagle Peck (*pro hac vice*)
jslaglepeck@buckleysandler.com
**BuckleySandler LLP**
1250 24th Street, NW, Suite 700
Washington, DC 20037
Telephone: (202) 349-8000
Facsimile: (202) 349-8080

*Attorneys for Defendants QBE Insurance Corporation and QBE FIRST Insurance Agency, Inc. (f/k/a Sterling National Insurance Agency, Inc.)*

---

[7] Furthermore, if Plaintiffs could establish a contract between themselves and QBE, their claim for unjust enrichment would fail for the additional reason that unjust enrichment is not a viable claim where an express contract exists between the parties. *See Ocean Communic'ns, Inc. v. Bubeck*, 956 So. 2d 1222, 1225 (Fla. Dist. Ct. App. 2007).

**CERTIFICATE OF SERVICE**

  I hereby certify that on June 13, 2011, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

              s/ William S. Berk
              William S. Berk

**SERVICE LIST**

| | |
|---|---|
| Lance August Harke, Esq.<br>lharke@harkeclasby.com<br>Howard Mitchell Bushman, Esq.<br>hbushman@harkeclasby.com<br>**Harke Clasby & Bushman, LLP**<br>155 S. Miami Avenue, Suite 600<br>Miami, FL 33130<br>Tel: 305-536-8220<br>Fax: 305-536-8229<br>*Counsel for Plaintiffs*<br><br>By Notice of Electronic Filing | Adam M. Moskowitz, Esq.<br>amm@kttlaw.com<br>Thomas A. Tucker Ronzetti, Esq.<br>tr@kttlaw.com<br>Robert Neary, Esq.<br>**Kozyak Tropin & Throckmorton, P.A.**<br>2525 Ponce de Leon, 9th Floor<br>Coral Gables, FL 33134<br>Tel: 305-372-1800<br>Fax: 305-372-3508<br>*Counsel for Plaintiffs*<br><br>By Notice of Electronic Filing |
| Jeffrey N. Golant, Esq.<br>jgolant@aol.com<br>1000 W. McNab Road, Suite 150<br>Pompano Beach, FL 33069<br>Tel: 954-942-5270<br>Fax: 954-942-5272<br>*Counsel for Plaintiffs*<br><br>By Notice of Electronic Filing | Mary Kestenbaum Fortson, Esq.<br>mkestenbaum@merlinlawgroup.com<br>Sean Michael Shaw, Esq.<br>sshaw@merlinlawgroup.com<br>Chip Merlin, Esq.<br>**Merlin Law Group**<br>777 S. Harbour Island Boulevard, Suite 950<br>Tampa, FL 33602<br>Tel: 813-229-1000<br>Fax: 813-229-3692<br>*Counsel for Plaintiffs*<br><br>By Notice of Electronic Filing |

| | |
|---|---|
| Michael Keith Winston, Esq.<br>mwinston@carltonfields.com<br>David B. Esau, Esq.<br>desau@carltonfields.com<br>**Carlton Fields PA**<br>CityPlace Tower, Suite 1200<br>525 Okeechobee Boulevard<br>West Palm Beach, FL 33401<br>Tel: 561-659-7070<br>Fax: 561-659-7368<br>*Counsel for Defendants Wells Fargo Financial, Inc., Wells Fargo Financial Agency Co, Wells Fargo Financial America, Inc., Wells Fargo Financial Florida, Inc., Wells Fargo Servicing Solutions, LLC, Wells Fargo Financial Leasing, Inc., Wells Fargo Financial System Florida, Inc., and Wells Fargo Insurance*<br><br>By Notice of Electronic Filing | William S. Berk, Esq.<br>wberk@berklawfirm.com<br>William Xanttopoulos, Esq.<br>william@wxlaw.net<br>**Berk, Merchant & Sims, PLC**<br>2 Alhambra Plaza, Suite 700<br>Miami, FL 33134<br>Tel: 786-338-2900<br>Fax: 786-338-2888<br>*Counsel for Defendants QBE Insurance Corporation and QBE FIRST Insurance Agency, Inc. (f/k/a Sterling National Insurance Agency, Inc.)*<br><br>By Notice of Electronic Filing |
| Andrew L. Sandler, Esq. (*pro hac vice*)<br>asandler@buckleysandler.com<br>Robyn C. Quattrone, Esq. (*pro hac vice*)<br>rquattone@buckleysandler.com<br>Jennifer A. Slagle Peck, Esq. (*pro hac vice*)<br>jslaglepeck@buckleysandler.com<br>**BuckleySandler LLP**<br>1250 24th Street, NW, Suite 700<br>Washington, DC 20037<br>Tel: 202-349-8000<br>Fax: 202-349-8080<br>*Counsel for Defendants QBE Insurance Corporation and QBE FIRST Insurance Agency, Inc. (f/k/a Sterling National Insurance Agency, Inc.)*<br><br>By Notice of Electronic Filing | |