**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 1:11-CV-21233-ALTONAGA/SIMONTON**

RAY WILLIAMS;
LUIS JUAREZ; and MIGDALIAH JUAREZ;
on behalf of themselves and all others
similarly situated;

        Plaintiffs,

                                            **JURY DEMAND**

v.

WELLS FARGO BANK, N.A.;
WELLS FARGO INSURANCE, INC.;
QBE SPECIALTY INSURANCE COMPANY;
and STERLING NATIONAL INSURANCE
AGENCY, INC. (n/k/a QBE FIRST
INSURANCE AGENCY, INC.)

        Defendants.
_____/

### AMENDED CLASS ACTION COMPLAINT

        Plaintiffs, RAY WILLIAMS, LUIS JUAREZ, and MIGDALIAH JUAREZ ("Plaintiffs"),

on behalf of themselves and all others similarly situated, file this class action complaint against

WELLS FARGO BANK, N.A., WELLS FARGO INSURANCE, INC., QBE SPECIALTY

INSURANCE CO., and STERLING NATIONAL INSURANCE AGENCY, INC. (n/k/a QBE

FIRST INSURANCE AGENCY, INC.) (collectively "Defendants") and allege as follows:

### I. INTRODUCTION

        1.    This is a class action lawsuit filed to redress injuries that Plaintiffs, and a

nationwide class of consumers, have suffered and will continue to suffer as a result of the

practices of Defendants relating to force-placed insurance policies.

2.      Defendants have engaged in a pattern of unlawful and unconscionable profiteering and self-dealing in regards to their purchase and placement of force-placed insurance policies in bad faith.

## II. PARTIES

3.      Plaintiffs, RAY WILLIAMS, LUIS JUAREZ, and MIGDALIAH JUAREZ are natural persons, over the age of 21 and otherwise *sui juris*.

4.      Defendant, WELLS FARGO BANK, N.A. ("Wells Fargo Bank") is a national bank registered to do business in the State of Florida with its principal address in San Francisco, California.  As a result of a 2004 merger, Wells Fargo Bank is the successor to Wells Fargo Home Mortgage, Inc., which no longer exists.  Wells Fargo Bank sometimes does business under the name Well Fargo Home Mortgage. It is Wells Fargo Bank's practice, when it acquires another bank or lender, to become the successor in interest or assign of that bank or lender's home mortgages.  For example, in 2008, Wells Fargo Bank acquired Wachovia Bank, NA. ("Wachovia") and is the successor in interest and/or assign of Wachovia as to all Wachovia's home mortgages.

5.      Defendant, WELLS FARGO INSURANCE, INC. ("Wells Fargo Insurance"), is a division of Wells Fargo, N.A. registered to do business in the State of Florida with its principal address in Minnesota. Wells Fargo Insurance is a captive insurance agent and primarily an instrumentality of Wells Fargo Bank.  Upon information and belief, Wells Fargo Insurance does nothing to assist in obtaining the force-placed insurance policy and exists only so Wells Fargo can collect kickbacks or commissions related to the force-placed insurance policies.  Wells Fargo Bank and Well Fargo Insurance may be collectively referred to as "Wells Fargo."

6.      Defendant, QBE SPECIALTY INSURANCE CO. ("QBE Specialty"), is a surplus line insurance provider doing business in the state of Florida.

7.      Defendant, STERLING NATIONAL INSURANCE AGENCY, INC. (n/k/a QBE FIRST INSURANCE AGENCY, INC.) ("QBE First"), is a managing general agent/surplus-line insurance broker doing business in the state of Florida.  QBE First is a captive insurance agent and primarily an instrumentality of QBE Specialty.  Upon information and belief, QBE First does nothing to assist in finding the force-placed insurance policy and exists only to provide kickbacks and/or collect excessive commissions related to the force-placed insurance policies. Defendants QBE Specialty and QBE First may sometimes be referred to collectively as "QBE."

## III. JURISDICTION AND VENUE

8.      The Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (codified in various sections of 28 U.S.C.), requires that this action be brought before this Court.

9.      This Court has jurisdiction over Defendants because they are either foreign corporations authorized to conduct business, are doing business in Florida and have registered with the Florida Secretary of State, or they do sufficient business, have sufficient minimum contacts with Florida, or otherwise intentionally avail themselves of the Florida consumer market through the promotion, marketing, sale, and service of mortgage or other lending services and insurance policies in Florida.  Accordingly, this purposeful availment renders the exercise of jurisdiction by this Court over Defendants and their affiliated or related entities permissible under traditional notions of fair play and substantial justice.

10.     This Court has subject matter jurisdiction because the amount in controversy exceeds $75,000, exclusive of interest, costs, and attorneys' fees, and diversity exists between the Plaintiff and the Defendants.  28 U.S.C.A. § 1332(a)(1).

CASE NO. 1:11-CV-21233-ALTONAGA/SIMONTON

11.     In addition, this Court also has subject matter jurisdiction because the amount in controversy exceeds $5 million and diversity exists between the Plaintiffs and the Defendants. 28 U.S.C.A. § 1332(d)(2).  Further, in determining whether the $5 million amount in controversy requirement of 28 U.S.C. § 1332(d)(2) is met, the claims of the putative class members are aggregated.  28 U.S.C. § 1332(d)(6).

12.     Venue is proper in this forum because at all times relevant hereto, Plaintiffs resided in the Southern District of Florida, and a substantial portion of the practices complained of herein occurred in the Southern District of Florida, and/or because Defendants have received substantial compensation as a result of doing business in the Southern District of Florida. Moreover, at all times material to the allegations contained herein, Defendants personally and/or through an agent:

a.  operated, conducted, engaged in, and carried on a business venture in the Southern District of Florida or had an office or agency in the Southern District of Florida; and/or

b.  engaged in substantial activity within this state and district.

13.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(c) because a substantial part of the events giving rise to Plaintiffs' claims occurred in the Southern District of Florida and, as set forth above, Defendants are subject to personal jurisdiction in this district.

14.     All conditions precedent to this action have occurred, been performed, or have been waived.

CASE NO. 1:11-CV-21233-ALTONAGA/SIMONTON

### IV. FACTUAL ALLEGATIONS

15.     Wells Fargo provides services including but not limited to banking, insurance, investments, mortgage, and consumer and commercial finance across North America.  It services over 70 million consumers and entities, and has assets of $1.2 trillion.

16.     One of the many services provided by Wells Fargo is providing and servicing real property mortgages.

17.     Each and every mortgage at issue in this litigation which is owned and/or serviced by Wells Fargo, requires borrowers, including Plaintiffs, to maintain insurance on their real property.  If the borrower fails to maintain the requisite insurance, the mortgage servicer may forcibly place insurance on the property.

18.     Pursuant to the mortgage contracts at issue, once an insurance policy has lapsed, the mortgage servicer can purchase insurance for the home, "force-place" it, and then charge the borrower the full cost of the premium.  However, these premiums are not the actual amount that Wells Fargo pays, because a substantial portion of the premiums are refunded to Wells Fargo through various kickbacks and/or unwarranted commissions.

19.     In accomplishing this forced placement, Wells Fargo, in bad faith, entered into an exclusive arrangement with QBE to be the sole insurance provider for all forced placed policies.  Under this arrangement the Defendants charge exorbitant rates to Plaintiffs and the Class who have no way of refusing the force-placed charges.  These premium rates or charges were not arrived at on a competitive basis and were well in excess of those which could have been retained in the open market by Wells Fargo, Plaintiffs or the Class.  Accordingly, no good faith arms-length transactions are taking place.

20.     The premiums on force-placed insurance policies generally cost at least five to six times, and often up to ten times, more than what the borrower was either originally paying or what the borrower could obtain if done so on a competitive basis on the open market.

21.     The force-placed insurance policies are extremely lucrative for the insurance providers and generate extremely high profit margins.  Indeed, one leading insurance provider – Assurant Inc. – collected $2.7 billion of premiums in 2010 through its force-placed insurance division alone.

22.     Wells Fargo and QBE have reaped significant profits relating the force-placed insurance.

23.     Wells Fargo receives commissions or kickbacks from the force-placed insurance companies or the insurance brokers or agents once one of the high-priced, force-placed, insurance policies is purchased.  These kickbacks are directly tied to the cost of the force-placed insurance and are usually a percentage of the total cost of the policy.

24.     This arrangement provides the mortgage servicer with an incentive to purchase the highest priced force-placed insurance policy on a non-competitive basis that it can – the higher the cost of the insurance policy, the higher their commission or kickback.  Ultimately, the consumer pays the bill.

25.     The commission or kickback is paid by QBE to Wells Fargo in order to maintain their pre-existing uncompetitive and exclusive relationship, to induce Wells Fargo to purchase excessively-priced force-placed insurance policies, and to cause Wells Fargo to not seek competitive bids in the market.

26.     The Defendants have entered into an arrangement such that a competitively priced insurance policy is not actually "found" for any given property.  Therefore, the notion that any "commission" is due to either Wells Fargo Insurance or QBE First is false. Rather, the Defendants have a pre-set arrangement by which QBE has access to and searches Wells Fargo's database to find lapsed insurance policies.   Then QBE writes to the homeowners to notify them of the forced place coverage.  Assuming there is a lapse in coverage, insurance is automatically placed--the provider of the insurance and the cost of the insurance are pre-determined under this relationship. Further, the cost of the insurance of each home bears no relation to each homeowner's individual home, rather it is pre-determined based upon Well Fargo's entire portfolio of mortgages.

27.     Therefore, Wells Fargo is not just paying QBE for force-placed insurance, rather it is paying QBE for a bundle of services including performing Well Fargo's job of administering and servicing the mortgages (monitoring Wells Fargo's entire portfolio for lapses and providing proper notification to homeowners under the mortgage).  This bundle of administrative services includes Wells Fargo's cost of monitoring and servicing its entire portfolio of loans and is not chargeable to Plaintiffs under the mortgages.

28.     Under this arrangement, the "premiums" for insurance that are charged to the Plaintiffs are exorbitant and illegal because they not only include the excessive cost of insurance, but they also include illegal kickbacks and the cost of the bundle of administrative services that QBE is providing to Wells Fargo.

29.     This arrangement insures that QBE is the only entity providing the insurance, with Wells Fargo signing off and collecting kickback commissions, and the consumer providing the money.

30.     If the consumer cannot afford to pay the exorbitant premiums for force-placed insurance, the premiums are added to the mortgage's principal balance.

31.     In addition, the Defendants also retroactively force-place exorbitant insurance on homeowners for the periods of time in the past where coverage had lapsed.   This is done despite the fact that there are no claims during the lapsed period and the homeowner has since secured standard insurance.   Moreover, retroactive forced placed insurance is especially egregious given the fact that the National Association of Insurance Commissioners has stated that insurance is "prospective in nature" and that policies should not be backdated.

32.     The actions and practices described herein represent bad faith and unconscionable practices that, even if the terms of the mortgage could be construed to allow, would still be an abusive and unlawful use of its contract powers.   Placing these unreasonably, uncompetitively, and excessively priced insurance policies on Plaintiffs and the similarly situated Class Members' mortgages without regard for competition on the open market to obtain a commercially reasonable price, is solely to maximize their own profits through the exorbitant cost of and by collecting kickbacks on those policies.   Said conduct is prohibited by state and Federal law.

33.     Wells Fargo is entitled under Plaintiffs' and each Class Member's mortgage to purchase forced placed insurance.   Wells Fargo must, however, conduct those purchases in good faith.

34.     Plaintiffs do not seek to prevent or significantly interfere with Defendants' ability to force place insurance coverage pursuant to the mortgage contracts.   Rather, Plaintiffs demand that they perform their practices in good faith.

35.     Defendants' manipulation of their forced placed mortgage purchases has maximized the profits to themselves to the great detriment to Plaintiffs and the Class.

36.     Defendants were not, and are not, authorized by any federal, state, or local governing body, contract, or agreement to manipulate their forced placed insurance purchases in bad faith as alleged above.

37.     Furthermore, these fraudulent practices have recently come under fire by all fifty State Attorney Generals as part of a nationwide investigation.  As the State Attorney Generals have recognized, this practice has greatly contributed to the foreclosure crisis.

**A.     Plaintiff Ray Williams**

38.     Plaintiff, Ray Williams, obtained a mortgage from Wachovia Bank secured by a parcel of real property in Miami-Dade County, Florida and has a mortgage balance of approximately $85,000.  The mortgage loan was serviced by Wells Fargo, who is also the successor in interest and/or assign of the mortgage.   A copy of the Williams Mortgage is attached hereto as Exhibit A.

39.     From the inception of the mortgage until October 17, 2010, Mr. Williams maintained in full force and effect the insurance required by the mortgage contract.  The monthly premium for the contract was approximately $293.  However, on October 17, 2010, the policy lapsed.

40.     A short time later, on November 15, 2010, Mr. Williams, after a diligent effort to do so, secured new insurance for the property.  Mr. Williams' insurance had lapsed for less than 30 days.

41.     Thereafter, Wells Fargo, without seeking competitive bids on the open market or attempting to re-establish Mr. Williams' prior insurance, capriciously exercised their discretion

in choosing an insurance policy and used QBE First to obtain a surplus-lines force-placed insurance from QBE Specialty for Mr. Williams' property.

42.    On December 27, 2010, nearly six weeks after Mr. Williams had purchased insurance for his property, Wells Fargo notified him that it was retroactively force-placing an insurance policy on the property for the approximate 30-day lapsed period and adding the cost of the premium to his mortgage loan.

43.    The cost of the premium of the force-placed insurance policy from QBE totaled approximately $1,743 for just the approximate 30-day lapsed period.  This is nearly 6 times the amount of the monthly premium ordinarily paid by Mr. Williams.  Moreover, if paid out for a full year, it is equal to nearly 25% of Mr. Williams' outstanding principal mortgage balance.

44.    The premiums charged to Mr. Williams were exorbitant and illegal due to the Defendants' practices as described above.

**B.      Plaintiffs Luis and Migdaliah Juarez (the "Juarez Plaintiffs")**

45.    The Juarez Plaintiffs obtained a mortgage from Wachovia Bank secured by a parcel of real property in Miami-Dade County, Florida.  The loan was serviced by Wells Fargo who is also the successor in interest and/or assign of the mortgage.    A copy of the Juarez Mortgage is attached hereto as Exhibit B.

46.    The Juarez Plaintiffs maintained in full force and effect the insurance required by the mortgage contract.  However, the policy lapsed.

47.    In August 2010, the Juarez Plaintiffs obtained insurance through Citizens Property Insurance Corporation and immediately sent proof of this insurance to Wells Fargo.

48.    Wells Fargo, without seeking competitive bids on the open market or attempting to re-establish the Juarez Plaintiffs' prior insurance, capriciously exercised its discretion in

choosing an insurance policy and contracted with QBE First to obtain surplus-line, force-placed, insurance from QBE Specialty, for the Juarez Plaintiff's property.

49.     On July 16, 2010, Wells Fargo notified him that it was force-placing an insurance policy on him for a period of March 3, 2010 to March 3, 2011.

50.     Despite being purchased in July 2010, the insurance policy, secured from QBE, was backdated to over four months prior (March 3, 2010) notwithstanding the fact that there was no damage to the property or claims arising out of the Juarez Plaintiffs' property for that four-month period.

51.     The cost of the annual premium of the force-placed insurance policy through QBE totaled approximately $25,000.  This is nearly four times the amount of the premium now paid by Mr. and Mrs. Juarez through the state-run Citizens Property Insurance Corporation.

52.     Wells Fargo notified the Juarez family that the force-placed insurance policy had been secured and retroactively placed.

53.     The premiums charged to Mr. Williams were exorbitant and illegal due to the Defendants' practices as described above.

## V. CLASS ALLEGATIONS

**A.     Class Definition**

54.     Plaintiffs bring this action against Defendants pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and all other persons similarly situated. Plaintiffs seek to represent the following class:

> All individuals who, within the applicable statute of limitations, were charged for a force-placed insurance policy procured through Defendants.  Excluded from this class are Defendants, their affiliates, subsidiaries, agents, board members, directors, officers, and/or employees.

55.     Plaintiffs reserve the right to modify or amend the definitions of the proposed class before the Court determines whether certification is appropriate.

56.     Defendants subjected Plaintiffs and the respective Class members to the same unfair, unlawful, and deceptive practices and harmed them in the same manner.  The conduct described above is the Defendants' standard and undisputed business practice.

**B.      Numerosity**

57.     The individual class members are so numerous that joinder of all members is impracticable.  The Defendants sell and service hundreds of thousands, if not millions, of mortgage loans and insurance policies in the state of Florida and nation-wide.  The individual class members are ascertainable as the names and addresses of all class members can be identified in the business records maintained by the Defendants.  The precise number of class members is certainly more than a thousand and can only be obtained through discovery, but the numbers are clearly more than can be consolidated in one complaint and impractical for each to bring suit individually.  Plaintiffs do not anticipate any difficulties in the management of the action as a class action.

**C.      Commonality**

58.     There are questions of law and fact that are common to the Plaintiffs' and Class Members' claims.  These common questions predominate over any questions that go particularly to any individual member of the Class.  Among such common questions of law and fact are the following:

> a.   Whether Wells Fargo breached the mortgage contract with Plaintiffs and the Class by failing to seek competitive bids on the open market or attempting to continue or reestablish the prior existing policies;

b.  Whether the premiums charged for forced placed insurance were derived from a non-competitive process;

c.  Whether Defendants have unlawfully unjustly enriched themselves at the expense of the Plaintiffs and the Class;

d.  Whether Wells Fargo breached the implied covenant of good faith and fair dealing by entering into an arrangement with QBE which resulted in their charging Plaintiffs and Class members excessive amounts for force-placed insurance;

e.  Whether the Defendants manipulated the forced placed mortgage purchases in order to maximize the profits to themselves to the great detriment to Plaintiffs and the Class;

f.  Whether the provision in the mortgage instrument relating to force-placed insurance is procedurally and substantively unconscionable because it does not contemplate or authorize Defendants to derive hidden financial benefits by force-placing the high cost insurance premiums;

g.  Whether the premiums charged are illegal and excessive because they include kickbacks and unwarranted "commissions."

h.  Whether the premiums charged are illegal and excessive because they include charges for a bundle of administrative services that the QBE provides to Wells Fargo that are not chargeable to Plaintiffs under the mortgages; and

i.  Whether the premiums charged to Plaintiffs and the Class were *bona fide* and reasonable under Federal law.

**D.      Typicality**

59.      Plaintiffs are members of the Class as Defendants' own records plainly reveal. Plaintiffs' claims are typical of the claims of the Class because of the similarity, uniformity, and common purpose of the unlawful conduct of Defendants.  Each class member has sustained, and will continue to sustain, damages in the same manner as Plaintiffs as a result of Defendants' wrongful conduct.

**E.      Adequacy of Representation**

60.      Plaintiffs are adequate representatives of the Class and will fairly and adequately protect the interests of the Class.  Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel, experienced in litigation of this nature, to represent them.   There is no hostility between Plaintiffs and the unnamed class members.   Plaintiffs anticipate no difficulty in the management of this litigation as a class action.

61.      To prosecute this case, Plaintiffs have chosen the law firms of Kozyak, Tropin & Throckmorton, P.A., The Merlin Law Group, P.A., Harke Clasby & Bushman LLP, and The Law Offices of Jeffrey N. Golant, P.A.   These firms are very experienced in class action litigation and have the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

**F.      Requirements of Fed. R. Civ. P. 23(b)(3)**

62.      The questions of law or fact common to Plaintiffs' and each Class Member's claims predominate over any questions of law or fact affecting only individual members of the class.  All claims by Plaintiffs and the unnamed class members are based on the force-placed insurance policies that Defendants unlawfully secured and their deceptive and egregious actions involved in securing the force-placed policy.

63.     Common issues predominate when, as here, liability can be determined on a class-wide basis, even when there will be some individualized damages determinations.

64.     As a result, when determining whether common questions predominate, courts focus on the liability issue, and if the liability issue is common to the class as is the case at bar, common questions will be held to predominate over individual questions.

**G.     Superiority**

65.     A class action is superior to individual actions in part because of the non-exhaustive factors listed below:

(a) Joinder of all class members would create extreme hardship and inconvenience for the affected customers as they reside all across the states;

(b) Individual claims by class members are impractical because the costs to pursue individual claims exceed the value of what any one class member has at stake.   As a result, individual class members have no interest in prosecuting and controlling separate actions;

(c) There are no known individual class members who are interested in individually controlling the prosecution of separate actions;

(d) The interests of justice will be well served by resolving the common disputes of potential class members in one forum;

(e) Individual suits would not be cost effective or economically maintainable as individual actions; and

(f) The action is manageable as a class action.

**H.      Requirements of Fed. R. Civ. P. 23(b)(1) & (2)**

66.     Prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class.

67.     Defendants have acted or failed to act in a manner generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

<u>**COUNT I**</u>

<u>**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING AS TO ALL CLASS MEMBERS (against Wells Fargo)**</u>

68.     Plaintiffs re-allege and incorporate Paragraphs 1 – 67 above as if fully set forth herein and further allege as follows.

69.     Good faith and fair dealing is an element of every contract and imposes upon each party a duty of good faith and fair dealing in its performance.  Common law calls for substantial compliance with the spirit, not just the letter, of a contract in its performance.

70.     Where an agreement permits one party to unilaterally determine the extent of the other's required performance, an obligation of good faith in making such determination is implied.

71.     Plaintiffs' and the Class Members' mortgage contracts contained a provision that allowed the mortgage servicer to force-place an insurance policy on the borrower if their homeowner's insurance lapsed.

72.     Mortgage servicers, like Wells Fargo, are permitted to unilaterally choose the company to purchase force-placed insurance from and have an obligation to exercise their discretion in good faith and not choose the company capriciously and in bad faith (solely for

their own financial gain) instead of seeking to continue or reestablish the prior insurance policies or seeking competitive bids on the open market in good faith.

73.     The mortgage contracts and insurance policies of Plaintiffs contained an implied covenant of good faith and fair dealing whereby Defendants agreed to perform the obligations under the policies in good faith, to deal fairly with Plaintiffs and the Class, and not to charge excessive or unreasonable fees for the force-placed insurance for the purposes of maximizing their own profits at the Class's expense.

74.     Wells Fargo breached its duty of good faith and fair dealing in at least the following respects:

(a) Using its discretion to choose an insurance policy in bad faith and in contravention of the parties' reasonable expectations, by purposefully selecting exorbitantly-priced force-placed insurance policies to maximize their own profits;

(b) Failing to seek competitive bids on the open market and instead contracting to create "back room" deals whereby the insurance policies are continually purchased through the same companies without seeking a competitive price;

(c) Assessing excessive, unreasonable, and unnecessary insurance policy premiums against Plaintiffs and Class and misrepresenting the reason for the cost of the policies;

(d) Collecting a percentage of whatever premiums are charged to Plaintiffs and the Class and not passing that percentage on to the borrower, thereby creating the incentive to seek the highest-priced premiums possible;

(e) Charging plaintiffs for commissions when the insurance is prearranged and no commission is due;

(f) Charging Plaintiffs for having QBE perform Wells Fargo's obligation of administering its mortgage portfolio which is not chargeable to Plaintiffs; and

(g) Retroactively placing the exorbitantly-priced policies for time periods that have already passed.

75.     As direct, proximate, and legal result of the aforementioned breaches of the covenant of good faith and fair dealing, Plaintiff and the Class have suffered damages.

**WHEREFORE,** Plaintiffs on behalf of themselves and similarly situated Class members, seek a judicial declaration determining that the premiums charged and the terms of the force-placed insurance policies violate the duties of good faith and fair dealing.  Plaintiffs also seek compensatory damages resulting from Wells Fargo's breach of their duties.  Plaintiffs further seek all relief deemed appropriate by this Court, including attorney's fees and costs.

## COUNT II

### VIOLATION OF THE REAL ESTATE SETTLEMENT AND PROCEDURE ACT ("RESPA") 12 U.S.C. § 2601 *et seq.* (against Wells Fargo)

76.     Plaintiffs re-allege and incorporate Paragraphs 1 – 67 above as if fully set forth herein and further allege as follows.

77.     Plaintiffs' and the Class's mortgage loans qualify as "federally related mortgage loans" under § 2602(1)(B)(i) because the mortgage loans were made in whole or in part by a lender, the deposits or accounts of which are insured by any agency of the Federal Government, or were made in whole or in part by a lender which is regulated by any agency of the Federal Government.

78.     This claim for relief arises under 12 U.S.C. § 2605 which authorizes damages in a class action for:

> (A) any actual damages to each of the borrowers in the class as a result of the failure of Defendants to comply with any provision of the section; and
>
> (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not greater than $1,000 for each member

CASE NO. 1:11-CV-21233-ALTONAGA/SIMONTON

> of the class. Section 2605 states that the total amount of damages under this subparagraph in any class action may not exceed the lesser of (i) $500,000 or (ii) 1 % of the net worth of servicer.

79.     This section requires that all charges related to force-placed insurance, apart from charges subject to state regulation as the business of insurance, imposed on the borrower by or through the servicer shall be ***bona fide and reasonable***.

80.     Wells Fargo is a mortgage servicer or lender to whom the requirements of section 2605 of RESPA apply.

81.     Wells Fargo has violated § 2605 of RESPA by charging premiums that are unfairly and egregiously costly. This excessively-priced, force-placed insurance cannot be considered *bona fide* and reasonable because Wells Fargo exercised its discretion in choosing an insurance policy capriciously, in bad faith, and in contravention of the parties' reasonable expectations by purposefully selecting an exorbitantly-priced policy and by giving and receiving kickbacks for the procurement of these exorbitantly-priced, force-placed insurance policies. It has negotiated exclusive terms with QBE whereby it receives kickbacks tied to the cost of the insurance premiums. This incentive drives Wells Fargo to purchase the highest priced forced-placed insurance policy that it can, and to often include coverage that is unnecessary.

82.     The force-placed insurance purchased by Wells Fargo and passed on to Plaintiffs and the Class cannot be considered bona fide and reasonable as it can cost up to ten times the amount of standard insurance that a borrower was previously paying or could obtain on the open market.

83.     Furthermore, the high-priced premiums charged to Plaintiffs and the Class cannot be considered reasonable because, despite Wells Fargo receiving a kickback or commission on

CASE NO. 1:11-CV-21233-ALTONAGA/SIMONTON

each policy it purchases, it does not pass that savings amount on to Plaintiffs or the Class. Instead, it still charges the borrowers the full unwarranted and unreasonable amount for the exorbitantly-priced and/or backdated force-placed insurance.

84. The foregoing actions constitute a general business practice and pattern of Wells Fargo.

**WHEREFORE**, Plaintiffs and the Class members seek a judgment in their favor against Wells Fargo for the actual damages suffered by them in the form of unreasonable force-placed insurance premiums in violation of Section 2605 of RESPA, together with additional damages the court may allow as a result of the pattern of purchasing high-priced and unnecessary force-placed insurance in order to collect a large kickback or commission. Plaintiffs also seek all costs of litigating this action including attorney's fees.

## COUNT III

## UNCONSCIONABILITY (against Wells Fargo)

85. Plaintiffs re-allege and incorporate Paragraphs 1 – 67 above as if fully set forth herein and further allege as follows.

86. Plaintiffs' and the Class Members' mortgage contracts contained a provision that allowed the mortgage servicer to force-place an insurance policy on the borrower if their homeowner's insurance lapsed.

87. This provision in the standard mortgage instrument that allows Wells Fargo to force-place high-cost insurance and charge borrowers the cost of obtaining that insurance and misrepresents why the cost of force-placed insurance is excessive is procedurally and substantively unconscionable.

88.     While this standardized provision states that the cost of the force-placed insurance might exceed the cost of insurance that a borrower could obtain, it does not authorize or contemplate that Wells Fargo or the other Defendants will derive hidden profits and a financial windfall by charging the borrower for the full price of the premium although a percentage of that premium is paid back to Wells Fargo in the form of commissions and kickbacks that are not earned.  No reasonable person would agree to the foregoing provision if they were aware that they were paying much more than the true cost of the insurance policy because a portion, based upon a percentage of the cost, was being paid back to the mortgage servicer or if they were aware that the Defendants would have an incentive to choose an exorbitantly-priced and/or backdated policy in order to reap huge profits off of the borrowers.

89.     Plaintiffs and the Class are borrowers and were not in a position to negotiate the terms of the mortgage and were also not in a position to know of or experience the results of Defendants' practices before obtaining their mortgages.

90.     Considering the business acumen and experience of Defendants in relation to Plaintiffs and the Class, the great disparity in the parties' relative bargaining power, the inconspicuousness and incomprehensibility of the contract language at issue, the purpose and effect of the applicable terms, the allocation of the risks between the parties, and other public policy considerations, the provision in the mortgage instrument relating force-placed insurance is procedurally unconscionable.

91.     The same provision is substantively unconscionable because it does not disclose nor contemplate that Defendants will derive hidden profits and a financial windfall from force-placed insurance through exclusive relationships and kickbacks.  No reasonable person would have contemplated or agreed to the foregoing provision if they were aware that they were paying

CASE NO. 1:11-CV-21233-ALTONAGA/SIMONTON

much more than the true cost of the insurance policy because a percentage of the cost of the force-placed insurance would be paid to the mortgage servicer and would provide Defendants the incentive to place excessively priced insurance on the mortgage loan.

**WHEREFORE**, based on the procedural and substantive unconscionability of the contract provision at issue, Wells Fargo should be required to refund an amount equal to all hidden profits or other financial benefits previously collected from Plaintiffs and members of the Class, and to rescind all such amounts charged but not yet collected from Plaintiffs and the Class.

<u>**COUNT IV**</u>

<u>**UNJUST ENRICHMENT**</u>

92.     Plaintiffs re-allege and incorporate Paragraphs 1 – 67 above as if fully set forth herein and further allege as follows.

93.     Defendants received from Plaintiffs and Class Members a benefit in the form of overcharges for force-placed insurance policies which are excessive and unreasonable, and are the result of overcharging and overreaching.

94.     Defendants entered into an agreement where QBE would provide force-placed insurance policies to Wells Fargo, Plaintiffs, and the Class which were paid for by Plaintiffs and the Class at prices that were far higher than the market rates for similar policies.  Defendants knew that the charges for these policies were excessive and not the result of good faith practices.

95.     QBE paid significant monies in bribes and kickbacks directly to Wells Fargo in order to be able to exclusively provide force-placed insurance policies at unreasonable rates.

96.     As a result, Plaintiff and the Class have conferred a benefit on Defendants, and Defendants have knowledge of this benefit and have voluntarily accepted and retained the benefit conferred on them.

97.     Defendants will be unjustly enriched if they are allowed to retain the benefit, and each class member is entitled to an amount equal to the amount each class member enriched Defendants and for which Defendants have been unjustly enriched.

98.     Nothing herein seeks to stop the QBE Defendants from selling force-placed insurance policies, or end Wells Fargo's practice of placing force-placed insurance on properties. Plaintiff only seeks that the Defendants provide same in good faith and not at inflated and noncompetitive prices.

**WHEREFORE,** Plaintiffs and Class Members demand an award against Defendants for the amounts equal to the amount each class member enriched Defendants and for which Defendants have been unjustly enriched, and such other relief as this Court deems just and proper.

## COUNT V

## TORTIOUS INTERFERENCE WITH A BUSINESS RELATIONSHIP
### (against QBE)

99.     Plaintiffs re-allege and incorporate Paragraphs 1 – 67 above as if fully set forth herein and further allege as follows.

100.    Plaintiffs and the class members have a business relationship with Well Fargo pursuant to the mortgage contracts.  Plaintiffs and the Class have legal rights under these mortgage contracts.  For example, the Plaintiffs and the Class have a right not to be charged exorbitant charges in bad faith for forced-place insurance.

101.    QBE has knowledge of Plaintiff and the class's business relationship with Wells Fargo pursuant to the mortgage contracts.  QBE is not a party to the mortgage contracts, nor is it a third-party beneficiary.  Further, QBE does not have any beneficial, economic or supervisory interest in the mortgage contracts.

102.    QBE intentionally and unjustifiably interfered with the Plaintiffs and the Class's rights under the mortgage contracts, as described above by, *inter alia*, paying kickbacks to Wells Fargo and by charging for administering the Wells Fargo's loan portfolio, which are purposefully and knowingly charged to Plaintiffs and the Class.

103.    Plaintiffs and the Class have been damaged as a result of QBE's interference with their mortgage contracts by being charged bad faith, exorbitant and illegal charges for force-placed insurance in contravention of their rights under the mortgages.

WHEREFORE Plaintiffs and the Class members seek a judgment in their favor against the QBE for the actual damages suffered by them as a result of QBE's tortious interference. Plaintiffs also seek all costs of litigating this action including attorney's fees.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves and all similarly situated individuals demand judgment against Defendants as follows:

(1)    Declaring this action to be a proper class action maintainable pursuant to Rule 23(a) and Rule 23(b)(1) and (2) or Rule(b)(3) of the Federal Rules of Civil Procedure and declaring Plaintiffs and their counsel to be representatives of the class;

(2)    Awarding damages sustained by Plaintiffs and the Classes as a result of Defendants' breach of the implied covenant of good faith and fair dealing, together with pre-judgment interest;

(3)    Finding that Defendants have been unjustly enriched and requiring Defendants to refund all unjust benefits to Plaintiffs and the Class, together with pre-judgment interest;

CASE NO. 1:11-CV-21233-ALTONAGA/SIMONTON

(4)     Awarding damages – actual and additional as the court may allow – sustained by Plaintiffs and the class as a result of Defendants violation of section 2605 of the Real Estate Settlement and Procedure Act together with attorney's fees and costs;

(5)     Declaring the provision in the mortgage instrument relating to force-placed insurance to be procedurally and substantively unconscionable and requiring Defendants to refund an amount equal to all hidden profits or other financial benefits collected from Plaintiffs and the Class, and to rescind all such amounts charged but not yet collected from Plaintiffs and the Class by virtue of the provision;

(6)     Awarding damages sustained by Plaintiffs and the Class as a result of QBE's tortious interference;

(7)     Awarding Plaintiffs and the Class costs and disbursements and reasonable allowances for the fees of Plaintiff's and the Class's counsel and experts, and reimbursement of expenses; and

(8)     Such other and further relief the Court deems just and equitable.

## **DEMAND FOR JURY TRIAL**

Plaintiffs and the Class request a jury trial for any and all Counts for which a trial by jury is permitted by law.

CASE NO. 1:11-CV-21233-ALTONAGA/SIMONTON

Respectfully submitted,

*s/ Lance A. Harke*

Lance A. Harke, P.A.
Florida Bar No. 863599
Howard M. Bushman, P.A.
Florida. Bar No. 0364230
**HARKE CLASBY & BUSHMAN LLP**
9699 NE Second Avenue
Miami Shores, Florida 33138
Tel: 305-536-8220/Fax:305-536-8229

Adam M. Moskowitz, Esq.
Florida Bar No. 984280
Thomas A. Tucker Ronzetti, Esq.
Florida Bar No. 965723
Robert J. Neary, Esq.
Florida Bar No. 0081712
**KOZYAK TROPIN &
THROCKMORTON, P.A.**
2525 Ponce de Leon, 9th Floor
Coral Gables, Florida 33134
Tel.: 305-372-1800/Fax: 305-372-3508

Jeffrey N. Golant Esq.
1000 W. McNab Rd. Ste. 150
Pompano Beach, FL 33069
Tel:  (954) 942-5270/Fax: (954) 942-5272

Chip Merlin, Esq.
**MERLIN LAW GROUP**
777 S. Harbour Island Blvd.
Tampa, FL 33602
Tel: (813) 229-1000/Fax: (813) 229-3692

*Counsel for Plaintiff*

CASE NO. 1:11-CV-21233-ALTONAGA/SIMONTON

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on this 5th day of August, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing documents is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic filing.

<u>*s/ Lance A. Harke*                  </u>

CASE NO. 1:11-CV-21233-ALTONAGA/SIMONTON

### SERVICE LIST

William S. Berk
William Xanttopoulos
**BERK, MERCHANT & SIMS, PLC**
2 Alhambra Plaza
Suite 700
Miami, FL 33134
Telephone: 786-338-2851
Facsimile: 786-364-1814
*Counsel for QBE Insurance Corporation and
Sterling National Insurance Agency*


*Served Via CM/ECF Transmission*

Michael Keith Winston, Esq.
mwinston@carltonfields.com
David B. Esau, Esq.
desau@carltonfields.com
**Carlton Fields PA**
CityPlace Tower, Suite 1200
525 Okeechobee Boulevard
West Palm Beach, FL 33401
Tel: 561-659-7070
Fax: 561-659-7368
*Counsel for Defendants Wells Fargo
Financial, Inc., Wells Fargo Financial
Agency Co, Wells Fargo Financial
America, Inc., Wells Fargo Financial
Florida, Inc., Wells Fargo Servicing
Solutions, LLC, Wells Fargo Financial
Leasing, Inc., Wells Fargo Financial
System Florida, Inc., and Wells Fargo
Insurance*


*Served Via CM/ECF Transmission*

Andrew L. Sandler
Robyn C. Quattrone
Jennifer Peck
**BUCKLEY SANDLER LLP**
1250 24th Street, NW
Suite 700
Washington, DC 20037
Telephone: 202-349-8000
Facsimile: 202-349-8080
*Counsel for QBE Insurance Corporation and
Sterling National Insurance Agency*


*Served Via CM/ECF Transmission*