UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI-DADE DIVISION

CASE NO. 11-21233-CIV-ALTONAGA/Simonton

RAY WILLIAMS; LUIS JUAREZ;
and MIGDALLAH JUAREZ, on behalf of
themselves and all others similarly situated,

        Plaintiffs,

v.

WELLS FARGO BANK, N.A.;
WELLS FARGO INSURANCE, INC.;
QBE SPECIALTY INSURANCE CO.; and
STERLING NATIONAL INSURANCE AGENCY, INC.
(n/k/a QBE FIRST INSURANCE AGENCY, INC.),

        Defendants.
_____/

## DEFENDANT QBE FIRST INSURANCE AGENCY, INC.'S (F/K/A STERLING NATIONAL INSURANCE AGENCY, INC.) MOTION TO DISMISS AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Defendant QBE FIRST Insurance Agency, Inc. (f/k/a Sterling National Insurance Agency, Inc.) ("QBE FIRST"), respectfully moves this Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss all claims in the Amended Complaint against QBE FIRST. The grounds for this motion are:

1. Plaintiffs have failed to state a claim for unjust enrichment because Plaintiffs have not alleged, and cannot allege, that QBE FIRST received a benefit from Plaintiffs, or received a benefit from Plaintiffs without adequate consideration.

2. Plaintiffs' have failed to state a claim for tortious interference with a business relationship because they have not adequately pled intentional or unjustified interference by QBE FIRST in their contractual relationships with Wells Fargo Bank, N.A. ("Wells Fargo"), have not pled malice or ill will, and have not pled any damages caused by any alleged interference by QBE FIRST.

## MEMORANDUM OF POINTS AND
## AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

In sum and substance, the Amended Complaint asserts that the lender-placed insurance coverage obtained to insure Plaintiffs' mortgaged properties, after Plaintiffs failed to maintain their own hazard insurance as required by the express terms of their mortgages, was more expensive than insurance coverage that Plaintiffs could have obtained for themselves. Nowhere do Plaintiffs allege that QBE FIRST's insurance was duplicative, unnecessary or not permitted by the explicit terms of Plaintiffs' mortgages. Furthermore, Plaintiffs do not—and cannot— allege that the insurance premiums were not authorized by their contractual obligations to their lenders or that Plaintiffs did not receive the benefit of the insurance policies. As such, Plaintiffs allegations fail to state a claim under either theory of liability directed against QBE FIRST.

Specifically, Plaintiffs' unjust enrichment claim should be dismissed because Plaintiffs have not alleged that QBE FIRST received a benefit without consideration, as required by well-established Florida case law. Plaintiffs' claim of tortious interference with a business relationship similarly should be dismissed because Plaintiffs have not alleged that QBE FIRST acted with malice or ill will; that QBE FIRST directly interfered with their contractual relationships with Wells Fargo; that any action of QBE FIRST caused Wells Fargo to breach its obligations to Plaintiffs; or that Plaintiffs suffered damages as a result of any alleged interference.

## BACKGROUND

When Plaintiffs obtained the mortgages that are the subject of this case, they entered into contracts with their mortgage lenders and agreed to maintain homeowners insurance on their properties to protect their own interests in the mortgaged properties as well as those of their lenders, Wachovia and later Wells Fargo, to whom the loans were transferred upon Wells Fargo's purchase of Wachovia. (*See* Pls.' Amended Compl., ECF No. 44 at ¶¶ 17, 33 (S.D. Fla. filed August 5, 2011) ("Amend. Compl.").) Plaintiffs do not dispute that they were obligated to maintain continuous hazard insurance coverage from an insurer of their choosing ("voluntary coverage"), nor do they deny that their mortgages explicitly state that their loan servicers had the authority to place hazard insurance on the mortgaged properties, known as lender-placed or force-placed insurance ("LPI"), if Plaintiffs failed to fulfill their obligations to maintain voluntary coverage. (Amend. Compl. ¶ 17, 33; Ex. A at ¶¶ 3, 5; Ex. B at ¶ 5.) These standard

mortgage provisions are authorized by state statute.  *See, e.g.*, Fla. Stat. Ann. § 655.946 (West 1992).  The mortgages attached to the Amended Complaint also state that if the loan servicers placed insurance on the mortgaged properties, the cost of that insurance, plus interest, would become additional debt on the mortgage.  (Amend. Compl. Ex. A at ¶¶ 3, 5; Ex. B at ¶ 5.)  The Juarez loan documents specifically warned that "the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Grantor could have obtained."  (Amend. Compl. Ex. B at ¶ 5.)

Wells Fargo has contracted with QBE FIRST to monitor the individual properties in some of its servicing portfolios and transmit notifications to borrowers on behalf of Wells Fargo when the borrowers' insurance has lapsed.  These notifications are sent in addition to the lapse/cancellation notices borrowers receive from their own insurance companies.  (*See* Amend. Compl. ¶¶ 42, 49.)  QBE FIRST employees also contact the insurance company agents for the borrower's voluntary coverage, or the borrowers directly, to confirm suspected lapses.  In Florida, QBE FIRST also generally attempts to call borrowers to encourage them to obtain voluntary coverage to avoid the increased premium cost associated with LPI.

Pursuant to QBE FIRST's agreement with Wells Fargo, upon a lapse of voluntary coverage on one of the properties in Wells Fargo's portfolio, QBE FIRST works to insure the property automatically, even if the property is damaged or otherwise uninsurable by a voluntary coverage provider, and even if Wells Fargo or QBE FIRST are unaware of the lapse.  (Amend. Compl. ¶ 26 (noting that when there is a lapse in coverage, "insurance is automatically placed" on the property).)  Indeed, should the property be destroyed at any time on or after the day a borrower's voluntary coverage lapses, the property is insured and the borrower is protected without having taken any action to protect himself.  Notably, the servicer, not the borrower, is assessed the annual premium for the LPI.  The loan documents authorize the loan servicer to bill the borrower for the LPI premiums, which is done if, and only if, a lapse is confirmed.[1]

LPI coverage is in place only for the minimum period necessary.  Once the borrower obtains voluntary (rather then lender-placed) coverage, the LPI policy is cancelled and any unearned premiums are reimbursed from the date that voluntary coverage was reinstated, regardless of when the borrower provides notification that voluntary coverage was reinstated.

---

[1] In the event a borrower is charged the premium by his servicer and it is later confirmed that no lapse in voluntary coverage occurred, the servicer refunds the premium to the borrower.

3

QBE FIRST provides a critical service to protect borrowers and lenders from the risks of damage or destruction when borrowers fail to maintain the hazard insurance required on their properties by their mortgages. LPI is intended as a stop-gap when borrowers have failed to heed the multiple notifications provided to them by the providers of their voluntary coverage and by their servicers, through QBE FIRST, to obtain policies of their own choosing to replace their lapsed policies. Absent this coverage, borrowers would be subject to financial devastation and ruin in the event of damage or destruction to their home. Moreover, lenders would not lend money without this failsafe protection.

## PLAINTIFFS' ALLEGATIONS[2]

Plaintiff Williams obtained a mortgage from Wachovia Bank, which was later serviced by Wells Fargo. (Amend. Compl. ¶ 38.) On October 17, 2010, Williams' hazard insurance, which was required by his mortgage, lapsed. (Amend. Compl. ¶ 39.) Williams was able to secure new hazard insurance on November 15, 2010, but the property was not insured with voluntary coverage between October 17 and November 15, 2010. (Amend. Compl. ¶ 40.) Williams' mortgage required continuous coverage throughout its duration. (Compl. ¶¶ 17, 33; Ex. A ¶ 3.) Williams does not allege that he notified Wells Fargo when his new insurance coverage was in place.

On December 27, 2010, Williams received notice from QBE Specialty Insurance Company that the LPI policy, which had been placed on his property due to the lapse, and cancelled after Williams tendered proof that he had obtained voluntary coverage for the mortgaged property, had dates of coverage of October 17, 2010 to November 15, 2010 and listed the *pro rata* premium for that period of coverage. (Amend. Compl. ¶ 42; *see also* Ex. 1 to the Michael Seminario Declaration ("Seminario Decl.").)[3] It is also relevant that Williams actually

---

[2] These allegations are taken from Plaintiffs' Complaint. Defendants do not admit them by including them here, but merely reference them for purposes of resolving this motion.

[3] This Court may properly consider the underlying documents in this action without converting this motion to dismiss into a motion for summary judgment because the documents are referenced in Plaintiffs' complaint and are integral to understanding Plaintiffs' allegations. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (stating that documents incoporated by reference in a complaint can be considered on a Rule 12(b)(6) motion to dismiss); *Halmos v. Bomardier Aerospace Corp.*, 404 F. App'x 376, 377 (11th Cir. 2010) (on a motion to dismiss, the court primarily considers the allegations in the complaint but is not necessarily limited to the four corners of the complaint); *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (holding that there was no error when the district court considered a contract that was central to the dispute on a motion to dismiss). Indeed, the Eleventh Circuit has noted that the rules for considering 12(b)(6) motions permit consideration of allegations within their context. *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999).

received at least three notices prior to December 27 informing him that temporary insurance had been issued on the property effective October 17, 2010 and requesting proof of voluntary coverage for the property.[4]  In these notices, Williams was reminded that he had the right to purchase his own hazard insurance independently, and in fact was encouraged to do so.  He was also reminded that if he did not purchase voluntary coverage, the insurance obtained for his property would be through Wells Fargo Insurance, Inc., a licensed insurance agency and an affiliate of Wells Fargo Bank, N.A.  (Seminario Decl. Ex. 3.)  The notices also stated that Wells Fargo Insurance, Inc. would receive a commission on that insurance policy.  (*Id.*)

The Juarez Plaintiffs obtained a mortgage from Wachovia Bank, and the servicing responsibility was subsequently transferred to Wells Fargo.  (Amend. Compl. ¶ 45.)  The Juarez mortgage required continuous hazard insurance coverage throughout its duration.  (Amend. Compl. ¶¶ 17, 33, Ex. B ¶ 5.)  On March 3, 2010, the existing voluntary coverage lapsed.  (Amend. Compl. ¶ 46.)  On May 11, 2010, Wells Fargo sent the Juarezes a notice indicating that its records reflected an expiration of voluntary coverage and there had been no notification of a replacement policy.  (Seminario Decl. Ex. 6.)

Not having received evidence of any voluntary coverage on the Juarezes' property, on June 10, 2010, Wells Fargo sent the Juarezes a notice stating that insurance had been obtained effective March 3, 2010.  (Seminario Decl. Ex. 7.)  On that same day, QBE Specialty Insurance Company sent the Juarezes a notice listing the coverage dates for the LPI policy as March 3, 2010 to March 3, 2011 and listed the corresponding premium for the coverage.  (Seminario Decl. Ex. 8.)  On July 16, 2010, Wells Fargo sent another explanatory notice and QBE Specialty Insurance Company sent the Juarezes the additional insured certificate listing the same coverage dates and corresponding premium.  (Amend. Compl. ¶ 49; Seminario Decl. Exs. 9, 10.)  In August 2010, Mr. Juarez obtained his own insurance and remitted proof of the insurance to

---

[4] On November 1, 2010, Wells Fargo sent Williams a notice indicating that it had come to its attention that it did not have a current insurance policy for Williams' property.  (Seminario Decl. Ex. 2.)  The notice requested that Williams send proof of his current policy immediately.  (*Id.*)  On December 2, 2010, Wells Fargo sent Williams a notice informing him that temporary insurance had been issued on the property effective October 17, 2010.  (Seminario Decl. Ex. 3.)  On that same day, QBE Specialty Insurance Company also sent a "90-Day Binder" to Williams, which specified the policy term of October 17, 2010 through October 17, 2011, and listed all applicable premiums and fees that would be assessed for that coverage.  (Seminario Decl. Ex. 4.)  On December 13, 2010, QBE Specialty Insurance Company sent Williams a notice indicating that the LPI policy, which had been placed on his property due to the lapse in voluntary coverage, was cancelled after Williams tendered proof that he had obtained voluntary insurance to cover the mortgaged property.  (Seminario Decl. Ex. 5.)  That notice listed the effective dates of coverage and the *pro rata* share of the annual premium.  (*Id.*)

Wells Fargo.  (Amend. Compl. ¶ 47.)  The LPI policy was then cancelled and the unearned premium reimbursed from the date of the inception date of the voluntary coverage.  (Seminario Decl. Ex. 11.)

## MOTION TO DISMISS STANDARD

To survive a motion to dismiss, a plaintiff's pleadings must contain factual allegations that are "enough to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Indeed, a plaintiff's claim must be "plausible on its face."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  While the allegations in the Amended Complaint are assumed to be true, the allegations must amount to more than mere labels and conclusions or a mere formulaic recitation of the elements of a cause of action.  *Twombly*, 550 U.S. at 545.  Legal conclusions are not entitled to an assumption of truth.  *Iqbal*, 129 S. Ct. at 1949-50.

## ARGUMENT

Neither of Plaintiffs' claims against QBE FIRST are sufficient to survive Rule 12(b)(6).  Plaintiffs' unjust enrichment claim fails because Plaintiffs have not alleged that QBE FIRST received a benefit without conferring consideration.  Plaintiffs' tortious interference with a business relationship claim fails because Plaintiffs have not alleged any actions on behalf of QBE FIRST that could constitute intentional and unjustified interference with Plaintiffs' contractual relationships with Wells Fargo and Plaintiffs have failed to plead that QBE FIRST's actions caused them any damages.

**I.    Plaintiffs' Unjust Enrichment Claim Should Be Dismissed As To QBE FIRST Because Plaintiffs Did Not Confer A Benefit, Or A Benefit Without Adequate Consideration, On QBE FIRST.**

Plaintiffs allege that, along with Wells Fargo, QBE FIRST was unjustly enriched by the placement of insurance on Plaintiffs' mortgaged properties.  (Amend. Compl. ¶¶ 92-98.)  To state a claim of unjust enrichment against QBE FIRST, Plaintiffs were required to plead that:  (1) Plaintiffs conferred a benefit to QBE FIRST, (2) QBE FIRST had knowledge of the benefit, (3) QBE FIRST accepted or retained the benefit conferred, and (4) under the circumstances, it was inequitable for QBE FIRST to retain the benefit without paying for it.  *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1274 (11th Cir. 2009) (citing *Rollins, Inc. v. Butland*, 951 So. 2d 860, 876 (Fla. Dist. Ct. App. 2006)).

Plaintiffs allege that the Defendants received a benefit from the placement of insurance on Plaintiffs' mortgaged properties because the insurance premiums were excessive and unreasonable. (Compl. ¶ 93.) This allegation is insufficient as to QBE FIRST, however, because QBE FIRST did not receive Plaintiffs' premiums, but instead, merely received a commission from the insurance carrier, here QBE Specialty Insurance, and a tracking fee from Wells Fargo for the services provided to those two entities. The mere receipt of an indirect benefit alone does not amount to unjust enrichment. *See Huntsman Packaging Corp. v. Kerry Packaging Corp.*, 992 F. Supp. 1439, 1446 (M.D. Fla. 2009) (noting that the benefit conferred on the defendant must be direct to prevail on a claim of unjust enrichment); *West Coast Life Ins. Co. v. Life Brokerage Partners LLC*, No. 08-80897, 2009 WL 2957749, at *11 (S.D. Fla. Sept. 9, 2009) (dismissing claim because allegation that defendant "received compensation for its role in the transactions" was insufficient). Plaintiffs do not allege that they paid their insurance premiums, or any other fees, to QBE FIRST. Indeed, QBE FIRST never collects fees or premiums directly from a borrower and did not do so with regard to either the Williams or Juarez Plaintiffs. Furthermore, any benefit QBE FIRST received was a result of its agreement with Wells Fargo to provide tracking services on various Wells Fargo portfolios and to coordinate the insurance coverage provided by the insurance carriers it uses in each jurisdiction. Indeed, QBE FIRST's tracking fee was predetermined and based on the general factors of the Wells Fargo portfolio and not on Plaintiffs' individual properties. As a result, QBE FIRST did not receive a direct benefit from Plaintiffs sufficient to support a claim for unjust enrichment. *See Huntsman Packaging Corp.*, 992 F. Supp. at 1446 (holding that the benefit conferred on the defendant must be "a direct benefit" to maintain a cause of action for unjust enrichment); *West Coast Life Ins. Co.*, 2009 WL 2957749, at *11.

Even if there had been a line of payment between Plaintiffs and QBE FIRST with regard to the payment of insurance premiums, which there was not, Plaintiffs' claim still fails because the Plaintiffs received the benefit of the insurance coverage in exchange for the insurance premiums they were assessed. There can be no claim for unjust enrichment when adequate consideration is provided for the benefit conferred. *Baptista v. JPMorgan Chase Bank, N.A.*, 640 F.3d 1194, 1198 n.3 (11th Cir. 2011) (citing *Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322, 331-32 (Fla. Dist. Ct. App. 2007)). Plaintiffs agreed to the provision of LPI in their mortgage documents if they let their voluntary coverage lapse, and they were given notice that the cost of

7

those premiums would be added to their mortgages. (Amend. Compl. ¶¶ 17, 33.) Indeed, the Juarez mortgage specifically warned that the cost of the LPI premiums would likely be significantly higher than what the borrowers could obtain on their own. (Amend. Compl. Ex. B ¶ 5.) Furthermore, without the coverage, Plaintiffs would have been in violation of their mortgage contracts and exposed to serious and potentially irreparable financial harm had their properties been damaged or destroyed and had they not had the ability to repay their mortgages without insurance proceeds. Thus, Plaintiffs received the benefit of the bargain into which they entered with their lender. *See Am. Safety Ins. Serv., Inc.*, 959 So. 2d at 331-32 (noting that parties entered into agreements and received exactly what they bargained for and therefore defendant was not unjustly enriched); *Baptista*, 640 F.3d at 1198 n.3. As a result, Plaintiffs have failed to state a claim of unjust enrichment against QBE FIRST.

Finally, Plaintiffs' unjust enrichment claim fails because Plaintiffs could have avoided any benefit they indirectly conferred on QBE FIRST. As alleged in the Amended Complaint, at origination, not only did the Plaintiffs' mortgages inform them that they were required to maintain insurance coverage on the mortgaged properties, the mortgages also stated that if they failed to maintain coverage, coverage would be obtained on their behalf and they would be required to reimburse their loan servicers for that coverage. (Amend. Compl. ¶¶ 17, 33.) Plaintiffs could have avoided the LPI premiums altogether by maintaining their own insurance coverage, or could have minimized the LPI premiums by quickly obtaining replacement coverage upon a lapse; indeed, Plaintiff Williams did so by obtaining replacement voluntary coverage within a month of the lapse of his initial voluntary policy. Because Plaintiffs had the ability and opportunity to avoid the higher insurance premiums, their claim for unjust enrichment fails. *See Baptista*, 640 F.3d at 1198 n.3 (affirming dismissal of unjust enrichment claim because plaintiff received a benefit for the fee imposed and could have avoided the fee by not accepting the benefit); *see also Lass v. Bank of America, N.A.*, No. 11-10570, --- F.2d ---, 2011 WL 3567280, at *7 (D. Mass. Aug. 11, 2011) (dismissing unjust enrichment claim in lender-placed insurance context because borrower was given multiple opportunities to purchase voluntary coverage and was warned that lender-placed insurance could be more expensive). Accordingly, Plaintiffs' unjust enrichment claim should be dismissed.

II.     **Plaintiffs' Tortious Interference
        With A Business Relationship Claim Should Be
        Dismissed For Failure To Plead Intentional and Unjustified Interference
        And Failure To Plead Damages As A Result Of Any Alleged Interference.**

Plaintiffs allege that QBE FIRST tortiously interfered with Plaintiffs' contractual relationships with their loan servicer, Wells Fargo.  (Amend. Compl. ¶¶ 99-103.)  Under Florida law, a claim of tortious interference is premised on a showing of *both* intent to damage a business relationship *and* a lack of justification for taking the action that caused the damage. *Smith v. Emery Air Freight Corp.*, 512 So. 2d 229, 230 (Fla. Dist. Ct. App. 1987).  Thus, to survive a motion to dismiss, Plaintiffs were required to plead:  (1) the existence of a business relationship between themselves and Wells Fargo, (2) QBE FIRST's knowledge of that business relationship, (3) that QBE FIRST intentionally and unjustifiably interfered with that business relationship, and (4) that Plaintiffs suffered damages as a result of QBE FIRST's interference. *Romika-USA, Inc. v. HSBC Bank USA, N.A.*, 514 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007). Plaintiffs have failed to allege facts sufficient to support the third and fourth elements of this claim under Florida law.[5]

First, Plaintiffs have failed to articulate any actions taken by QBE FIRST that could constitute direct or intentional interference, and Plaintiffs have not met the Florida standard which requires that Plaintiffs plead facts sufficient to show that QBE FIRST acted with actual malice, spite, ill-will, or other bad motive.  *See Rockledge Mall Assocs., Ltd. v. Custom Fences of S. Brevard, Inc.*, 779 So. 2d 554, 557 (Fla. Dist. Ct. App. 2001) ("The existence of malice is key to the tort of tortious interference with a business relationship."); s*ee also Southern Bell Tel. and Tel. Co. v. Roper*, 482 So. 2d 538 (Fla. Dist. Ct. App. 1986) ("Absence of malice [is] a primary issue.  The only way that malice can be proven in the absence of direct evidence is by proving a series of acts which, in their context or in light of the totality of the circumstances, are inconsistent with the premise of a reasonable man pursuing a lawful objective, but rather indicate a plan or course of conduct motivated by spite, ill-will, or other bad motive.").  Plaintiffs' conclusory allegation that QBE FIRST "intentionally and unjustifiably interfered" with Plaintiffs' mortgages, (Amend. Compl. ¶ 102), is insufficient because Plaintiffs do not allege how or why QBE FIRST allegedly interfered with their mortgages, and do not allege that any

---

[5] As a result, the court need not reach the issue of the first and second elements of the cause of action.

action taken by QBE FIRST was improper or unjustified. *See Coach Services, Inc. v. 777 Lucky Accessories, Inc.*, 752 F. Supp. 2d 1271, 1273-74 (S.D. Fla. 2010) (dismissing tortious interference claim because claim involved legal conclusions rather than factual allegations to support the claim). Indeed, Plaintiffs do not allege that QBE FIRST violated any of its contractual obligations (if any) or violated any statute, regulation, ordinance, or other authority. Furthermore, Plaintiffs have not alleged any other form of improper conduct on behalf of QBE FIRST, such as misrepresentations or threats of illegal conduct that could constitute interference with Plaintiffs' mortgages. *See Romika-USA, Inc.*, 514 F. Supp. 2d at 1340 (citing Florida Standard Jury Instruction (Civil) MI 7.2, which includes "physical violence, misrepresentations, illegal conduct or threats of illegal conduct" to assess tortious interference claim); *see also Boldstar Technical, LLC v. Home Depot, Inc.*, 517 F. Supp. 2d 1283, 1289 (S.D. Fla. 2007) (same). All Plaintiffs do allege is that QBE FIRST provided a service to Wells Fargo that was disclosed in Plaintiffs' mortgage documents under the very circumstances described in Plaintiff's mortgage documents when Plaintiffs failed to fulfill their obligations to maintain voluntary coverage, again, as required by their mortgage documents. (Amend. Compl. ¶¶ 17, 33, 34.) This is insufficient to show intentional or unjustified interference.

Second, Plaintiffs' allegation of interference fails because Plaintiffs do not allege that QBE FIRST engaged in any conduct that actually interfered with Plaintiffs' business relationship, *i.e.*, actions that led to Wells Fargo's breach of its contracts with Plaintiffs – and indeed, Plaintiffs do not allege that Wells Fargo breached any contract. *See Romika-USA, Inc.*, 514 F. Supp. 2d at 1340 (citing the definition of "improper conduct" as "the purposeful causing of a breach of contract"); *Chicago Title Ins. Co. v. Alday-Donalson Title Co. of Fla., Inc.*, 832 So. 2d 810, 814 (Fla. Dist. Ct. App. 2002) (requiring evidence that defendant intended to cause a breach of contract); *see also Marquez v. PanAmerican Bank*, 943 So. 2d 284, 286-87 (Fla. Dist. Ct. App. 2006) (dismissing tortious interference claim for failure to plead intentional and unjustified interference where defendant's only action was submitting an offer to purchase assets pursuant to an invitation to make an offer). Plaintiffs fail to allege that any action by QBE FIRST prevented Wells Fargo from satisfying its contractual obligations to Plaintiffs as set forth in their mortgages, which form the bases of Plaintiffs' alleged relationships with Wells Fargo. QBE FIRST did not cause Wells Fargo to breach its contract with Plaintiffs, and as noted above, Plaintiffs fail even to allege that Wells Fargo breached its contractual relationships with

Plaintiffs. Rather, the only actions taken by QBE FIRST and described by Plaintiffs are actions that Wells Fargo was authorized to request under the explicit terms of Plaintiffs' mortgages. As a result, Plaintiffs have failed to plead that there was any interference whatsoever with their relationship with Wells Fargo.

Third, Plaintiffs' vague and conclusory allegation that Wells Fargo acted in bad faith when it endeavored to insure the Plaintiffs' mortgaged properties, upon Plaintiffs' failure to do so themselves, is insufficient to establish QBE FIRST's interference with Plaintiffs' relationships with their loan servicer. (Amend. Compl. ¶ 103.) Plaintiffs do not allege that QBE FIRST itself acted in bad faith or that QBE FIRST intended to damage Plaintiffs' business relationship with Wells Fargo, both required pleading elements under Florida law. *See Romika-USA, Inc*, 514 F. Supp. 2d at 1339 (requiring "the intent to damage the business relationship and a lack of justification for doing so" for a defendant to be liable for tortious interference). In sum, Plaintiffs have failed to allege that QBE FIRST took any action that violated a contractual obligation or violated Florida law, that QBE FIRST acted with any malice or ill will, or that QBE FIRST made any misrepresentations or took any action that interfered with Plaintiffs contractual relationships with Wells Fargo. *See Lawler v. Eugene Wuesthoff Mem'l Hosp. Ass'n*, 497 So. 2d 1261, 1263 (Fla. Dist. Ct. App. 1986) (dismissing tortious interference claim because complaint failed to allege interference with plaintiff's business relationships). Thus, Plaintiffs have failed to satisfy the third element of their claim of tortious interference.

Finally, Plaintiffs' tortious interference claims also should be dismissed because Plaintiffs have failed to plead that they were harmed *as a result of* any allegedly improper conduct by QBE FIRST. *See Chicago Title Ins. Co.*, 832 So. 2d at 814 (holding that plaintiff could not prevail on tortious interference claim without evidence that the defendant caused or induced a breach of contract that harmed the plaintiff). Rather, Plaintiffs' allegations amount to mere after-the-fact complaints that Wells Fargo should not have exercised its rights under the mortgages, rights that the text of the mortgages clearly establish and which the Plaintiffs do not deny, and rights that Plaintiffs were repeatedly warned about in the letters they received regarding the lapses of their own voluntary coverage on the mortgaged properties. Even if Wells Fargo endeavored to charge Plaintiffs "excessive" LPI premiums—which it did not—Plaintiffs' have failed to allege that Wells Fargo breached its obligations to Plaintiffs or that Plaintiffs were harmed by QBE FIRST rather than merely being the subject of the lawful exercise of Wells

Fargo's contractual rights. The only actions that affected Plaintiffs were Wells Fargo's contracting for the subject insurance policies and seeking reimbursement for those policies from Plaintiffs pursuant to the clear terms of Plaintiffs' mortgages. As a result, Plaintiffs have failed to allege causation and damages and have therefore failed to properly plead tortious interference. Plaintiffs' tortious interference claim against QBE FIRST should therefore be dismissed.

## CONCLUSION

For the foregoing reasons, QBE FIRST respectfully requests that this Court grant its Motion to Dismiss and dismiss Counts IV and V as against QBE FIRST.

Respectfully submitted,

Dated: August 19, 2011

 s/ William S. Berk
William S. Berk (Bar ID # 349828)
wberk@berklawfirm.com
William Xanttopoulous (Bar ID # 997668)
william@wxlaw.net
**Berk, Merchant & Sims, PLC**
2 Alhambra Plaza, Suite 700
Miami, FL 33134
Telephone: (786) 338-2851
Facsimile: (786) 364-1814

Andrew L. Sandler (*pro hac vice*)
asandler@buckleysandler.com
Robyn C. Quattrone (*pro hac vice*)
rquattrone@buckleysandler.com
Jennifer A. Slagle Peck (*pro hac vice*)
jslaglepeck@buckleysandler.com
**BuckleySandler LLP**
1250 24th Street, NW, Suite 700
Washington, DC 20037
Telephone: (202) 349-8000
Facsimile: (202) 349-8080

*Attorneys for Defendant QBE FIRST Insurance Agency, Inc. (f/k/a Sterling National Insurance Agency, Inc.)*

## CERTIFICATE OF SERVICE

I hereby certify that on August 19, 2011, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

                            s/ William Xanttopoulous
                            William Xanttopoulous

## SERVICE LIST

| | |
|---|---|
| Lance August Harke, Esq.<br>lharke@harkeclasby.com<br>Howard Mitchell Bushman, Esq.<br>hbushman@harkeclasby.com<br>**Harke Clasby & Bushman, LLP**<br>155 S. Miami Avenue, Suite 600<br>Miami, FL 33130<br>Tel: 305-536-8220<br>Fax: 305-536-8229<br>*Counsel for Plaintiffs*<br><br>By Notice of Electronic Filing | Adam M. Moskowitz, Esq.<br>amm@kttlaw.com<br>Thomas A. Tucker Ronzetti, Esq.<br>tr@kttlaw.com<br>Robert Neary, Esq.<br>rn@kttlaw.com<br>**Kozyak Tropin & Throckmorton, P.A.**<br>2525 Ponce de Leon, 9th Floor<br>Coral Gables, FL 33134<br>Tel: 305-372-1800<br>Fax: 305-372-3508<br>*Counsel for Plaintiffs*<br><br>By Notice of Electronic Filing |

| | |
|---|---|
| Jeffrey N. Golant, Esq.<br>jgolant@aol.com<br>1000 W. McNab Road, Suite 150<br>Pompano Beach, FL 33069<br>Tel: 954-942-5270<br>Fax: 954-942-5272<br>*Counsel for Plaintiffs*<br><br><u>By Notice of Electronic Filing</u> | Mary Kestenbaum Fortson, Esq.<br>mkestenbaum@merlinlawgroup.com<br>Sean Michael Shaw, Esq.<br>sshaw@merlinlawgroup.com<br>Chip Merlin, Esq.<br>cmerlin@merlinlawgroup.com<br>**Merlin Law Group**<br>777 S. Harbour Island Boulevard, Suite 950<br>Tampa, FL 33602<br>Tel: 813-229-1000<br>Fax: 813-229-3692<br>*Counsel for Plaintiffs*<br><br><u>By Notice of Electronic Filing</u> |
| Michael Keith Winston, Esq.<br>mwinston@carltonfields.com<br>David B. Esau, Esq.<br>desau@carltonfields.com<br>**Carlton Fields PA**<br>CityPlace Tower, Suite 1200<br>525 Okeechobee Boulevard<br>West Palm Beach, FL 33401<br>Tel: 561-659-7070<br>Fax: 561-659-7368<br>*Counsel for Defendant Wells Fargo Insurance*<br><br><u>By Notice of Electronic Filing</u> | William S. Berk, Esq.<br>wberk@berklawfirm.com<br>William Xanttopoulos, Esq.<br>william@wxlaw.net<br>**Berk, Merchant & Sims, PLC**<br>2 Alhambra Plaza, Suite 700<br>Miami, FL 33134<br>Tel: 786-338-2900<br>Fax: 786-338-2888<br>*Counsel for Defendant QBE FIRST Insurance Agency, Inc. (f/k/a Sterling National Insurance Agency, Inc.)*<br><br><u>By Notice of Electronic Filing</u> |

|  |  |
|---|---|
| Andrew L. Sandler, Esq. (*pro hac vice*)<br>asandler@buckleysandler.com<br>Robyn C. Quattrone, Esq. (*pro hac vice*)<br>rquattone@buckleysandler.com<br>Jennifer A. Slagle Peck, Esq. (*pro hac vice*)<br>jslaglepeck@buckleysandler.com<br>**BuckleySandler LLP**<br>1250 24th Street, NW, Suite 700<br>Washington, DC 20037<br>Tel: 202-349-8000<br>Fax: 202-349-8080<br>*Counsel for Defendant QBE FIRST Insurance Agency, Inc. (f/k/a Sterling National Insurance Agency, Inc.)*<br><br>By Notice of Electronic Filing |  |