UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:11-21233-ALTONAGA/SIMONTON

RAY WILLIAMS;
LUIS JUAREZ; and MIGDALIAH JUAREZ;
on behalf of themselves and all others
similarly situated;

       Plaintiffs,

v.

WELLS FARGO BANK, N.A.; WELLS FARGO
INSURANCE, INC.; QBE SPECIALTY
INSURANCE COMPANY; STERLING
NATIONAL INSURANCE AGENCY, INC. (n/ka
QBE FIRST INSURANCE AGENCY, INC.)

       Defendants.
_____/

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT
WELLS FARGO INSURANCE, INC.'S MOTION TO DISMISS THE
AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW**

      Plaintiffs Ray Williams and Luis and Migdaliah Juarez ("Plaintiffs"), on behalf of themselves and all others similarly situated, hereby submit their response in opposition to Defendant Wells Fargo Insurance, Inc.'s Motion to Dismiss Plaintiffs' Amended Complaint and Incorporated Memorandum of Law.

**INTRODUCTION**

      Plaintiffs have brought four claims against Defendant Wells Fargo Insurance, Inc. ("WFI") on behalf of a putative class of mortgagors, alleging that WFI participated in a scheme to "force-place" insurance policies on their properties at excessive and inflated rates. WFI seeks dismissal of the Amended Complaint (as it did with the original) on the ground that Plaintiffs' claims fall short of both the liberal notice pleading requirement of Federal Rule of Civil Procedure 8(a) and the low "plausibility" threshold of Rule 12(b)(6). But Plaintiffs meet both of these standards with their Amended Complaint, reducing the number of defendants in this action from ten to four and tailoring each cause

of action to state a claim against the appropriate subset of the four defendants. Plaintiffs describe Defendants' force-placed insurance scheme in great detail, illustrating how it worked, identifying the players, and explaining how it harmed the Plaintiffs and the putative class they seek to represent. As explained below, these allegations more than satisfy the standards set by both Rule 8(a) and Rule 12(b)(6).

WFI argues first that the Amended Complaint fails to satisfy Rule 8(a) because Plaintiffs reference WFI and its co-defendant, Wells Fargo Bank, N.A. ("WFB") together as "Wells Fargo." The law in the Eleventh Circuit is clear, however, that Rule 8(a) permits this manner of pleading. This is particularly so where, as here, no discovery has been exchanged and, as a result, a plaintiff cannot plead the precise role of each defendant in the wrongdoing alleged. Indeed, under such circumstances, it is *appropriate* to plead the actions of the group and leave development of individual liability questions until after some discovery has been undertaken.

WFI next argues that Plaintiffs have not stated a claim that complies with Rule 12(b)(6). But the four counts alleged against WFI state claims for relief as follows:

*First,* Plaintiffs state a claim for breach of the implied covenant of good faith and fair dealing because, although they were not able to allege which Wells Fargo entity breached their mortgage contracts (Plaintiffs made the agreements with Wachovia Bank before that entity was acquired by Wells Fargo), they describe the operation of the force-placed insurance scheme with detail that is more than sufficient to state a pre-discovery claim for breach of the implied covenant. Moreover, where, as here, a contractual term affords a defendant "substantial discretion" to promote its self-interest, a plaintiff states a claim for breach of the implied covenant of good faith and fair dealing by alleging facts to support the conclusion that the defendant exercised that discretion "capriciously, in bad faith, and in contravention of the Plaintiffs' reasonable expectations." Plaintiffs have clearly satisfied this requirement.

*Second,* Defendants incorrectly conclude that Section 2605(m) of the Real Estate Settlement and Procedure Act ("RESPA") has yet to be enacted. Section 2605(m) was enacted on July 22, 2010 and was in effect when Defendants force-placed property insurance on Plaintiffs' homes. Defendants base their conclusion on a misreading of a provision of the Wall Street Reform and Consumer Protection Act (the "Dodd-Frank

2

Act") that sets future effective dates for amendments to RESPA that await further rulemaking. Congress did not request additional rulemaking for Section 2605(m); the effective dates set forth in that provision of Dodd-Frank, therefore, do not apply to Section 2605(m).

*Third,* unconscionability is an affirmative cause of action and Plaintiffs have alleged ultimate facts to support the conclusion that the insurance provision in their mortgage contracts is both procedurally and substantively unconscionable. Moreover, because Plaintiffs cannot be certain at this stage which Wells Fargo Defendant is bound by their mortgage contracts, the detailed allegations of the Amended Complaint tying both entities to the force-placed insurance scheme state a viable unconscionability claim.

*Fourth,* and finally, Plaintiffs state a claim for unjust enrichment by alleging that WFI collected illegal kickbacks from Plaintiffs as part of the force-placed insurance scheme. The law does not require Plaintiffs to plead privity or "direct contact" to establish that a direct benefit was conferred on WFI, nor must Plaintiffs demonstrate that they did not receive adequate consideration from WFI for the benefit it received in order to state a claim. Moreover, Plaintiffs cannot be certain at this stage which Wells Fargo Defendant was a party to Plaintiffs' mortgage contracts and Rule 8 permits them to assume WFI was not a party to the agreements and to plead their unjust enrichment claim in the alternative. Finally, WFI's argument that Plaintiffs have not explained how they will show harm to the class is premature and should be disregarded by this Court.[1]

## FACTUAL BACKGROUND

Plaintiffs represent a putative class of property owners with mortgages held and serviced by Defendants WFB and WFI (together, the "Wells Fargo Defendants") (D.E. 44 ¶¶ 1, 38, 45, 54). Plaintiffs entered into mortgage contracts with Wachovia Bank,

---

[1] Defendants suggest that *res judicata* or the *Rooker-Feldman* doctrine, relating to prior foreclosure judgments, could bar certain of the putative class's claims. (D.E. 48 at 2). Defendants also suggest that some class members' recovery in this action may be offset by prior foreclosure judgments. (*Id.*) Both arguments assume facts beyond the four corners of the Amended Complaint and are therefore improper on a motion to dismiss. *See Caravello v. Am. Airlines, Inc.,* 315 F. Supp. 2d 1346, 1348 (S.D. Fla. 2004) ("[i]n deciding a motion to dismiss, a court may only examine the four corners of the complaint"). The former argument is also ill-conceived. Plaintiffs do not seek relief from state foreclosure judgments here, nor are the issues presented by this case "inextricably intertwined" with those presented by the hypothetical foreclosure action that WFI describes in its Motion.

3

N.A. ("Wachovia"), but their mortgages were transferred to the Wells Fargo Defendants when WFB acquired Wachovia. (*Id.* ¶ 4, 38, 45).

Plaintiffs' mortgage contracts require them to maintain their own property insurance and provide that if they allow their policies to lapse, then the mortgage servicer may purchase insurance for the property, or "force place" it, and charge the homeowner the full cost of the premium. (*Id.* ¶ 18). In actual practice, when a mortgagor's policy lapses, WFB purchases a replacement policy from Defendant QBE Specialty Insurance Company ("QBE") at many times the going market rate and charges the premium back to the consumer. (*Id.* ¶¶ 18-20, 24, 26-28). If the consumer cannot afford to pay the exorbitant premium, its cost is added to the balance of his or her mortgage loan. (*Id.* ¶ 30). The premium is pre-determined and bears no relation to property insured; rather, each consumer is charged based on WFB's entire portfolio of mortgages. (*Id.* ¶ 26).

The premium the consumer pays for the force-placed insurance is, in fact, inflated. (*Id.*) As part of an exclusive arrangement between QBE and the Wells Fargo Defendants, QBE charges the consumer an amount substantially in excess of the premium paid by WFB and then kicks a substantial portion of the difference back to WFI. (*Id.* ¶¶ 5, 23-29).

This "kickback" is paid by QBE to the Wells Fargo Defendants in order to maintain their exclusive relationship and to keep WFB from seeking competitive bids in the open market. (*Id.* ¶ 25). As part of the same arrangement, WFB grants QBE access to WFB's database of mortgagors, which it routinely searches for lapsed insurance policies. (*Id.* ¶ 26). Once WFB replaces the lapsed policy with a policy purchased from QBE, QBE notifies the mortgagor of the force-placed coverage. (*Id.* ¶ 26). The administrative costs arising from these services are also charged to the consumer, further inflating the premiums that are added to their mortgage loans. (*Id.*). In the end, the insurance policy premiums charged to the consumer cost at least five to six times, and often up to ten times, the market rate. (*Id.* ¶ 20). The excessive costs of these insurance policies generate extremely high profit margins for the Defendants. (*Id.* ¶ 21).

Plaintiff Ray Williams' property insurance policy lapsed on October 17, 2010. (*Id*. ¶ 39). Mr. Williams secured new insurance for the property within 30 days. (*Id.* ¶ 40). On December 27, 2010, nearly six weeks *after* Mr. Williams had purchased

insurance for his property, Wells Fargo notified him that it had retroactively force-placed an insurance policy from QBE on the property and added the cost of the premium to his mortgage loan. (*Id*. ¶ 42). The premium for the QBE policy was approximately $1,743 for just the 30-day lapsed period. (*Id*. ¶ 43). This is nearly six times the amount of the monthly premium that Mr. Williams had paid under his own policy. (*Id*.)

Plaintiffs Luis and Migdaliah Juarez's insurance policy lapsed on or around March 3, 2010. (*Id*. ¶ 50). On July 16, 2010, they were notified by WFB that it was force-placing an insurance policy on their property for the period March 3, 2010 to March 3, 2011. (*Id*. ¶ 49). The policy, which WFB also secured from QBE, was backdated to March 3, 2010 notwithstanding the fact that there had been no damage to the subject property during that four-month period. (*Id*. ¶ 50). The annual premium for the force-placed QBE policy was approximately $25,000. This is nearly four times the amount of the premium now paid by Mr. and Mrs. Juarez. (*Id*. ¶ 51).

## PROCEDURAL HISTORY

Plaintiffs filed their original Class Action Complaint against ten defendants, including eight different Wells Fargo entities, in April 2011. (D.E. 1). The first complaint included six claims for relief against all defendants. (*Id.* at 24-33) The Wells Fargo Defendants moved to dismiss, arguing, among other things, that Plaintiffs had impermissibly "lumped" their allegations against the ten Defendants together in violation of Federal Rule of Civil Procedure 8(a). (D.E. 31 at 12-13). Plaintiffs amended the Complaint on August 5, 2011, dropping six of the eight Wells Fargo entities as defendants and separating their allegations against the remaining two Wells Fargo entities—WFB and WFI—from their allegations against QBE and Sterling National Insurance Agency, Inc. ("Sterling") (D.E. 44). Plaintiffs also tailored their claims for relief, reducing their six claims to five and alleging only a handful of claims against each defendant. Plaintiffs now bring four claims against WFI: breach of the implied covenant of good faith and fair dealing (Count I), violation of section 2605(m) of RESPA (Count II), unconscionability (Count III), and unjust enrichment (Count IV). (D.E. 44 at 16-23). WFI moved to dismiss the claims against it on August 19, 2011. (D.E. 48). Plaintiffs now respond as follows.

**ARGUMENT**

I. **THE AMENDED COMPLAINT SATISFIES THE PLEADING REQUIREMENTS OF FED. R. CIV. P. 8(a).**

In order to satisfy the notice pleading requirements of Federal Rule of Civil Procedure 8(a)(2), a plaintiff must set forth only "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the …claim is and the grounds upon which it rests" *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (citation and quotations omitted). This standard is widely recognized as a "liberal" one,[2] and "not particularly onerous to plaintiffs." *Duran v. City of Satellite Beach*, No. 6:05-CV-906, 2005 WL 2129300, at *5 (M.D. Fla. Sept. 2, 2005).

WFI argues in its Motion that Plaintiffs have violated Federal Rule of Civil Procedure 8(a) by improperly "lumping" WFI together with its co-defendant, WFB.[3] This argument lacks merit. The Amended Complaint sets forth a "short and plain statement" of Plaintiffs' claims and complies fully with Rule 8(a).

Courts in the Eleventh Circuit routinely hold that the general use of the term "defendants" to refer to two or more defendants satisfies the pleading standard set forth in Rule 8(a)(2). *See, e.g., Crowe v. Coleman*, 113 F.3d 1536, 1539 (11th Cir. 1997) (plaintiffs sufficiently stated cause of action against defendant where complaint referred to "defendants" generally rather than identifying each by name); *Peters v. Amoco Oil Co.*, 57 F. Supp. 2d 1268, 1276 (M.D. Ala. 1999) (general use of the term "defendants" sufficient pursuant to liberal pleading standard of Rule 8(a)). Indeed, "[w]hen multiple defendants are named in a complaint, the allegations can be and usually are to be read in such a way that each defendant is having the allegation made about him individually." *Crowe*, 113 F.3d at 1539. This is particularly so where, as here, no discovery has been taken, and as a result the circumstances are such that a plaintiff may not be able to plead

---

[2] *See, e.g., Swierkiewicz v. Sorema,* 534 U.S. 506, 514 (2002) ("the liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system"); *Brock v. Board of Trustees,* No. 1:09-cv-000157, 2009 WL 3614501, at *1 (N.D. Fla. Oct. 30, 2009) (describing Rule 8(a)'s "liberal pleading standard").

[3] WFI mischaracterizes Plaintiffs' reference to WFI and WFB as "Wells Fargo" as "shotgun pleading." (D.E. 48 at 5). A "shotgun" complaint contains "several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e. all but the first) contain irrelevant factual allegations and legal conclusions." *Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp.,* 205 F.3d 1293, 1295 (11th Cir. 2002). This does not describe the Amended Complaint.

the precise role of each defendant in a group that has acted together to cause the injury alleged. *See Peters,* 57 F. Supp. 2d at 1277 (citation omitted). Indeed, "[u]nder such circumstances, it is *appropriate* to plead the actions of the group and leave development of individual liability questions until some discovery has been undertaken[.]"[4]  *Id.* (emphasis added) (citations and internal quotations omitted).

Plaintiffs have done even more than that here. Plaintiffs outline each Wells Fargo Defendant's apparent role in the force-placed insurance scheme, alleging that WFI was "a captive insurance agent and primarily an instrumentality" of WFB, the Wells Fargo entity primarily responsible for servicing their loans. (D.E. 44 ¶¶ 4, 5). Plaintiffs then allege that WFI collects kickbacks or commissions related to the force-placed insurance policies for the Wells Fargo Defendants. (*Id.* ¶ 5). Rather than referring to the conduct of "defendants" generally, Plaintiffs distinguish carefully between the conduct of the QBE Defendants and that of the Wells Fargo Defendants, describing their different roles in the scheme to extort the putative class and bringing individual counts against each group of defendants. (*Id.* ¶¶ 4-7, 19, 25-29, 38, 41, 43, 45, 48-52, 69-103). These allegations place WFI on notice of the claims against it and more than satisfy the "low hurdle" set by Rule 8(a). *Duran,* 2005 WL 2129300, at *5.

## II. PLAINTIFFS HAVE SATISFIED RULE 12(b)(6) WITH RESPECT TO EACH CLAIM ALLEGED AGAINST WFI.

"The threshold is exceedingly low for a complaint to survive a motion to dismiss for failure to state a claim upon which relief can be granted." *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009) (internal citations omitted). Indeed, a plaintiff must plead only "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal,* -- U.S.--, 129 S. Ct. 1937, 173 L. Ed. 868 (2009). "The court construes the pleadings broadly and views the allegations in the complaint in the light most favorable to the plaintiffs." *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007). "[A] complaint should not be dismissed simply because the court is doubtful that the plaintiff will be able to prove all

---

[4] Notably, this Court has held similar pleading to be permissible under the more stringent pleading standard set forth in Rule 9(b) where the defendant is an insider or affiliate of a corporate co-defendant and the plaintiff alleges a link between the defendant, the corporation, and the allegedly fraudulent conduct. *See Future Tech Int'l, Inc. v. Tae Il Media, Ltd.,* 944 F. Supp. 1538, 1572 (S.D. Fla. 1996).

of the necessary factual allegations." *Plunkett v. Poyner*, No. 08-60953, 2009 WL 5176542, at *2 (S.D. Fla. Dec. 22, 2009). In the event the complaint proffers "enough fact to raise a reasonable expectation that discovery will reveal evidence" supporting the claim, there is a "plausible" ground for recovery and a Rule 12(b)(6) motion to dismiss should be denied. *Twombly,* 550 U.S. at 556.

Because WFI has not sustained the "very high burden" on a movant seeking a Rule 12(b)(6) dismissal with respect to any of Plaintiffs' claims, *see Peters,* 57 F. Supp. 2d at 1274, the Court should deny WFI's motion to dismiss in its entirety.

### A. Plaintiffs Have Stated a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing (Count I) against WFI.

WFI seeks dismissal of Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing on the ground that WFI is not a party to the mortgage contracts at issue. (D.E. 48 at 6). But that has not been established and, as WFI concedes, Plaintiffs do not allege which of two Wells Fargo Defendants is bound by the mortgage contracts. (*Id.*). As Plaintiffs demonstrate above, this manner of pleading is appropriate here because no discovery has been taken and, as a result, Plaintiffs cannot be certain of WFI's precise role in Defendants' force-placed insurance scheme. *See* Section I, *supra* (citing *Peters,* 57 F. Supp. 2d at 1277); *see, e.g., Hunter v. Marlow Yachts Ltd.,* No. 8:09-cv-1772, 2011 WL 973356, at *5 (M.D. Fla. Mar. 18, 2011) (denying motion to dismiss claims for breach of contract and breach of warranty on ground of lack of privity because defendant-entities were "intertwined" and, as a result, those "issues [we]re better addressed after full discovery"); *Kobold v. Aetna U.S. Healthcare, Inc.,* 258 F. Supp. 2d 1317, 1322 (M.D. Fla. 2003) (declining to dismiss breach of fiduciary duty claim where "[w]hich of the named Defendants was charged with fiduciary duties [wa]s a factual question that ha[d] not yet been established").

Moreover, this Court has held that where a contractual term affords a defendant "substantial discretion" to promote its self-interest, a plaintiff states a claim for breach of the implied covenant of good faith and fair dealing by alleging facts to support the conclusion that the defendant exercised that discretion "capriciously, in bad faith, and in contravention of the parties' reasonable expectations." *Abels v. J.P. Morgan Chase Bank, N.A.,* 678 F. Supp. 2d 1273, 1278-79 (S.D. Fla. 2009) (citing *Cox v. CSX Intermodal,*

8

*Inc.*, 732 So. 2d 1092, 1097-98 (Fla. 1st DCA 1999)). The mortgage contracts here gave the Wells Fargo Defendants significant discretion to select the insurance company that would issue the force-placed policies and the rate that they would charge. (D.E. 44 ¶¶ 17-20, 33, 72 & Exs. A ¶ 3, B ¶ 5). As such, the Wells Fargo Defendants had a duty to exercise that discretion in good faith and in keeping with Plaintiffs' reasonable expectations. *See Abels,* 678 F. Supp. 2d at 1278-79. Plaintiffs' description of the Wells Fargo Defendants' breach of that duty far exceeds Rule 12(b)(6)'s plausibility threshold. (D.E. 44 ¶¶ 18-20, 23-32, 41-44, 48-53, 69-75). The Court should deny WFI's motion to dismiss Count I of the Amended Complaint.

  **B. Plaintiffs Have Stated a Claim against WFI for Violation of Section 2605 of RESPA (Count II) Because Section 2605 Was in Effect When Wells Fargo Force-Placed Insurance Policies on Plaintiffs' Homes.**

  WFI argues that Plaintiffs cannot state a claim against it for violating Section 2605(m) of RESPA because that provision, which requires that all charges related to force-placed insurance be "bona fide and reasonable," has purportedly not yet been enacted into law. (D.E. 48 at 7-8). Defendant is mistaken. Section 2605 of RESPA was amended to include the "bona fide and reasonable" requirement by Title XIV of the Dodd-Frank Act, Pub. L. No. 111-203, 124 Stat. 1376. Section 4 of the Dodd-Frank Act provides that the Act and its amendments took effect "[one] day after the date of enactment of this Act." § 4, Pub. L. No. 111-203, 124 Stat. 1376. The President signed the Act on July 21, 2010;[5] it became effective, therefore, on July 22, 2010—several months before a new insurance policy was force-placed on Plaintiff Ray Williams' property and within days of the date on which a new policy was purchased for the Juarez Plaintiffs. As a result, WFI's motion to dismiss should be denied as to Count II of the Amended Complaint.

  WFI argues that effective dates set forth in Section 1400(c) of the Dodd-Frank Act supersede the effective date provided by Section 4 and apply to Section 2605(m). They conclude that as a result, Section 2605(m) had not yet been enacted into law when the Wells Fargo Defendants force-placed insurance policies on the Plaintiffs' properties.

---

[5] Generally, a bill becomes a law and is in effect the day the President signs it. U.S. Const. art. I § 7 cl. 2. *See also U.S. v. Casson*, 434 F.2d 415, 418 (D.C. Cir. 1970) (stating, "the inescapable conclusion from this language is that those who drafted the Constitution intended a bill to become a law when the President indicates his approval by signing it").

(D.E. 48 at 7-8). By its plain terms, however, Section 1400(c) applies only to those sections of Title XIV of the Act for which regulations are expected to be implemented; the effective dates provided by Section 1400(c), that is, supersede and extend the July 22, 2010 effective date set forth in Section 4 of the Dodd-Frank Act only with respect to amendments that await additional rulemaking. Section 1400(c) provides as follows:

> (c) REGULATIONS; EFFECTIVE DATE.—
>
> (1) REGULATIONS.--The regulations required to be prescribed under this title or the amendments made by this title shall--
> (A) be prescribed in final form before the end of the 18–month period beginning on the designated transfer date; and
> (B) take effect not later than 12 months after the date of issuance of the regulations in final form.
>
> (2) EFFECTIVE DATE ESTABLISHED BY RULE.--Except as provided in paragraph (3), a section, or provision thereof, of this title shall take effect on the date on which the final regulations implementing such section, or provision, take effect.
>
> (3) EFFECTIVE DATE.--A section of this title for which regulations have not been issued on the date that is 18 months after the designated transfer date shall take effect on such date.

The plain language of Section 1400(c) is clear. Starting with its title—"*Regulations*; Effective Date"—Congress limits the terms of the provision to those provisions of the Act that require additional rulemaking. Taken together, subsections (2) and (3) provide that *if* the rules required to be prescribed by a section of Title XIV are issued within 18 months of the "designated transfer date,"[6] then the section will take effect on the date on which those rules take effect. If the rules required to be prescribed by a section of Title XIV have *not* yet been implemented as of 18 months after the designated transfer date, then the section will take effect on that date.

However, if there are no regulations expressly required to implement a particular provision or section, the effective date provided by Section 4 of the Dodd-Frank Act—July 22, 2010—still applies. Congress did not order the Bureau of Consumer Financial Protection (the "Bureau") or any other agency to implement rules in connection with

---

[6] "Designated transfer date" is defined in Section 1062 of the Dodd-Frank Act.

section 2605(m).  *See* Dodd-Frank § 1463 (setting forth the amendments to RESPA sections 2605(m)-(k)); Curtis W. Copeland, *Rulemaking Requirements and Authorities in the Dodd-Frank Wall Street Reform and Consumer Protection Act*, Appendix A-B, CRS Report for Congress (Nov. 3, 2010) (listing every provision of the Dodd-Frank Act where Congress included either mandatory or permissive rulemaking provisions without mention of Section 2605(m)).  There is no mention of supplemental rules in Section 2605(m) itself, nor is there any mention of rulemaking in connection with the provision elsewhere in Title XIV.

By contrast, Congress employed plain language to vest the Bureau with rulemaking authority with respect to another RESPA amendment set forth in Section 1463 of the Dodd-Frank Act (the same section of the Act that includes Section 2605(m)). Congress articulated Section 2605(k) of RESPA as follows:

> (1) IN GENERAL.--A servicer of a federally related mortgage shall not--
> (B) charge fees for responding to valid qualified written requests (*as defined in regulations which the Bureau of Consumer Financial Protection shall prescribe*)

Dodd-Frank § 1463 (emphasis added). This language provides in no uncertain terms that the Bureau is required to implement regulations that define the term "valid qualified written requests."  It makes sense that this amendment to RESPA would not take effect until the date on which those regulations are implemented—the amendment cannot be enforced until its key term is defined.  *See* § 1400(c)(2).

Moreover, Congress's clear articulation of the Bureau's rulemaking authority in Section 2605(k), compared with the omission of any such articulation in Section 2605(m), provides further support for the conclusion that no additional rulemaking is forthcoming with respect to the latter provision.  *See, e.g., Kaplan v. Assetcare,* 88 F. Supp. 2d 1355, 1362 (S.D. Fla. 2000) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (citation omitted).

Neither RESPA nor the term "bona fide and reasonable" are new creations of the Dodd-Frank Act.  Accordingly, Congress had no reason to delay the implementation of

11

this provision and did not require the Bureau to implement rules to guide mortgage servicers. Because Congress did not require rulemaking in connection with Section 2605(m), that provision's effective date is set forth in Section 4 of the Dodd-Frank Act—July 22, 2010. Accordingly, Section 2605(m) governs the conduct alleged in the Amended Complaint, and WFI's motion to dismiss Count II should be denied.

### C. Plaintiffs Have Pled an Unconscionability Claim (Count III) against WFI.

WFI argues that Plaintiffs' unconscionability claim (Count III) should be dismissed because (1) unconscionability is not a valid cause of action under Florida law; (2) Plaintiffs have not sufficiently alleged terms of their mortgage agreements to be substantively unconscionable; and (3) WFI is not bound by the mortgage contracts at issue. This Court recently rejected the first two of these arguments on facts nearly identical to those presented here in *Abels v. JP Morgan Chase Bank, N.A.,* 678 F. Supp. 2d 1273 (S.D. Fla. 2009). The third argument fails because it cannot be resolved on the pleadings and is therefore premature on a motion to dismiss.

In *Abels,* a case remarkably similar on its facts to the case at bar, the plaintiffs brought a claim for unconscionability on behalf of a putative class of mortgagors against their mortgage lender, Chase Bank, N.A. ("Chase"). 678 F. Supp. 2d at 1279-80. The plaintiffs alleged that the mortgage lender's decision to force-place insurance on plaintiff's property that it had purchased from its own affiliate at an excessive rate was unconscionable under Florida law. *See id.* Chase moved to dismiss the plaintiffs' unconscionability claim, arguing (as WFI does here) that the plaintiffs were required to allege both substantive and procedural unconscionability, but had not alleged sufficient facts to show that the terms of their mortgage agreement with Chase were unconscionable—that is, that the agreement was substantively unconscionable.[7] *See id.* at 1279. This Court rejected Chase's argument, explaining that the plaintiffs had stated a claim for substantive unconscionability by setting forth "sufficient facts showing that, had they known the full extent of [d]efendant's permissible conduct under the contract,

---

[7] Both procedural and substantive unconscionability must be alleged to state a claim for unconscionability under Florida law. *See Abels,* 678 F. Supp. 2d at 1279. WFI *concedes* that Plaintiffs have stated a claim for procedural unconscionability. (D.E. 48 at 9). *Abels* supports this conclusion by holding that procedural unconscionability is satisfied where there is a "disparity in bargaining power" like the one between the plaintiffs and defendants in this case and in *Abels. See* 678 F. Supp. 2d at 1279.

12

no reasonable person would have agreed to it." *Id.* at 1280 (emphasis added). The Court then denied Chase's motion to dismiss. *See id.*

### 1. Unconscionability Is a Viable Cause of Action under Florida Law.

This Court's holding in *Abels* establishes that Florida law does provide an affirmative cause of action for unconscionability. A review of other Florida precedent confirms that holding to be correct. *See, e.g., Thomas v. Soper,* 464 So. 2d 255, 256 (Fla. 4th DCA 1985) (reversing order dismissing complaint because pleading "stated a cause of action for common-law unconscionability"); *Steinhardt v. Rudolph,* 422 So. 2d 884, 890 (Fla. 3d DCA 1982) (recognizing viability of cause of action sounding in unconscionability under Florida law) (citations omitted). This Court should therefore reject WFI's unsupported argument to the contrary.

### 2. Plaintiffs Have Alleged Facts to Support the Conclusion That Terms of Their Mortgage Contracts Were Substantively Unconscionable.

The *Abels* holding also defeats WFI's argument that Plaintiffs have not alleged that relevant provisions of their mortgage agreements were substantively unconscionable. The plaintiffs in *Abels* made a *prima facie* showing of substantive unconscionabilty by alleging facts to support the conclusion that no reasonable person who knew the "full extent of defendant's permissible conduct" under their mortgage agreement would have agreed to it. *Abels,* 678 F. Supp. 2d at 1280; *see, e.g., B.J. Pearce v. Doral Mobile Home Villas, Inc.,* 521 So. 2d 282, 283 (Fla. 2d DCA 1988) (substantive unconscionability requires showing that "the contract terms are unreasonably favorable to the other party"). Plaintiffs in this case have done the same. Plaintiffs allege, for example, that: (1) the premiums for the insurance that was force-placed on their properties were charged at five to six, and sometimes ten, times the market rate, (D.E. 44 ¶¶ 20, 43); (2) administrative costs that were not properly chargeable to Plaintiffs were "bundled" with the insurance premiums and added to the balance due on their mortgage loans, (*id.* ¶¶ 26-28); (3) the premiums that they were charged bore no relation to any identifiable characteristic of their actual homes, (*id.* ¶ 26); (4) policies were purchased to insure their properties retroactively for periods during which no claims had been made and no damage had been suffered, (*id.* ¶¶ 31, 42, 50). Because no reasonable person would have approved of this conduct, Plaintiffs have stated a claim for substantive unconscionability. *See, e.g., Abels,*

678 F. Supp. 2d at 1280 (denying motion to dismiss because no reasonable person would have agreed to conduct permissible under contract).

WFI argues further that Plaintiffs failed to identify provisions of their mortgage agreements that they allege to be unconscionable, (D.E. 48 at 9), but Plaintiffs identify the unconscionable term in at least four different paragraphs of the Amended Complaint. (*See, e.g.,* D.E. 44 ¶¶ 86, 87, 88, 91). WFI's contention, therefore, lacks merit.

### 3. WFI's Contention That Count III Should Be Dismissed Because WFI Is Not Bound by the Contract Is Premature on a Motion to Dismiss.

Plaintiffs allege that by its actions, "Wells Fargo" (which is defined in the pleading to include both entities) was bound by and breached the insurance provisions of Plaintiffs' mortgage agreements. (D.E. 44 ¶¶ 17-20, 23-33, 38-53, 69-75). As Plaintiffs demonstrate above, such allegations satisfy Rule 8(a) and state a claim under Rule 12(b)(6) where a claimant cannot identify each defendant's role with respect to a contract because no discovery has been exchanged. *See* Sections I, II.A, *supra*.

Plaintiffs have more than adequately pled a claim for unconscionability. The Court should deny WFI's motion to dismiss Count III of the Amended Complaint.

### D. Plaintiffs State a Claim against WFI for Unjust Enrichment (Count IV).

WFI argues that Plaintiffs' unjust enrichment claim is deficient for five reasons. First, WFI asserts that because Plaintiffs have pled their claim against the Wells Fargo Defendants together, they have not adequately alleged that WFI received a direct benefit from Plaintiffs. (D.E. 48 at 11). This is simply incorrect. In fact, the Amended Complaint identifies WFI as the Wells Fargo entity that took illegal kickbacks from the excessive premiums paid by the Plaintiffs. (D.E. 44 ¶ 5).[8] Moreover, Plaintiffs are not required to allege direct contact between plaintiff and defendant to show that a "direct benefit" was conferred. *See Romano v. Motorola, Inc.*, No. 07-CIV-60517, 2007 WL 4199781, at *2 (S.D. Fla. Nov. 26, 2007). And this Court consistently holds that the question of whether the defendant received a direct benefit as a result of the transaction alleged is improper on a motion to dismiss. *See, e.g., Sierra Equity Group, Inc. v. White Oak Equity Partners, LLC,* 650 F. Supp. 2d 1213, 1229 (S.D. Fla. 2009) ("Whether

---

[8] Even if this were not the case, the law does not require Plaintiffs to plead each Wells Fargo Defendant's precise role in the force-placed insurance scheme at this early stage of the litigation. *See* Section I, *supra*.

[defendants] did or did not receive a direct benefit from Plaintiff is factual question that cannot be resolved at the motion to dismiss stage"); *Abels v. JPMorgan Chase Bank, N.A.*, 678 F. Supp. 2d 1273, 1279 (S.D. Fla. 2009) (same) (citations omitted).

Second, WFI argues that Plaintiffs' unjust enrichment claim fails because Plaintiffs could have avoided conferring a benefit on WFI by maintaining the insurance on their properties. (D.E. 48 at 11-12). This argument misses the point because it assumes that Plaintiffs dispute that the Wells Fargo Defendants were entitled to collect premiums from consumers in the first instance. They do not. Instead, they allege that the premiums collected—and the kickbacks retained—were unreasonably excessive and included charges to which the Wells Fargo Defendants were not entitled under the contracts at issue. (D.E. 44 ¶¶ 18-21, 26-29). This Court recently held that similar allegations defeated a motion to dismiss. *See In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302, 1321-22. (S.D. Fla. 2010) (rejecting defendants' argument that they had not been unjustly enriched because fees charged consumers were "specifically provided for in the contracts"; plaintiffs alleged bad-faith conduct by defendants in processing fees to support conclusion that defendants had been unjustly enriched).

Third, WFI argues that dismissal is proper because Plaintiffs received adequate consideration for the premiums that they paid on the force-placed insurance policies. This argument fails for same reason as WFI's second argument—Plaintiffs conferred a benefit on the Wells Fargo Defendants that greatly exceeded that to which they were entitled under the contracts. This allegation alone disposes of WFI's motion to dismiss Count IV. *See Stermer v. SCK Solutions, LLC,* No. 08-61751-CIV, 2009 WL 1849955, at *6 (S.D. Fla. June 26, 2009) (rejecting argument that unjust enrichment claim should be dismissed because defendants performed valuable services in exchange for benefit conferred).

Fourth, WFI argues that Plaintiffs' unjust enrichment claim is barred by their mortgage contracts with Wells Fargo. (D.E. 48 at 12). Elsewhere in their Motion, however, WFI asserts that it was not a party to those contracts. (*Id.* at 6, 8). These contradictory arguments do not support dismissal. Moreover, "Rule 8(d) of the Federal Rules of Civil Procedure expressly permits the pleading of both alternative and

inconsistent claims."[9] *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1273 (11th Cir. 2009); *see* Fed. R. Civ. P. 8(d).

Fifth, and finally, WFI argues that Plaintiffs "do not explain" how they intend to establish damages for unjust enrichment on a class-wide basis. (D.E. 48 at 13). But Plaintiffs have no obligation to do so at this stage. This Court should not consider WFI's argument until after discovery has been exchanged and a motion for class certification filed. *See Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1311 (11th Cir. 2008) (district court abused discretion in determining on pleadings that class treatment was inappropriate); *see also Brueggemann v. NCOA Select, Inc.*, No. 08-80606-CIV, 2009 WL 1873651 at *6 n.8 (S.D. Fla. June 30, 2009) (asking whether common issues existed among nationwide class more appropriate at class certification stage).[10]

Because none of WFI's attacks on Plaintiffs' unjust enrichment claim suffices to defeat it, this Court should deny WFI's motion to dismiss Count IV.

---

[9] Moreover, even if WFI had argued that the legal and equitable claims were inconsistent — which they have not — there would be no bar to their pleading the two conflicting claims in the alternative, pursuant to Fed. R. Civ. P. 8(e)(2). *See Manicini Enters., Inc. v. Am. Exp. Co.*, 236 F.R.D. 695, 699 (S.D. Fla. 2006) (denying motion to dismiss unjust enrichment claim and contract claim).

[10] Courts frequently certify classes bringing claims for unjust enrichment under Florida law on both a state- and nationwide basis. *See, e.g., County of Monroe, Fla. v. Priceline.com, Inc.,* 265 F.R.D. 659, 671 n.13 (S.D. Fla. 2010) (noting that the Eleventh Circuit certified such classes); *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 698 (S.D. Fla. 2004) (certifying nationwide class of unjust enrichment claimants because claim is susceptible to proof using common, generalized evidence); *Veal v. Crown Auto Dealerships, Inc.*, 236 F.R.D. 572, 581 (M.D. Fla. 2006) (same).

## CONCLUSION

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully request that the Court enter an order denying WFI's Motion to Dismiss the Amended Complaint.

Respectfully submitted,

s/ Robert J. Neary

| | |
|---|---|
| Adam M. Moskowitz, Esq.<br>amm@kttlaw.com<br>Thomas A. Tucker Ronzetti, Esq.<br>tr@kttlaw.com<br>Robert J. Neary, Esq.<br>rn@kttlaw.com<br>Javier A. Lopez, Esq.<br>jal@kttlaw.com<br>**KOZYAK, TROPIN, & THROCKMORTON P.A.**<br>2525 Ponce de Leon Blvd. 9th Floor<br>Coral Gables, FL 33134<br>Telephone: 305-372-1800<br>Facsimile: 305-372-3508<br>*Counsel for Plaintiffs* | Lance A. Harke, Esq.<br>lharke@harkeclasby.com<br>Howard M. Bushman, Esq.<br>hbushman@harkeclasby.com<br>**HARKE CLASBY & BUSHMAN LLP**<br>9699 NE Second Avenue<br>Miami Shores, Florida 33138<br>Telephone: 305-536-8220<br>Facsimile: 305-536-8229<br>*Counsel for Plaintiffs* |
| Jeffrey N. Golant, Esq.<br>jgolant@jeffreygolantlaw.com<br>**LAW OFFICES OF JEFFREY N. GOLANT, P.A.**<br>1000 W. McNab Road, Suite 150<br>Pompano Beach, FL 33069<br>Telephone: 954-942-5270<br>Facsimile: 954-942-5272<br>*Counsel for Plaintiffs* | Chip Merlin, Esq.<br>cmerlin@merlinlawgroup.com<br>Mary E. Fortson, Esq.<br>mfortson@merlinlawgroup.com<br>Sean M. Shaw, Esq.<br>sshaw@merlinlawgroup.com<br>**MERLIN LAW GROUP, P.A.**<br>777 S. Harbour Island Blvd., Suite 950<br>Tampa, FL 33602<br>Telephone: 813-229-1000<br>Facsimile: 813-229-3692<br>*Counsel for Plaintiffs* |

## **CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing was filed electronically via CM/ECF on the 6th day of September, 2011 and served by the same means on the following: David B. Esau, Esq., desau@carltonfields.com, Michael K. Winston, Esq., mwinston@carltonfields.com, Carlton Fields, PA, City Place Tower, 525 Okeechobee Blvd., Suite 1200, West Palm Beach, FL 33401; Robyn C. Quattrone, Esq. rquattrone@buckleysandler.com, and Jennifer A. Slagle-Peck, Esq. jslaglepeck@BuckleySandler.com Buckley Sandler LLP, 1250 24th Street, NW, Suite 700, Washington, DC 20037; William Xanttopoulos, Esq., wxanttopoulos@berklawfirm.com, and William S. Berk, Esq., wberk@berklawfirm.com, Berk, Merchant & Sims, PLC, 2 Alhambra Plaza, Suite 700, Miami, FL 33134

                                                By:  s/ Robert J. Neary
                                                        Robert J. Neary