**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 1:11-CV-21233-ALTONAGA/SIMONTON**

RAY WILLIAMS;
LUIS JUAREZ; and MIGDALIAH JUAREZ;
on behalf of themselves and all others
similarly situated;

        Plaintiffs,

v.

WELLS FARGO BANK, N.A.;
WELLS FARGO INSURANCE, INC.;
QBE SPECIALTY INSURANCE COMPANY;
and STERLING NATIONAL INSURANCE
AGENCY, INC. (n/k/a QBE FIRST
INSURANCE AGENCY, INC.)

        Defendants.
_____/

**PLAINTIFFS' RESPONSE TO DEFENDANT**
**QBE FIRST'S MOTION TO DISMISS**

        Plaintiffs, RAY WILLIAMS, LUIS JUAREZ, and MIGDALIAH JUAREZ ("Plaintiffs"),

on behalf of themselves and all others similarly situated, respectfully respond in opposition to the

Motion to Dismiss [D.E. 47] ("Motion") filed by STERLING NATIONAL INSURANCE

AGENCY, INC. (n/k/a QBE FIRST INSURANCE AGENCY, INC.) (hereinafter QBE First).

Plaintiffs have stated cognizable claims for unjust enrichment and tortious interference, and this

case should therefore proceed on its merits.

**<u>INTRODUCTION</u>**

        Plaintiffs assert against QBE First two fundamental, well-settled Florida equitable and

common law claims, for unjust enrichment and tortious interference. The simple and plain

elements of these claims are not in dispute, and have been properly pled. Nonetheless, as to the

unjust enrichment claim, QBE First argues that Plaintiffs have failed to allege that they directly

conferred upon it any benefit.  Yet, at this early pre-discovery stage, Plaintiffs have more than adequately pled QBE First's role in the acquisition of grossly overpriced forced placement insurance in violation of the underlying duty of good faith and fair dealing implied in every mortgage contract.  QBE First – as admitted in its Motion – directly benefited from these acquisitions via commissions that the Plaintiffs allege are exorbitant, excessive and unearned.  These allegations sufficiently state a claim for unjust enrichment under Florida law.  In short, Plaintiffs do allege that they were charged excessive insurance premiums and that QBE First received the benefit of those premiums.  No other "direct" allegation is required.  Indeed, QBE First's definition of a "direct" benefit is unduly narrow, contrary to the equitable and remedial aims of the cause of action, and not supported by caselaw which holds that no direct contact between the parties is required and that whether a benefit has been conferred is a merits question for the jury to determine.  Similarly, QBE First argues that it provided adequate consideration, that Plaintiffs could have avoided the charges, and that it was allowed to pay kickbacks and receive unwarranted, exorbitant commissions.  These arguments are directly contrary to the allegations of the First Amended Complaint and are merits based arguments that are not appropriate for resolution at the motion to dismiss stage.

QBE First's Motion directed to the tortious interference claim is similarly misplaced.  QBE First primarily argues that Plaintiffs have failed to allege QBE First acted with "malice" or in "bad faith" and that Plaintiffs failed to allege that QBE First used "improper means."  QBE First's arguments ignore the plain language of the First Amended Complaint where Plaintiffs clearly do allege that QBE First acted in bad faith and used improper means when it paid kickbacks and charged exorbitant unwarranted commissions.  Worse, QBE First ignores caselaw which demonstrates that neither malice nor improper means must be pled as part of Plaintiffs' prima facie case for tortious interference and, thus, dismissal is improper.

CASE NO. 1:11-CV-21233-ALTONAGA/SIMONTON

## **FACTUAL BACKGROUND**

This class action against QBE First and other Defendants concerns bad faith practices of force placing excessively priced insurance coverage on each Class Member's home.  As alleged in Plaintiffs' First Amended Complaint ("FAC"), QBE First is a captive insurance agent and primarily an instrumentality of QBE Specialty Insurance Co. ("QBE Specialty"), a surplus line insurance provider.  FAC at ¶¶ 6-7.  The Defendants enter into exclusive uncompetitive agreements whereby QBE Specialty and QBE First will troll through the active mortgages owned and/or serviced by co-defendant Wells Fargo Bank, N.A. ("Wells Fargo") in hopes of finding a lapsed home insurance policy.  FAC at ¶ 26.  At all times material, the Defendants know that each Class Member has a mortgage owned and/or serviced by Wells Fargo and that each mortgage contains a provision allowing it to forcibly place insurance on the property if the current property insurance lapses.  FAC at ¶ 19.  However, the mortgages do not allow the procurement of overpriced force-placed insurance obtained in bad faith.

Once a lapsed policy is discovered, QBE Specialty and QBE First automatically place one of their exorbitantly and uncompetitively priced policies on the Class Member's property with the Class Member paying the inflated premiums.  FAC at ¶¶ 17, 25-28.  No other bids for insurance are obtained or solicited.  FAC at ¶ 26.  The premiums paid are up to ten times what the Class Member would have paid had the policies been purchased on a competitive basis on the open market.  FAC at ¶ 20.  Once the overpriced policy is force-placed on the Class Member's property, a portion of the Class Member's premiums are paid to Wells Fargo, its affiliate Defendant Wells Fargo Insurance, Inc. ("Wells Fargo Insurance") and QBE First in the form of an unwarranted "commission" for allegedly seeking out and obtaining the grossly overpriced insurance policy.  FAC at ¶¶ 23, 25-26, 93, 96; Motion at 7.

CASE NO. 1:11-CV-21233-ALTONAGA/SIMONTON

QBE First's conduct intentionally and unjustifiably interferes with the Plaintiffs and the Class's rights under the mortgage contracts because Wells Fargo is only authorized to obtain force-placed policies at commercially reasonable rates, not those that are excessive and procured in violation of Wells Fargo's duty of good faith and fair dealing to its customers.  FAC at ¶¶ 32, 73-75.  By procuring excessively priced policies in violation of this good faith duty, QBE First is unjustly enriched by the excessive premiums obtained.  FAC at ¶¶ 94, 96.  QBE First knew that the charges for these policies were excessive, unwarranted, and not the result of good faith practices.  FAC at ¶¶ 25-26, 73-74.  Defendants' manipulation of their force-placed mortgage purchases has maximized the profits to themselves to the great detriment to Plaintiffs and the Class.  FAC at ¶ 35.

## **LEGAL STANDARD**

A motion to dismiss "is viewed with disfavor and rarely granted."  *Hamilton v. Allen-Bradley Co., Inc*., 244 F.3d 819, 823 (11th Cir. 2001).  In deciding a motion to dismiss, all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff.  *See Warth v. Seldin,* 422 U.S. 490, 501 (1975); *Romano v. Motorola, Inc*., No. 07-CIV-60517, 2007 WL 4199781, *1 (S.D. Fla. Nov. 26, 2007).  "Factual allegations must be enough to raise a right to relief above the speculative level… on the assumption that all the allegations in the complaint are true even if doubtful in fact."  *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007) (citations and internal quotations omitted); *Watts v. Fla. Int'l Univ*., 495 F.3d 1289, 1295-96 (11th Cir. 2007).  Dismissal is appropriate under Rule 12(b)(6) only if the facts alleged do not state a claim that is "plausible on its face."  *Aktieselskabet AF 21 v. Fame Jeans, Inc.*, 2007 WL 1655877, at *2 (D.D.C. June 7, 2007) (*quoting Twombly*, 127 S.Ct. at 1974).

On a motion to dismiss, "the court does not attempt to determine whether the plaintiff will prevail on its claims, but whether the allegations are sufficient to allow them to conduct

4

discovery in attempt to prove their allegations." *Motorola,* 2007 WL 4199781, at *1 (internal

quotations and citations omitted) (reversing dismissal of unjust enrichment and other claims).

Detailed allegations regarding damages are not required. *Lujan v. Defenders of Wildlife*, 504

U.S. 555, 560-61 (1992) (noting that "on a motion to dismiss we presum[e] that general

allegations embrace those specific facts that are necessary to support the claim") (internal

quotations and citations omitted).   Thus, the "threshold of sufficiency that a complaint must

meet to survive a motion to dismiss" is "exceedingly low." *In re Eagle Bldg. Techs., Inc.*, 221

F.R.D. 582, 585 (S.D. Fla. 2004) (*citing In re Southeast Banking Corp.*, 69 F.3d 1539, 1551

(11th Cir. 1995)).

Affidavits and evidence outside of the pleadings cannot be considered on a motion to

dismiss. *See Ovesen v. Scandinavian Boiler Serv., Inc.*, 2011 WL 3510586 (S.D. Fla. 2011);

*Caravello v. Am. Airlines, Inc.,* 315 F. Supp. 2d 1346, 1348 (S.D. Fla. 2004) ("In deciding a

motion to dismiss, a court may only examine the four corners of the complaint and not matters

outside the complaint without converting the motion to dismiss to a motion for summary

judgment.").   Therefore, this Court should not consider the Declaration submitted by QBE First.

*See* D.E. 47 at 2-3.

## ARGUMENT

## I.   PLAINTIFFS' UNJUST ENRICHMENT CLAIM IS PROPERLY PLED.

Plaintiffs have properly pled their claim for unjust enrichment.  Under Florida law, a

plaintiff pleads a cause of action for unjust enrichment by pleading that "(1) plaintiff has

conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily

accepts and retains the benefit conferred; and (3) the circumstances are such that it would be

inequitable for the defendant to retain the benefit without paying the value thereof to the

plaintiff." *Tooltrend, Inc. v. CMT Utensil*, *SRL*, 198 F.3d 802, 805 (11th Cir. 1999); *Motorola*,

2007 WL 4199781, at *2 (denying motion to dismiss unjust enrichment claim against Motorola for selling defectively designed Razr cellular phones); *Cohen v. Kravit Estate Buyers, Inc.*, 843 So. 2d 989, 992 (Fla. 4th DCA 2003) (internal quotation marks omitted); *accord Yale Galanter, P.A. v. Johnson*, No. 06-60742, 2007 WL 2050990, at *4 (S.D. Fla. Jul. 16, 2007).

Plaintiffs here have pled that they conferred a benefit on QBE First by paying for force-placed insurance policies provided by QBE First and QBE Specialty at prices that were far higher than the market rates for similar policies. FAC at ¶¶ 94-95. QBE First knew that the charges for these policies were excessive and not the result of good faith procurement practices. *Id*. QBE First paid significant monies in bribes and kickbacks directly to Wells Fargo in order to obtain larger commissions by exclusively providing force-placed insurance policies at unreasonable rates. *Id*.

### A.    Whether or Not a Direct Benefit Was Conferred Is a Question of Fact.

QBE First's initial argument in support of its request to dismiss the unjust enrichment claim is that Plaintiffs failed to allege that they conferred a "direct" benefit upon QBE First. As more specifically described below, Plaintiffs have properly alleged a direct benefit to QBE First; however, whether or not a direct benefit was conferred upon the QBE First is a question of fact for the jury to decide. *See Zaki Kulaibee Establishment v. McFlicker*, 2011 WL 1559791 (S.D. Fla. Apr. 25, 2011) (genuine issues of material fact as to whether Plaintiff directly conferred a benefit on them in the form of wrongfully obtained higher profits precluded summary judgment); *Sierra Equity Grp., Inc. v. White Oak Equity Partners, LLC*, 650 F. Supp. 2d 1213, 1229 (S.D. Fla. 2009) ("Whether [defendants] did or did not receive a direct benefit from Plaintiff is a question of fact ...."); *Abels v. JPMorgan Chase Bank, N.A.*, 678 F. Supp. 2d 1273 (S.D. Fla. 2009) ("…whether a benefit was actually conferred is a factual question that cannot be resolved on a motion to dismiss."); *Stermer v. SCK Solutions, LLC*, 2009 WL 1849955 (S.D. Fla. 2009).

CASE NO. 1:11-CV-21233-ALTONAGA/SIMONTON

**B.      There is No "Direct" Benefit Requirement.**

QBE First is under the misapprehension that the plaintiffs and individual defendants must

have had some direct dealings or otherwise be in contractual privity in order to state a claim for

unjust enrichment.  This position should be rejected by this Court.  Direct contact or contractual

privity is not required to show a direct benefit.  *McFlicker*, 2011 WL 1559791 (no direct contact

in the form of a contractual relationship required to show direct benefit); *Motorola, Inc.,* 2007

WL 4199781, at *2 (direct benefit occurs even when the product is sold or the money collected

by another party because the manufacturer is directly benefitted through profits earned from the

sale).

**C.      Plaintiff Has Alleged a Direct Benefit.**

Plaintiffs have alleged that QBE First and its co-defendants wrongfully retained money

that was in excess to that which they were rightfully entitled.  *See* FAC at ¶¶ 96-97.  Further,

"Defendants' [including QBE First] manipulation of their forced placed mortgage purchases has

maximized the profits to themselves to the great detriment to Plaintiffs and the Class."  FAC at ¶

35.  Indeed, QBE First does not dispute that they received monies as a result of the force-placed

insurance transaction, they just couch it as "merely receiv[ing] a commission from the insurance

carrier" QBE Specialty rather than the actual premiums themselves.  Motion to Dismiss at 7.

Accordingly, it is undisputed that QBE First directly benefits from each and every bad faith

policy purchased to the detriment of the consumer.  The "unjust" nature of this benefit is that the

commission is inflated due to the manner by which the force-placed policy is procured.

No additional "direct relationship" between the class and the individuals need be pled to

assert an unjust enrichment claim under Florida law.  *See McFlicker*, 2011 WL 1559791

(allegation that Plaintiff conferred a benefit to Defendants in the form of wrongfully obtained

higher profits sufficient to create an issue of material fact); *Sierra Equity Grp.*, 650 F. Supp. 2d

CASE NO. 1:11-CV-21233-ALTONAGA/SIMONTON

1213; *Motorola, Inc.*, 2007 WL 4199781 (denying motion to dismiss unjust enrichment claim) (Defendant "erroneously equates direct contact with direct benefit in arguing that "[b]ecause plaintiff here did not purchase either his phone or his batteries from Motorola, plaintiff conferred no direct benefit on Motorola.") (internal citations omitted); *Abels*, 678 F. Supp. 2d 1273 (although the term "benefit" has not been specifically defined by Florida courts, allegation that adding unpaid insurance premiums to the outstanding balance of the mortgage, thereby accruing interest for Defendants was sufficient to deny motion to dismiss.); *MacMorris v. Wyeth, Inc*., 2005 WL 1528626 (M.D. Fla. 2005) (rejecting defendants' direct relationship assertion and accepting plaintiff argument that privity is not a requirement for unjust enrichment).

In fact, unjust enrichment as a legal theory is premised on the lack of such direct dealings. *See Tooltrend*, 198 F.3d at 805 (unjust enrichment claim under Florida law predicated on lack of direct dealings between the parties). As the Eleventh Circuit noted, "[a]lthough the parties may have never by word or deed indicated in any way that there was any agreement between them, the law will, in essence, 'create' an agreement in situations where it is deemed unjust for one party to have received a benefit without having to pay compensation for it." *Id.; see also Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co.,* 695 So. 2d 383, 386 (Fla. 4th DCA 1997) ("Because the basis for recovery does not turn on the finding of an enforceable agreement, there may be recovery under a contract implied in law even where the parties had no dealings at all with each other."). Further, "an action for 'unjust enrichment' exists to prevent the wrongful retention of a benefit, or the retention of money or property of another, in violation of good conscience and fundamental principles of justice or equity." *Challenge Air Transport, Inc. v. Transportes Aereos Nacionales, S.A.*, 520 So. 2d 323, 324 (Fla. 3d DCA 1988) (citing 66 Am.Jur.2d Restitution and Implied Contracts § 3 (1964)).

CASE NO. 1:11-CV-21233-ALTONAGA/SIMONTON

For example, in the Florida case of *Sharp v. Bowling*, 511 So. 2d 363 (Fla. 5th DCA 1987), a plaintiff properly maintained an unjust enrichment claim despite the lack of direct payment to the defendant; in other words, pursuant to a multi-party arrangement.  In *Sharp*, an employer mistakenly reported greater tax withholding for an employee than actually occurred. When the IRS paid its refund to the employee, then demanded (and received) payment from the employer, the employer brought a claim for unjust enrichment against the employee for the employee's windfall.  The appellate court ruled that such a suit was proper.

As the above authorities demonstrate, the claim of unjust enrichment is a flexible and fluid tool of equity designed to remedy situations where one party has been unjustly enriched at the expense of another.  As the *Commerce Partnership* court recognized, the claim is a simply pled equitable cause of action "not based upon the finding, by a process of implication from the facts, of an agreement between the parties."  695 So. 2d at 386.  There are no hyper-technical pleading requirements because the claim is "a legal fiction, an obligation created by law without regard to the parties' expression of assent by their words or conduct."  *Id.*   As the facts pled by the Plaintiffs here demonstrate, that legal fiction is perfectly appropriate here "to provide a remedy where one party was unjustly enriched, where that party received a benefit under circumstances that made it unjust to retain it without giving compensation."  *Id.*

QBE First's narrow definition of "directly conferring a benefit" is at odds with the broad remedial nature of the claim.  The question always turns on whether it is inequitable for the defendant to retain monies or property that, in good conscience, it should not retain.  The *Cardizem* antitrust litigation provides another example of this flexible equitable principle.  *See In re Cardizem CD Antitrust Litig.,* 105 F. Supp. 2d 618, 671 (E.D. Mich. 2000).  There, the defendants argued, just as QBE First does now, that the benefit conferred by the plaintiffs was

not "direct" enough.  After setting forth the general equitable principles which underlay common law unjust enrichment claims, the court rejected the narrow approach proffered by defendants:

> Contrary to Defendants' argument, there is no additional requirement that a benefit flow solely from Plaintiffs to Defendants.  The courts do not define "benefit" as narrowly as Defendants urge.  As the Alabama Supreme Court observed, "[w]henever one person adds to the other's advantage in any form, whether by increasing his holdings or saving him from expense or loss, he has conferred a benefit upon the other." . . . Whether or not the benefit is directly conferred on the defendant is not the critical inquiry; rather, *the plaintiff must show that his detriment and the defendant's benefit are related and flow from the challenged conduct*.  Defendants' arguments, that the connection between plaintiffs' alleged overpayments for Cardizem CD and the benefits Defendants obtained as a result of those overpayments is too tenuous, raise factual questions and refute Defendants' claim that Plaintiffs can prove no set of facts allowing it to state a common law claim for unjust enrichment.

*Id.* (emphasis added).

Plaintiffs have clearly alleged that QBE First received a direct benefit, via commissions. At trial, Plaintiffs will prove the inflated nature of the commissions, the inequitable conduct which led to them, and the exact amount of said benefits received by QBE First.

**D.    QBE First's "Adequate Consideration" Argument Also Fails.**

QBE First next argues that dismissal is proper because Plaintiffs and the Class received adequate consideration for the exorbitant monies paid to QBE First via the bad faith procurement of force-placed insurance policies.  Plaintiffs, however, have alleged the exact opposite. *Stermer*, 2009 WL 1849955 (rejecting dismissal based upon defendants' argument that they provided a "valuable service" in contravention to the allegations of the complaint).

Specifically, Plaintiffs allege that "[p]lacing these unreasonably, uncompetitively, and excessively priced insurance policies on Plaintiffs and the similarly situated Class Members' mortgages without regard for competition on the open market to obtain a commercially

reasonable price, is solely to maximize their own profits through the exorbitant cost of and by collecting kickbacks on those policies." FAC at ¶ 32. "In addition, the Defendants also retroactively force-place exorbitant insurance on homeowners for the periods of time in the past where coverage had lapsed.   This is done despite the fact that there are no claims during the lapsed period and the homeowner has since secured standard insurance." *Id.* at ¶ 31.

QBE First cites to *American Safety Ins. Service, Inc. v. Griggs*, 959 So. 2d 322 (Fla. 5th DCA 2007), a case which supports Plaintiffs' argument that this action will require a full trial to determine whether Plaintiff received adequate compensation for the benefits provided to Defendant. *Id.* at 331-32.  Indeed, the evidence in this matter will show that the amounts paid by consumers could have resulted in insurance policies far superior to the policies provided by the Defendants, and conversely that the force-placed policies provided by the Defendants should have come with significantly lower premiums and commissions.  Accordingly, this is a matter to be decided at trial, with actual evidence, and not at the pleading stage based upon speculative arguments.

### E. The Focus of This Action is Whether the Defendants Acted in Bad Faith, Not Whether the Consumer Could Have Avoided These Charges.

QBE First next argues that Plaintiffs' mortgages allow the placement of force-placed insurance and therefore the unjust enrichment count fails because Defendants were only doing what the contract allows them to do.  In *In re Checking Account Overdraft Litigation*, 694 F. Supp. 2d 1302 (S.D. Fla. 2010), the Honorable James Lawrence King rejected the same "the contract allows us to do it" argument.

> Defendants' second argument is that Plaintiffs fail to allege circumstances under which it would be unjust for Defendants to retain the benefit that they have allegedly received, chiefly because the overdraft fees are specifically provided for in the contracts. The Court disagrees. Plaintiffs have alleged sufficient facts-that, among

other things, Defendants manipulated the posting order of debit transactions in bad faith so as to maximize the number of overdraft fees incurred-which could lead a reasonable fact-finder to conclude that it would be unjust to retain the benefit of those fees. Thus, the Court cannot dismiss the unjust enrichment count on this ground.

*Id*. at 1321-22.  Plaintiff makes the same manipulation allegations in the Amended Complaint, as in the case before Judge King.   *See* FAC at ¶ 35 ("Defendants' manipulation of their force-placed mortgage purchases has maximized the profits to themselves to the great detriment to Plaintiffs and the Class.").  Defendants were not, and have never, been authorized to purchase exorbitant force-placed insurance coverage in the bad faith manner they did in this action.

Finally, QBE First maintains that Plaintiffs could have avoided getting bilked by them if they had just purchased their own insurance.  This argument misses the central gravamen of Plaintiffs' complaint.  Plaintiffs do not argue that the Defendants should be stopped "from selling force-placed insurance policies" only that "the Defendants provide same in good faith and not at inflated and noncompetitive prices."  FAC at ¶ 98.[1]

Defendants' argument is akin to a person standing at the bottom of a cliff and an individual above intentionally pushing a boulder off the cliff crushing the person at the bottom. It is possible that the crusher could argue that if the crushee had not walked where he was walking that he would not have gotten crushed, but the law focuses on the crusher's intentional conduct.  QBE First and its co-defendants have crushed Plaintiff and the Class with their illegal and bad faith force-placed insurance policies, and then disingenuously argue that it is the

---

[1] QBE First's citation to *Lass v. Bank of America, N.A.*, 2011 WL 3567280 (D. Mass. 2011), is inapplicable to this matter because, in *Lass,* the plaintiff's complaint was premised on the amount of insurance Defendant could purchase on a plaintiff's behalf and not on the exorbitant premiums and commissions charged by Defendants in this action.  Indeed, the *Lass* plaintiff argued that Bank of America did not have the authority to purchase the insurance that it did.  In this action, Plaintiffs specifically allege that they "do not seek to prevent or significantly interfere with Defendants' ability to force place insurance coverage pursuant to the mortgage contracts.  Rather, Plaintiffs demand that they perform their practices in good faith."  FAC at ¶ 34.  Finally, the *Lass* defendant denied receiving any commissions for the flood insurance acquired, whereas here, QBE First readily admits to receiving commissions. *See* Motion at 7.

consumer's fault they did so.  Such an argument is the exact opposite of the equitable nature of unjust enrichment and should be rejected.

## II.   PLAINTIFFS HAVE PROPERLY PLED A CLAIM FOR TORTIOUS INTERFERENCE

A simple comparison of the allegations and the elements establish that Plaintiffs have properly pled a claim for tortious interference.  Specifically, to state a claim for tortious interference, plaintiff must plead four elements:

> (1) The existence of a business relationship, not necessarily evidenced by an enforceable contract; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship.

*Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985); *Southeastern Integrated Med., P.L. v. N. Fla. Women's Physicians, P.A.,* 50 So. 3d 21 (Fla. 1st DCA 2010).

Turning to the Amended Complaint, Plaintiffs claim as follows:

> 100.   Plaintiffs and the class members have a business relationship with Wells Fargo pursuant to the mortgage contracts. Plaintiffs and the Class have legal rights under these mortgage contracts.  For example, the Plaintiffs and the Class have a right not to be charged exorbitant charges in bad faith for forced-place insurance.

> 101.   QBE has knowledge of Plaintiff and the class's business relationship with Wells Fargo pursuant to the mortgage contracts. QBE is not a party to the mortgage contracts, nor is it a third-party beneficiary.  Further, QBE does not have any beneficial, economic or supervisory interest in the mortgage contracts.

> 102.   QBE intentionally and unjustifiably interfered with the Plaintiffs and the Class's rights under the mortgage contracts, as described above by, inter alia, paying kickbacks to Wells Fargo and by charging for administering the Wells Fargo's loan portfolio, which are purposefully and knowingly charged to Plaintiffs and the Class.

> 103.    Plaintiffs and the Class have been damaged as a result of QBE's interference with their mortgage contracts by being charged bad faith, exorbitant and illegal charges for force-placed insurance in contravention of their rights under the mortgages.

*See* FAC at ¶¶ 100-03.  These allegations are more than sufficient to state a claim and withstand a motion to dismiss.  *See Bray & Gillespie Mgmt. LLC v. Lexington Ins. Co.*, 527 F. Supp. 2d 1355 (M.D. Fla. 2007) ("Claims for tortious interference do not have to be pled with specificity" and complaint was sufficient where it alleged four elements.).

QBE First acknowledges that these are the elements of tortious interference and does not contend Plaintiff has failed to allege any one of these four elements. Motion at 9.  Instead, QBE First claims that Plaintiffs have failed to "show that QBE First acted with actual malice, spite, ill-will or other bad motive" and that Plaintiffs "do not allege that QBE First itself acted in bad faith . . . ."  Motion at 9, 11.  QBE First is wrong for two reasons.  First, QBE First entirely ignores Plaintiffs' repeated allegations that QBE First acted "in bad faith" when it charged exorbitant and unwarranted fees and paid improper kickbacks for its own financial gain. *See* FAC at ¶¶ 2, 32, 36, 103.  Florida law is clear that simple "greed" or the desire to make money is sufficient "motive" with respect to a tortious interference claim. *Tamiami Trail Tours*, 463 So. 2d at 1127 (noting that whether plaintiff was motivated by "malice" or "greed," the "action is tortious regardless of motive.").

Second, there simply is no requirement for Plaintiff to plead "malice" or "ill will" to state a claim for tortious interference.  *Venezia Resort, LLC v. Favret*, 2007 WL 1364342 (N.D. Fla. 2007) ("a plain reading of the elements of the tort reflects . . . that an express allegation of malice is not required to state a claim for tortious interference with a business relationship."); *see also Future Tech Int'l v. Tae II Media, Ltd.* 944 F. Supp. 1538, 1570 (S.D. Fla. 1996) ("A plain review of the elements of the tort make clear, however, that an express allegation of 'malice' is not required . . . .").  Malice or other ill-will is not an element of a prima facie case for tortious

interference, rather, it is only relevant when the defendant has pled, as an affirmative defense, that its actions were privileged by one of the several privileges recognized as to tortious interference, such as lawful competition or protecting one's own business interest.  In that instance, an otherwise applicable privilege may be voided by a showing that the defendant acted with malice.  *See, e.g., Future Tech Int'l v. Tae II Media, Ltd.* 944 F. Supp. 1538, 1570 (S.D. Fla. 1996) ("Here, however, there is no suggestion that the alleged conduct on the part of the Defendants is entitled to a qualified privilege . . . . For this reason, proof of malice is not an element of the tort alleged by Future Tech, and the Plaintiffs' cause of action may go forward."); *Southeastern Integrated Med., P.L. v. N. Fla. Women's Physicians, P.A.,* 50 So. 3d 21 (Fla. 1st DCA 2010) ("because privilege to interfere with a contract is a matter to be raised as an affirmative defense, it was improper for the trial court to consider [defendant's] motives . . . on a motion to dismiss). Here, Defendant has not pled, nor has it even argued, that a privilege applies, therefore a demonstration of malice or other ill will is not necessary.  Finally, the "presence of malice is generally a question of fact for a jury to resolve" and should not be decided on a motion to dismiss. *Southern Bell Telephone & Telegraph Co. v. Roper*, 482 So.2d 538 (Fla. 3d DCA 1986).

QBE First similarly argues that Plaintiff must show that QBE First used "improper" means such as "physical violence, misrepresentations, illegal conduct or threats of illegal conduct" to state a claim for tortious interference, even though it is not one of the four elements. Motion at 10.  This argument fails for the same reasons.  First, QBE First entirely ignores Plaintiffs' allegations that QBE paid illegal kickbacks and charged exorbitant and unwarranted fees for unnecessary insurance in knowing violation of the plaintiffs' mortgage contracts with their bank.  *See* FAC at ¶¶ 7, 18, 23-25, 28-29, 71-75, 102; s*ee also In re 848 Brickell Ltd.*, 243 B.R. 142, 152 (Bankr. S.D. Fla. 1998) (court properly found that defendant tortiously interfered

CASE NO. 1:11-CV-21233-ALTONAGA/SIMONTON

with the sale of a building when it, *inter alia*, made a "$10,000 offer to [the buyer which] was a bribe for [the buyer] to walk away from the sale").

Second, as with "malice," an allegation of "improper conduct" is not required to state a claim for tortious interference.   Rather, a showing of "improper conduct" can negate a defendant's showing of "privilege" when it has pled privilege as an affirmative defense.  As Judge Altonaga explained in *Ice Portal, Inc. v. VFM Leonardo, Inc.*, after a "plaintiff establishes a prima facie case of interference, the burden shifts to the defendant to justify the propriety of its conduct" through the use of a privilege such as the competition privilege or the privilege to protect one's own financial interest.  2010 WL 2351463, at *7 (S.D. Fla. June 11, 2010) (*quoting Int'l Sales & Serv., Inc. v. Austral Insulated Prods., Inc.*, 262 F.3d 1152, 1159 (11th Cir. 2001)). "Improper means" is a way to negate a privilege defense (and not an element of the prima facie case): "Florida law recognizes the principle that actions taken to safeguard one's financial interest, so long as improper means are not employed, are privileged." *Ice Portal*, 2010 WL 2351463, at *7 (*quoting Johnson Enters. v. FPL Grp., Inc.*, 162 F.3d 1290, 1321 (11th Cir. 1998)).

Indeed, the Florida Jury Instruction that QBE First cites to define "improper means" expressly applies only when a privilege, such as the competition privilege or financial interest privilege, is pled and proven: "another person is entitled to [compete for the business] [or] [advance his own financial interest] so long as he has a proper reason or motive and he uses proper methods." Fla. Civ. Jury Instr. MI 7.2 (brackets in original).  The footnotes and the title to MI 7.2 likewise indicate that it applies when the "competition or financial interest defense" is at issue.  QBE First also neglects to cite Florida Jury Instruction MI 7.1, which applies when, as here, there is a "contract not terminable at will" that is interfered with.  In such an instance, there is no requirement to show malice, ill will or improper means. *See* Fla. Civ. Jury Inst. MI 7.1; *see*

16

*also* Florida Standard Jury Instructions in Civil Cases 408.5 and 408.6 (updated and renumbered jury instructions).

In short, malice, ill will and improper means are used to negate privileges such as the economic interest or competition privilege, which are affirmative defenses (that QBE First has not pled or even argued).   The viability of an affirmative defense is not the proper subject for a motion to dismiss, and therefore cannot be grounds for dismissal.  *See Linafelt v. Bev, Inc.*, 662 So. 2d 986, 990 (Fla. 1st DCA 1995) (court found that in tortious interference claim "a qualified privilege is an affirmative defense, and does not appear on the face of this complaint, and thus it should not have been considered on a motion to dismiss for failure to sate a cause of action.");  *Melbourne Med. Lab., Inc. v. La Corp. of Am.*, 772 So.2d 962 (Fla. 5th DCA 1998) (noting "competition or economic privilege is an affirmative defense to a tortious interference claim and as such must be pled" and finding that because it was not plead, it was not appropriate for consideration on motion for summary judgment).[2]

---

[2] The cases QBE First cites do not compel dismissal.  The majority of QBE First's cases involve decisions made at the summary judgment stage or after a full trial on the merits.  *See, e.g., Chicago Title Ins. Co. v. Alday-Donalson Title Co. of Fla. Inc.*, 832 So.2d 810 (Fla. 2nd DCA 2002) (on summary judgment); *Southern Bell Telephone & Telegraph Co. v. Roper*, 482 So.2d 538 (Fla. 3d DCA 1986) (after a jury trial); *Romika-USA, Inc. v. HSBC Bank USA, N.A.*, 514 F. Supp.2d 1334 (S.D. Fla. 2007) (on summary judgment); *Rockledge Mall Associates, Ltd. v. Custom Fences of South Brevard, Inc.*, 779 So.2d 554 (Fla. 5th DCA 2001) (after a trial); *Smith v. Emery Air Freight Corp.*, 512 So.2d 229 (Fla. 3d DCA 1987) (after a trial).  The few cases that were decided at the motion to dismiss stage are extreme examples and thus distinguishable. *See Coach Services, Inc. v. 777 Lucky Accessories, Inc.*, 752 F. Supp.2d 1271, 1273 (S.D. Fla. 2010) (dismissing case without prejudice for plaintiff to more specifically plead the first prong, existence of a relationship, where plaintiff relied on its relationship with potential customers in the "community at large"); *Boldstar Technical, LLC v. The Home Depot, Inc.*, 517 F. Supp. 2d 1283 (S.D. Fla. 2007) (plaintiff had no contract to interfere with and defendant did not engage in misconduct where it copied product design, but it did not infringe any patent); *Marquez v. PanAmerican  Bank*, 943 So.2d 284, 286 (Fla. 3d DCA 2006) (defendant simply made offer to buy a bank pursuant to the bank's invitation); *Lawler v. Eugene Wuesthoff Mem. Hosp. Ass'n,* 497 So.2d 1261, 1263 (Fla. 5th DCA 1986) (hospital's termination of doctor's staff privileges did not directly interfere with doctor/patient relationship).

Finally, QBE first makes a series of half-hearted assertions that are belied by a review of the First Amended Compliant.   For example, QBE First argues that Plaintiffs "fail even to allege that Wells Fargo breached its contractual relationships with plaintiffs." Motion at 10-11.  This is simply not the case.  In Count I, Plaintiffs allege that Wells Fargo and Wells Fargo Insurance breached their duties of good faith and fair dealing which the law implies in every contract, including the mortgage contracts at issue here—this is a breach of contract claim.  FAC at ¶¶ 69-75.

QBE First also claims that there is no allegation that their conduct interfered with the Plaintiffs' rights under the mortgages. Motion at 11.  Again, this is disproved by even a cursory reading of the First Amended Complaint where plaintiffs clearly allege that QBE First's improper kickbacks and exorbitant unearned fees interfered with Plaintiffs' rights under the contract to have insurance placed in good faith and to be free of bad faith charges. *See, e.g.,* FAC at ¶ 25 ("The commission or kickback is paid by QBE to Wells Fargo in order to maintain their pre-existing uncompetitive and exclusive relationship, to induce Wells Fargo to purchase excessively-priced force-placed insurance policies, and to cause Wells Fargo to not seek competitive bids in the market"); *see also* FAC at ¶¶ 23, 26, 28, 32, 74-75.

Lastly, QBE First claims that Plaintiffs have not alleged that they were harmed as a result of QBE's interference and that Wells Fargo lawfully exercised its rights under the mortgages.  Again, Plaintiffs do make these allegations—specifically, that Wells Fargo breached its implied duty of good faith and fair dealing when placing the exorbitant insurance policies. *See, e.g.,* FAC at ¶ 103. ("Plaintiffs and the Class have been damaged as a result of QBE's interference with their mortgage contracts by being charged bad faith, exorbitant and illegal charges for force-placed insurance in contravention of their rights under the mortgages.").

CASE NO. 1:11-CV-21233-ALTONAGA/SIMONTON

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny QBE First's

Motion to Dismiss.  In the event the Court finds that Plaintiffs' Amended Complaint must be

modified, Plaintiffs request leave of Court to do so.


Respectfully submitted,

*s/ Lance A. Harke*
Lance A. Harke, P.A.
Florida Bar No. 863599
Howard M. Bushman, P.A.
Florida. Bar No. 0364230
**HARKE CLASBY & BUSHMAN LLP**
9699 NE Second Avenue
Miami Shores, Florida 33138
Tel: 305-536-8220/Fax:305-536-8229

Adam M. Moskowitz, Esq.
Florida Bar No. 984280
Thomas A. Tucker Ronzetti, Esq.
Florida Bar No. 965723
Robert J. Neary, Esq.
Florida Bar No. 0081712
**KOZYAK TROPIN &**
**THROCKMORTON, P.A.**
2525 Ponce de Leon, 9th Floor
Coral Gables, Florida 33134
Tel.: 305-372-1800/Fax: 305-372-3508

Jeffrey N. Golant Esq.
1000 W. McNab Rd. Ste. 150
Pompano Beach, FL 33069
Tel:  (954) 942-5270/Fax: (954) 942-5272

Chip Merlin, Esq.
**MERLIN LAW GROUP**
777 S. Harbour Island Blvd.
Tampa, FL 33602
Tel: (813) 229-1000/Fax: (813) 229-3692

*Counsel for Plaintiff*

19

CASE NO. 1:11-CV-21233-ALTONAGA/SIMONTON

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 6th day of September, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing documents is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic filing.

*s/ Lance A. Harke*

CASE NO. 1:11-CV-21233-ALTONAGA/SIMONTON

## SERVICE LIST

William S. Berk
William Xanttopoulos
**BERK, MERCHANT & SIMS, PLC**
2 Alhambra Plaza
Suite 700
Miami, FL 33134
Telephone: 786-338-2851
Facsimile: 786-364-1814
*Counsel for QBE Specialty Insurance*
*Company and Sterling National Insurance*
*Agency,, Inc.*

*Served Via CM/ECF Transmission*

Michael Keith Winston, Esq.
mwinston@carltonfields.com
David B. Esau, Esq.
desau@carltonfields.com
**CARLTON FIELDS PA**
CityPlace Tower, Suite 1200
525 Okeechobee Boulevard
West Palm Beach, FL 33401
Tel: 561-659-7070
Fax: 561-659-7368
*Counsel for Defendants Wells Fargo Bank,*
*N.A., and Wells Fargo Insurance*

*Served Via CM/ECF Transmission*

Andrew L. Sandler
Robyn C. Quattrone
Jennifer Peck
**BUCKLEY SANDLER LLP**
1250 24th Street, NW
Suite 700
Washington, DC 20037
Telephone: 202-349-8000
Facsimile: 202-349-8080
*Counsel for QBE Specialty Insurance*
*Company and Sterling National Insurance*
*Agency,, Inc.*

*Served Via CM/ECF Transmission*