## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

RAY WILLIAMS, *et al.*,

                 Plaintiffs,                          CASE NO. 1:11-cv-21233-CMA

v.

WELLS FARGO BANK, N.A., *et al.*,

                 Defendants.

_____/

### WELLS FARGO BANK, N.A.'S AMENDED MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT, MOTION TO STRIKE JURY TRIAL DEMAND, AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Rules 12(b)(6) and 12(f) of the Federal Rules of Civil Procedure, Local Rule 7.1, and this Court's September 7, 2011 Order [D.E. 59], Defendant Wells Fargo Bank, N.A. ("Wells Fargo Bank") moves to dismiss the Plaintiffs' Amended Complaint with prejudice on three principal grounds: (1) the state law claims are preempted by the National Bank Act; (2) the RESPA claim is based on a statute that is not yet in effect; and (3) the Amended Complaint again improperly lumps the Wells Fargo Defendants together without specifying the conduct of each Defendant. Wells Fargo Bank also moves the Court to strike the Juarez Plaintiffs' demand for a jury trial because they knowingly and voluntarily waived their right to a jury trial in their mortgage contract. In support of this Motion, Wells Fargo Bank submits the following memorandum of law:

### MEMORANDUM OF LAW

### I.      BACKGROUND

Plaintiffs bring this nationwide putative class action on behalf of a class of homeowners who let their property insurance lapse, and who were subsequently charged by their loan servicer

for lender-placed insurance.[1] Plaintiffs allege that the premiums charged for lender-placed coverage nationwide are excessive, despite the fact that lender-placed insurance rates are filed rates (and thus approved by local insurance regulators) in nearly every state in the country.

While it remains to be seen how Plaintiffs intend to prove that each putative class member's insurance premium was "excessive" under their individualized circumstances and mortgage contracts, this case also presents an interesting dilemma for the putative class representatives and their counsel.  The vast majority of putative class members in this case find themselves as members of this putative class solely because they have fallen behind and defaulted on their mortgages and did not pay for their own insurance -- as required by their mortgage contracts.[2]  Given that many of the putative class members currently owe many multiples of the damages sought on their behalf here, the net recovery in this case (after foreclosure and deficiency counterclaims and set-off defenses are asserted) could easily tip away from the putative class members, resulting in foreclosure and net monetary judgments <u>against</u> them.

Similarly, many of the putative class members have already had foreclosure judgments entered against them (or are currently in varying stages of the foreclosure process, *pro se* or otherwise), and since they did not bring the claims alleged here as compulsory counterclaims or

---

[1] Lender-placed insurance, which is expressly permitted by the Plaintiffs' mortgage contracts, allows the lender or servicer to protect the collateral securing its loan by placing insurance on the property when the borrower fails to maintain his own insurance. *See Wahl v. American Sec. Ins. Co.*, 2009 WL 1766620, n. 1 (N.D. Cal. Jun. 18, 2009) (describing lender-placed insurance, and citing *Telfair v. First Union Mortgage Corp.*, 216 F.3d 1333, 1340-41 (11th Cir. 2000) (also describing lender-placed insurance practice) and *Richmond v. Nationwide Cassel L.P.*, 52 F.3d 640, 642 (7th Cir.1995)).

[2] Indeed, only a handful of putative class members ever actually paid for lender-placed insurance because they were (or are being) foreclosed out after defaulting on their loans.  Plaintiffs seem to acknowledge this fundamental problem in their proposed class definition, where they define the putative class as homeowners who were "charged" (as opposed to those who actually "paid") lender-placed insurance.  *See* Am. Compl., at ¶ 54.

defenses during those foreclosure proceedings, many of them are barred from bringing those claims now under the *Rooker-Feldman* doctrine or principles of *res judicata*.

Notwithstanding these serious threshold issues, Plaintiffs make the following allegations:

**Ray Williams**: Plaintiff Ray Williams obtained a mortgage from Wachovia Bank, which was allegedly subsequently assigned to and serviced by Wells Fargo Bank, N.A.  Am. Compl., ¶ 38. A copy of Mr. Williams' mortgage is attached to the Amended Complaint.  According to the Amended Complaint, Mr. Williams' property insurance carrier for the property underlying his mortgage dropped coverage on October 17, 2010. *Id.*, at ¶ 39. Mr. Williams allegedly secured new coverage on November 15, 2010, but discovered later that "Wells Fargo"[3] had secured a lender-placed insurance policy during the intervening 29-day window (*i.e.*, October 18 through November 14). Am. Compl., at ¶ 41-42. Mr. Williams was apparently charged $1,743 for the lender-placed coverage at issue here.  He complains that it was too expensive.  Am. Compl., at ¶ 44.

**Luis and Migdaliah Juarez**: Plaintiffs Luis and Migdaliah Juarez also obtained a mortgage from Wachovia Bank, which was also allegedly assigned to and serviced by Wells Fargo Bank.  Am. Compl., ¶ 45.  A copy of the Juarez mortgage is attached to the Amended Complaint.  The Juarez's property insurance carrier apparently dropped coverage on March 3, 2010 due to damage to their roof.  *Id.*, at ¶ 49-50.[4]  "Wells Fargo" allegedly secured a lender-

---

[3] Plaintiffs' decision to lump the two Wells Fargo Defendants together throughout the Amended Complaint by calling them "Wells Fargo" is confusing (and requires re-pleading) because Wells Fargo Insurance does not own the Plaintiffs' loans, is not responsible for servicing those loans, and is not a party to their mortgage contracts. As Plaintiffs note, Wells Fargo Insurance is an insurance broker, and is not in the business of owning or servicing loans. Am. Compl., at ¶ 5.

[4] Tellingly, Plaintiffs' Amended Complaint deletes allegations from the original complaint relating to the Juarez's damaged roof, including the Juarez's admission that they were unable to otherwise obtain insurance coverage because no insurance carrier (other than the lender-placed carrier here)

placed insurance policy, effective from the March 3, 2010 termination date for the prior coverage. *Id.*, ¶ 49. Like Mr. Williams, the Juarezes complain that the policy premium was too expensive. *Id.*, at ¶ 53.

All three Plaintiffs allege that the "excessively-priced" insurance premiums violate the implied covenants of good faith and fair dealing contained in their individual mortgage contracts (*id.*, at ¶ 74), and that Defendants were unjustly enriched by the "exorbitant" and "unfair" lender-placed insurance premiums. Based on these allegations, Plaintiffs assert two contract-based claims against "Wells Fargo" (Counts I and III), one claim based on a supposed violation of the Real Estate Settlement Procedures Act ("RESPA") (Count II), and an unjust enrichment claim (Count IV).[5]

As explained below, Plaintiffs' state law claims against Wells Fargo Bank are preempted by the National Bank Act. The Amended Complaint should also be dismissed with prejudice because Plaintiffs again improperly lump the Wells Fargo Defendants together (as they did in their original complaint), and the RESPA claim fails because it is based on a statute that is not yet in effect.

## II.   ARGUMENT

### A.   The Amended Complaint Fails to State a Claim Upon Which Relief May be Granted

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

---

would insure the home until their roof had been completely fixed. *See* original complaint, at ¶¶ 56-57.

[5] Plaintiffs also assert a claim for Tortious Interference with a Business Relationship (Count V), but that claim is asserted only against the QBE Defendants.

of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  "A complaint may be dismissed if the facts as pled do not state a claim for relief that is plausible on its face." *Sinaltrainal v. The Coca-Cola Company*, 578 F.3d 1252, 1260 (11th Cir. 2009).  The district court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009).

1.      **Counts I, III, and IV against Wells Fargo Bank are Preempted by the National Bank Act**[6]

Plaintiffs' state law claims (Counts I, III, and IV) against Wells Fargo Ban are preempted by the National Bank Act, 12 U.S.C. § 1 *et seq*. ("NBA") because they conflict with express federal regulations regarding Wells Fargo Bank's federally authorized power to administer, service, and protect its loans.  *See* Am. Compl., at ¶ 4 (alleging specifically that Wells Fargo Bank is a national bank); *see also* Printout from FDIC website, attached hereto as **Exhibit A**, and publicly available on the FDIC website at:  http://www2.fdic.gov/idasp/main_bankfind.asp (confirming that Wells Fargo Bank, N.A. is a national bank regulated by the OCC).

a.      Federal Law Governs the Servicing of Loans and Placement of Insurance by National Banks

For "[n]early two hundred years," the U.S. Supreme Court has "held federal law supreme over state law with respect to national banking."  *Watters v. Wachovia Bank, N.A.,*127 S.Ct.

---

[6] Title X, Subtitle D of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, Pub. L. No. 111-203, 124 Stat. 1376 (2010) ("Dodd Frank") modifies the preemption analysis described below, but the Dodd-Frank preemption amendment did not become effective until the "designated transfer date" (as defined in the Act). *See* Dodd-Frank Act, at Section 1048 (making the new preemption law effective on the "designated transfer date"). The Secretary of the Treasury established the designated transfer date as July 21, 2011. *See* 75 Fed. Reg. 57252 (Sept. 20, 2010). The claims here should be analyzed under the preemption rules in effect when the claims arose because Section 1043 of Dodd-Frank calls for prospective application.

1559, 1566 (2007). For much of that period, that federal law has been the National Bank Act, enacted in 1864 specifically to provide a "uniform and universal operation" for the business of banking throughout the country, *Talbott v. Board of County Comm'rs*, 139 U.S. 438, 443 (1891), and to "shield[] national baking from unduly burdensome and duplicative state regulations." *Watters*, 127 S.Ct. at 1566-67; *see Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 10-11 (2003). The NBA and regulations promulgated thereunder by the Office of the Comptroller of the Currency ("OCC") were thus designed to establish a banking regulatory system "independent, so far as powers conferred are concerned, of state legislation which, if permitted to be applicable, might impose limitations and restrictions as various and as numerous as the States." *Watters*, at 1568 (quoting *Easton v. Iowa*, 188 U.S. 220, 229 (1903)).

"There are three functions considered by the courts to constitute the core of the banking business: accepting deposits, lending, and cashing checks." *Bankers Ass'n of Ind. Inc. v. Clarke*, 766 F.Supp. 1519, 1528 (S.D.Ind. 1990). The NBA expressly authorizes national banks to perform each of these basic functions, and further authorizes them to engage in all activities incidental thereto. *See* 12 U.S.C. § 24 (Seventh) (granting national banks "all such incidental powers as shall be necessary to carry on the business of banking"). A national bank's incidental lending powers are broad. They include not just the initial act of making a loan, but also the continuing administration and servicing of the account, and any action that is "convenient or useful in connection with the performance of one of the bank's established activities." *Bank of Am. v. City & County of San Francisco*, 309 F.3d 551, 562 (9th Cir. 2002) (internal quotation marks and citations omitted). A national bank's servicing activities and protection of its collateral through insurance are part and parcel of its lending powers.

"Under 12 U.S.C. § 93a, the OCC is authorized 'to prescribe rules and regulations to carry out the responsibilities of the office' and, under 12 U.S.C. § 371 to 'prescribe by regulation or order' the 'restrictions and requirements' on national banks' real estate lending power without state-imposed restrictions." Office of the Comptroller of the Currency, Preemption Final Rule, 23 No. 1 OCC Q.J. 28, 7, 2004, available at 2004 WL 2360325; *see also* Office of the Comptroller of the Currency, Office of Thrift Supervision Integration; Dodd Frank Implementation, OCC-2011-0018.  In amending the preemption rules in 2004 to specifically include consumer protection provisions, the OCC acted to "ensure the soundness and efficiency of national banks' operations by making clear the standards under which they do business." *Id.* at 9.  OCC regulations possess the same preemptive effect as the NBA. *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982).

> b.    Florida Law May Not Obstruct, Impair, or Condition a National Bank's Powers

Because federal law is supreme in relation to state law, to the extent that any application of Florida law might be deemed to conflict with the ability of a national bank to fully exercise the powers granted to it by the NBA, that law is preempted.  *See Barnett Bank of Maria County, N.A. v. Nelson*, 517 U.S. 25, 32-347 (1996).   Among other provisions, 12 C.F.R. § 34.4 specifically provides that a national bank may make real estate loans without regard to state law limitations concerning, among other things, "[t]he terms of credit," issues related to insurance and "other credit enhancements or risk mitigants," and the "servicing…[of] mortgages." Moreover, 12 C.F.R. § 7.4002 provides that a national bank "may charge its customers non-interest charges and fees," and that the determination of the amount of such charges and fees are "business decisions to be made by each bank, in its discretion, according to sound banking judgment and safe and sound banking principles." A "significant objective of 12 C.F.R. § 7.4002

is to allow national banks to charge fees and to allow banks latitude to decide how to charge them." *Baptista v. JPMorgan Chase Bank, N.A.*, 640 F.3d 1194, 1197 n.2 (11th Cir. 2011).

Further, the OCC has determined that "the sale of…credit related insurance is part of, or incidental to, the business of banking," and that insurance for a bank's collateral is "directly related to, and logical outgrowths of, a bank's authority to make loans because they protect a bank's ability to recover payment on loans to borrowers." *See* OCC Interpretative Letter #812, issued December 29, 1997, at 1-4, attached hereto as **Exhibit B**, and publicly available on the OCC website at: http://www.occ.gov/static/interpretations-and-precedents/jan98/int812.pdf.[7] In Interpretive Letter #812, the OCC discussed in detail the federally authorized powers of national banks to engage in insurance related activities – including the lender or "force" placed insurance at issue in this case.  Interpretive Letter # 812 also demonstrates that the OCC intends to regulate a national bank's insurance related activities, including force-placing insurance for the protection of a bank's collateral.

The OCC has also published a handbook (attached hereto as **Exhibit C**, and publicly available on the OCC website at:  http://www.occ.treas.gov/publications/publications-by-type/comptrollers-handbook/insactfinal.pdf), entitled "Insurance Activities, Comptroller's Handbook," in which it declares that the OCC is responsible for the "supervision of national

---

[7] Wells Fargo Bank respectfully requests the Court to take judicial notice of the publicly available documents on the OCC and FDIC websites attached to this Motion as **Exhibits A-C**.  A court may take judicial notice of a fact "not subject to reasonable dispute [and]…capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned."  Fed.R.Evid. 201(b). Courts in the Eleventh Circuit and beyond routinely take judicial notice of documents like those attached to this Motion because the accuracy of publicly-available information found on government agency websites cannot reasonably be questioned.  *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278 (11th Cir. 1999) (judicial notice of SEC filings proper at motion to dismiss stage); *Laborers' Pension Fund v. Black-more Sewer Const., Inc.*, 298 F.3d 600, 607 (7th Cir. 2002) (taking judicial notice of information from official website of the FDIC); *Martinez v. Bush*, 234 F.Supp.2d 1275, 1301 (S.D.Fla. 2002) (judicial notice taken of public information available on government website).

banks' insurance activities," and that "state laws generally cannot 'prevent or restrict' insurance activities conducted by national banks and their subsidiaries." **Exhibit C**, at 1-3. The handbook also specifically authorizes national banks to engage in the procurement and sale of insurance through subsidiaries and captive agencies, to protect the bank's collateral through insurance, and to collect fees related to that insurance – the exact type of activity alleged as "misconduct" here. *See, e.g., id.*, at 10 ("A national bank may act as a finder to bring together potential purchasers and sellers of insurance," and "may receive a fee" related thereto). Though the proclamations of the Supreme Court in *Watters* are sufficient, the OCC handbook also confirms that the OCC regulates the activities that Plaintiffs seek to regulate, and therefore the OCC should be given deference, and near conclusive weight, by this Court. *See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843-45 (1984).

Since it is the OCC, not state law, that regulates national banks' insurance-related activities and the reasonableness of fees, applying state law in a way that would impose requirements or obligations on these types of activities, or that would determine whether particular fees are excessive, is preempted. In fact, state law may not intrude *even partially* on these types of activities. *See, e.g., Franklin Nat. Bank of Franklin Square v. New York*, 347 U.S. 373, 376 (1954) (noting how the NBA authorizes national banks to exercise their powers "without qualification or limitation"). This is true even if the state laws are aimed at consumer protection. *See, e.g., Am. Bankers Ass'n v. Lockyer*, 239 F. Supp. 2d 1000, 1016 (E.D. Cal. 2002) ("Consumer protection is not reflected in the case law as an area in which states have traditionally been permitted to regulate national banks"); *Haehl v. Washington Mutual*, 277 F.Supp.2d 933 (S.D.Ind. 2003) (similar OTS regulation preempts state statute or judicial decision purporting to regulate loan-related fees or the processing and servicing of mortgages); *Weiss v.*

*Wells Fargo Bank, N.A.,* 2008 WL 2620886 (W.D. Mo. Jul. 1, 2008) (state law preempted where it "impedes the OCC's exercise of its regulatory and enforcement powers, which also cover consumer protection").

       c.    The State Law Claims Here Would Conflict With Wells Fargo Bank's Federally Regulated Powers and the OCC's Regulation of that Activity

In this case, Plaintiffs allege that the terms of credit to which they agreed in their mortgages (including the term authorizing the lender or servicer to place insurance where the borrower lets it lapse – *see* Am. Compl., at ¶ 71), were unconscionable and unfair (*id.*, at ¶¶ 32, 34, 71-72, 87, 88, 93), and that the manner in which Wells Fargo Bank implemented these contract terms was improper. *Id.*, at ¶ 73-74. Plaintiffs also complain that the fees they were charged for lender-placed insurance were excessive, exorbitant, and deceptive. *Id.*, at ¶¶ 19, 20, 27, 28, 30, 32, 44. 53, 56, 58(d), 58(f), 58(h), 58(i), 74, 87, 88, 91, 94.

In other words, at their core, Plaintiffs' state law claims seek to have the Court regulate: (a) the express and implied terms of credit to which they agreed; (b) the manner in which Wells Fargo Bank services its loans and places insurance on its collateral when the borrower lets it lapse; and (c) whether the fees charged for the lender-placed insurance were "excessive," "exorbitant," or "deceptive."

But as discussed above, these <u>exact</u> insurance-related issues are already regulated by the National Bank Act, its regulations, and the OCC because they are part and parcel of the business of banking. *See* **Exhibit B**, OCC Interpretative Letter #812, at 4-7 (demonstrating how the OCC regulates national banks' insurance-related activities associated with the protection of its collateral); **Exhibit C**, OCC Handbook (OCC is responsible for regulating national banks'

insurance-related activities); 12 U.S.C. § 92 (national banks permitted to engage insurance related activities).

Moreover, the OCC also regulates whether the fees charged by banks (such as those at issue here) are excessive or unfair.  *See* 12 C.F.R. § 7.4002 (national banks may charge its customers non-interest charges and fees in its discretion according to safe and sound banking principles).  Indeed, in *Martinez v. Wells Fargo Bank, N.A.*, 598 F.3d 549 (9th Cir. 2010), the Ninth Circuit affirmed dismissal of claims alleging that purported overcharges and mark-ups by a national bank constituted unfair and deceptive business practices.  The Ninth Circuit held that these claims were preempted by 12 C.F.R. § 7.4002 and 12 C.F.R. § 34.4, stating:

> In essence, the Martinezes argue that these fees are too high, and ask the court to decide how much an appropriate fee would be.  However, the OCC has clearly provided how the fees are to be determined. Under 12 C.F.R. § 7.4002(b)(2), these are business decisions to be made by each bank.

*Id.*, at 556; *see also Baptista*, 640 F.3d at 1198, n. 2 (stating that "the significant objective of 12 C.F.R. § 7.4002 is to allow national banks to charge fees and to allow banks latitude to decide how to charge them;" and that "allowing banks the option of *how* to charge fees was a significant objective of the NBA and regulations promulgated thereunder") (emphasis in original); *Haehl v. Washington Mutual*, 277 F.Supp.2d 933 (S.D.Ind. 2003) (similar OTS regulation preempts state statute or judicial decision purporting to regulate loan-related fees or the processing and servicing of mortgages).

So it should be here.  It is the OCC – not these Plaintiffs, or this Court, or Florida common law – that has authority to regulate national banks' conduct with respect to the terms of credit, the placement of insurance, and to determine whether fees charged by the bank are excessive. Allowing Plaintiffs' state law claims to proceed would have the same effect as a direct regulation of those activities, which are already regulated by the OCC.

The carve-out provision in 12 C.F.R. § 34.4(b)(1) for certain contract issues does not save Plaintiffs' contract-based claims (Counts I and III) from preemption.  In *Schilke v. Wachovia Mortg.*, 758 F.Supp.2d 549, 556 (N.D.Ill. 2010) *(modifying Schilke v. Wachovia Mortg.*, 705 F.Supp.2d 932 (N.D.Ill. 2010))*, the Northern District of Illinois concluded that similar contract-based claims were preempted under a comparable Office of Thrift Supervision regulation.  Like here, the Plaintiff in *Schilke* alleged that the bank breached its duty of good faith and fair dealing under the parties' contract by failing to exercise its discretion in good faith when it purchased high-priced insurance that was unfavorable to the Plaintiff.  *Id.*, at  556.

The *Schilke* Court concluded that "[t]he question of whether a contract claim is or is not preempted…turns on the conduct at issue, not the label given to the putative cause of action." *Id.*, at 556-57.  "[A] breach of contract claim that alleges an utter failure to honor the express terms of a mortgage loan contract—for example, by charging a homeowner a higher annual interest rate than that specified in the mortgage agreement—might not be preempted…. However, if the conduct complained of in a breach of contract claim falls within the scope of federal authority concerning lending activities, it is preempted."  *Id.* (citing *In re Ocwen*, 491 F.3d 638, 646 (7th Cir. 2007)).  The *Schilke* Court held that the Plaintiff's contract-based claims (which are nearly identical to those here) were indeed preempted by federal law.  *Id.; see also Martinez*, 598 F.3d at 555-57 (claims based on excessive and deceptive fees are preempted); *Wier v. Countrywide Bank, N.A.*, 2011 WL 1256944 (E.D.Mich. Mar. 31, 2011) (common law claims preempted under the NBA).

Like in *Schilke*, the gravamen of each of the state law claims here, including the contract-based claims, is that the Plaintiffs were charged excessive and deceptive fees for lender placed insurance, and that Defendants collected kickbacks related to those insurance policies.  Plaintiffs

do not allege an utter failure to honor express terms of their contracts.  Rather, the claims here are, in essence, nothing but mislabeled consumer protection issues.  Plaintiffs' request to have this Court regulate those types of issues is inconsistent with the uniform federal standard required by the NBA. Thus, Plaintiffs' state law claims against Wells Fargo Bank are preempted by the NBA, and should be dismissed as a matter of law.

The Amended Complaint should also be dismissed for the following additional reasons:

### 2.      The Amended Complaint Also Fails to Meet the Requirements of Fed.R.Civ.P. 8

Like the initial Complaint in this case, the Amended Complaint is impermissibly vague and fails to satisfy the general pleading requirements of Rule 8 of the Federal Rules of Civil Procedure.  A complaint that takes the "shotgun" approach by naming several defendants in each count "is in no sense the 'short and plain statement of claim' required" by Rule 8.  *Magluta v. Samples*¸ 256 F.3d 1282, 1284 (11th Cir. 2001); *see also Lane v. Capital Acquisition and Management Co.*, 2006 WL 4590705 at *5 (S.D. Fla. 2006).  A complaint cannot simply lump the defendants together in each count, but instead must give some factual basis to distinguish the conduct of each defendant.  *Lane*, 2006 WL 4590705 at *5 (Rule 8 standard not met when defendants are lumped together in each count and there is no basis to distinguish their conduct); *Pro Image Installers, Inc. v. Dillion*, 2009 WL 112953 *1-2 (N.D. Fla. 2009) (same).

Here, Plaintiffs again improperly lump Wells Fargo Insurance with Wells Fargo Bank (which, as Plaintiffs note, are separate and distinct legal entities) and call them "Wells Fargo" throughout the Amended Complaint, including in each count.  Plaintiffs' strategic decision to lump both Wells Fargo Defendants together throughout the Amended Complaint fails to distinguish each Defendant's conduct and relationship with the Plaintiffs, fails to put each Defendant on notice of the claims against it, and fails to meet the pleading requirements of Rule

8.   *Lane*, 2006 WL 4590705 at \*5; *Dillion*, 2009 WL 112953 at \*1-2.   Accordingly, since Plaintiffs were already on notice of this "lumping" problem by the previous Motion to Dismiss filed in this case [D.E. 31, at 12], and failed (or refused) to fix the problem in their Amended Complaint, the Amended Complaint should be dismissed with prejudice.

### 3.   Counts I-IV Should be Dismissed For Other Reasons

#### a.   Count I (Breach of Implied Covenant) Should be Dismissed

In addition to the improper "lumping" of the Wells Fargo Defendants, and failure to allege which Wells Fargo Defendant was actually bound by their mortgage contracts, Count I is inadequately pled as to Wells Fargo Bank for another important reason: Even if Plaintiffs intended to assert the contract-based claims here against Wells Fargo Bank (as opposed to Wells Fargo Insurance), Plaintiffs do not indicate whether those claims are brought against Wells Fargo Bank in its role as the servicer (*i.e.*, agent of the owner) of their loans, or as the owner of their loans.  Plaintiffs gloss over this issue in their Amended Complaint by using the "and/or" phrase in Paragraphs 38 and 45, but the distinction is critical, and has significant ramifications regarding how this putative class action will proceed.

For example, if Plaintiffs are pursuing their claims against Wells Fargo Bank solely in its capacity as the servicer of their loans, the breach of contract claims in the Amended Complaint (Counts I and III) would require a threshold analysis of agency principals regarding whether Wells Fargo Bank, as agent of the loan owner, is bound by the implied covenants in the Plaintiffs' mortgages, or responsible for the supposed "unconscionable" provisions in those mortgages.

On the other hand, if Plaintiffs are pursuing those claims against Wells Fargo Bank solely in its capacity as the supposed owner of their loans (or in some hybrid of owner and servicer),

the putative class definition in the Amended Complaint would require significant modification. Plaintiffs' current class definition seeks contract-based class-wide relief on behalf of anyone who was charged for lender placed insurance by the Defendants, regardless of what entity actually owns their loans or what entity is bound by their mortgage contracts.   But if Plaintiffs are pursuing their claims against Wells Fargo Bank solely in its capacity as the owner of their loans, they may not have standing to pursue <u>contract-based</u> relief on behalf of individuals whose loans are not owned by Wells Fargo Bank.   At a minimum, Plaintiffs should be required to provide this basic information regarding their claims and class definition so that Wells Fargo Bank can fairly defend this action.

b. <u>Count II (RESPA Section 2605) Should be Dismissed</u>

In Count II, Plaintiffs allege that "Wells Fargo" violated Section 2605 of the RESPA statute by charging insurance premiums for lender-placed insurance that are not "*bona fide* and reasonable."  Am. Compl., ¶¶ 81-83.  But Plaintiffs fail to realize that the law underlying their claim, including the "*bona fide* and reasonable" requirement, is not yet in effect.  That language (and the entirety of new subsections K-M of Section 2605) is part of Title XIV, Section 1463 of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, Pub. L. No. 111-203, 124 Stat. 1376 (2010) ("Dodd Frank").  Those provisions do not become effective until after the newly created Bureau of Consumer Financial Protection finalizes its implementing regulations, which will not occur for some eighteen months after the July 21, 2011 "designated transfer date." *See* Dodd Frank, at Section 1400(c) (describing the effective dates for the new laws under Dodd Frank); *see also* current notes to 12 U.S.C. § 2605 (stating that the Dodd-Frank amendments to the RESPA statute take effect on the date on which the final regulations implementing those amendments take effect – which has not yet occurred).

In other words, all of the lender-placed insurance requirements in Section 2605 of the RESPA statute, including the "*bona fide* and reasonable" language that forms the basis of -- and predicate for -- Count II in the Amended Complaint, will not be effective law until sometime in late 2012 or early 2013.  Even a cursory review of the <u>current</u> version of 12 U.S.C. § 2605 demonstrates that the statute does not yet address lender-placed insurance issues or contain the "*bona fide* and reasonable" or other lender-placed insurance language that will eventually be included in the statute.

Clearly, Wells Fargo Bank cannot have violated a law that does not yet exist, let alone one that did not exist when the complaint was filed or when the conduct underlying the complaint allegedly occurred.  Since the law underlying Count II is not yet in effect, Count II should be dismissed with prejudice.[8]

c.    <u>Count III (Unconscionability) Should be Dismissed</u>

In addition to the Plaintiffs' failure to allege which Wells Fargo Defendant was even bound by their mortgage contracts, Count III also fails for the same reason discussed above with respect to Count I:  it does not allege whether the claim is brought against Wells Fargo Bank in its role as the <u>servicer</u> of their loans, or as the <u>owner</u> of their loans.  As discussed above, the analysis for each scenario is different, and it is unlikely that a servicer would be liable for an unconscionable provision in a mortgage to which it is only an agent of the contracting party.

The unconscionability claim here also fails for other reasons.  While "unconscionability" may serve as a defense to a contract-based claim (*see, e.g., Bland, ex rel. Coker v. Health Care and Ret. Corp. of Am.*, 927 So.2d 252, 256 (Fla. 2d DCA 2006) and *Gainesville Health Care*

---

[8] Plaintiffs knew when they filed their Amended Complaint that the statute underlying their RESPA claim is not yet in effect, as the Defendants moved to dismiss this identical claim in the original complaint filed in this action.  Strangely, Plaintiffs elected again to pursue this claim, apparently without any basis in law whatsoever.

*Ctr., Inc. v Weston*, 857 So.2d 278, 285 (Fla. 1st DCA 2003)), it does not appear to be an affirmative cause of action under Florida law.  Nor is it clear how Plaintiffs would be entitled to recover monetary damages against Wells Fargo Bank (or any Defendant) for the supposedly "unconscionable" provisions in their mortgage contracts.

Plaintiffs also fail to identify the express provision in their mortgage contracts that is "unconscionable."  While Plaintiffs vaguely reference a provision that allows Wells Fargo Bank to force-place insurance if the borrower lets his own insurance lapse [Am. Compl., at ¶ 86-87], the language in the Williams mortgage contract (and the hazard insurance paragraph in particular) is substantially different than that in the Juarez mortgage contract.  *Compare* Am. Compl., at Exhibit A, ¶ 3 *with* Am Compl., at Exhibit B, ¶ 5.  Plaintiffs do not point to specific language in each mortgage contract that is unconscionable.

In fact, Plaintiffs do not even appear to assert that the express language in either contract is itself unconscionable.  Rather, Plaintiffs appear to be complaining about the <u>manner</u> in which Wells Fargo Bank selected insurers and charged for insurance.  Indeed, Plaintiffs admit that "they do not seek to prevent or significantly interfere with Defendants' ability to force place insurance coverage pursuant to their mortgage contracts.  Rather, Plaintiffs demand that they perform their practices in good faith."  Am. Compl., at ¶ at 34.

In other words, Plaintiffs do not seem to be alleging that the express terms of the parties' contracts are unconscionable.  Rather, the "unconscionability" claim here appears to hinge, instead, on the <u>manner</u> in which Wells Fargo Bank exercised its discretion under those contracts.  While these allegations could conceivably amount to an implied covenant of good faith and fair dealing claim if more detail is alleged, they are not sufficient to state a claim for unconscionability (if such a claim even exists under Florida law) because they do not relate to an

express term of the contract.  *See Bland*, 927 So.2d at 256 (substantive unconscionability requires an assessment of whether the contract terms are so "outrageously unfair" as to "shock the judicial conscience") (quoting *Gainesville Health Care Ctr., Inc. v Weston*, 857 So.2d 278, 285 (Fla. 1st DCA 2003)).   Since Plaintiffs have not adequately identified a substantively unconscionable contract term in each of their mortgage contracts, Count III should be dismissed with prejudice.[9]

### d.   Count IV (Unjust Enrichment) Should be Dismissed

A claim for unjust enrichment under Florida law requires factual elements showing that: (1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefits conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff.  *Hillman v Constr. Corp. v. Wainer*, 636 So.2d 576, 577 (Fla. 4th DCA 1994). Moreover, "[w]hen a defendant has given adequate consideration to someone for the benefit conferred, a claim of unjust enrichment fails." *Baptista v. JPMorgan Chase Bank, N.A.*, 2011 WL 1772657, at n.3 (11th Cir. May 11, 2011).  Plaintiffs' unjust enrichment claim here fails for at least four independent reasons:

First, as with their other claims, Plaintiffs' unjust enrichment claim improperly lumps Wells Fargo Bank with Wells Fargo Insurance, and as a result, fails to adequately allege that Wells Fargo Bank received any money directly from the Plaintiffs.  These pleading omissions require dismissal.  *See Huntsman Packaging Corp. v. Kerry Packaging Corp.*, 992 F.Supp.2d 1439, 1446 (M.D. Fla. 2009) (unjust enrichment claims require allegations of a direct benefit conferred on each defendant); *West Coast Life Ins. Co. v. Life Brokerage Partners LLC*, 2009

---

[9] Plaintiffs' substantive and procedural unconscionability allegations are also woefully short on facts. The allegations merely parrot the elements of substantive and procedural unconscionability without providing any actual facts.

WL 2957749, at *11 (S.D. Fla. Sept. 9, 2009) (dismissing unjust enrichment claim because the complaint did not allege which defendant received compensation for its role in the transactions); *Extraordinary Title Services, LLC v. Florida Power & Light Co.*, 1 So.3d 400 (Fla. 3d DCA 2009) (direct benefit required for unjust enrichment claim).  Similarly, the Amended Complaint contains no factual allegations regarding what sort of (or how much) compensation each Defendant actually received directly from the Plaintiffs (if any).

Second, even if a direct benefit could be alleged as to Wells Fargo Bank, Plaintiffs' unjust enrichment claim still fails because Plaintiffs could have avoided the allegedly "excessive" lender-placed insurance premiums by keeping insurance on their property current, as required by their mortgage contracts.  Plaintiffs concede that their mortgage contracts require them to maintain continuous hazard insurance on their properties [Am. Compl., at ¶ 17], and that the loan servicer is permitted to "force-place" insurance when the borrower lets his own insurance lapse.  *Id.*, at ¶ 18.  The mortgage contracts also warn Plaintiffs, in no uncertain terms, that the cost of such "force-placed" insurance could significantly exceed the cost of insurance obtained voluntarily by the borrower.  *Id.*, at Ex. B, ¶ 5.  Because Plaintiffs had the ability and opportunity to avoid the higher insurance premiums, their claim for unjust enrichment fails as a matter of law.  *See Baptista*, 640 F.3d at 1198 n.3 (affirming dismissal of unjust enrichment claim because, among other things, plaintiff could have avoided the fee by not accepting the benefit); *Lass v. Bank of America, N.A.*, No. 11-10570, --- F.2d ---, 2011 WL 3567280, at *7 (D. Mass. Aug. 11, 2011) (dismissing unjust enrichment claim in lender-placed insurance context).

Third, the unjust enrichment claim fails because Plaintiffs admit that they received a benefit for the premiums they were charged.  As a matter of law, there can be no claim for unjust enrichment when adequate consideration is provided for the benefit conferred.  *Baptista,* 2011

WL 1772657, at n.3.  Here, Plaintiffs concede that they received consideration for the insurance premiums that they were charged (*i.e.*, insurance coverage when they could not otherwise obtain it).  Accordingly, their unjust enrichment claim fails as a matter of law.

Fourth, and finally, the unjust enrichment claim fails because it is barred by the Plaintiffs' mortgage contracts. Under Florida law, "a quasi-contractual claim fails upon a showing that an express contract exists." *Berry v. Budget Rent A Car Sys., Inc.*, 497 F.Supp.2d 1361, 1369 (S.D. Fla. 2007).  Here, Plaintiffs' unjust enrichment claim is premised on the theory that they were overcharged for lender-placed insurance. Yet Plaintiffs acknowledge that their properties were uninsured, that they could not otherwise obtain insurance, that their mortgage contracts permitted the lender or servicer to "force-place" insurance under those circumstances, and that the cost of such insurance might significantly exceed the cost of insurance obtained by the borrower. Am. Compl., at ¶ 86; *id.*, at Ex. B, ¶ 5.  Since Plaintiffs had an express contract related to these issues, Plaintiffs' quasi-contract claim fails as a matter of law.

**B.       The Juarez Jury Trial Demand Should be Stricken Pursuant to Rule 12(f)**

Pursuant to Section 24 of the Juarez mortgage, Luis and Midgaliah Juarez waived their right to a trial by jury in any action arising out of their mortgage. The Juarez's claims here arise out of their mortgage, and their waiver was made knowingly, voluntarily, and is conspicuous. Thus, their demand for a jury trial should be stricken pursuant to Fed.R.Civ.P. 12(f). *See e.g.*, *Sekesan v. Aegis Funding Corp.*, 2010 WL 1249443 (S.D.Fla. Mar. 25, 2010); *Milsap v. Cornerstone Residential Management, Inc.*, 2007 WL 965590 (S.D.Fla. Mar. 28, 2007); *Oglesbee v. IndyMac Financial Services, Inc.*, 675 F.Supp.2d 1155, 1158 (S.D.Fla. 2009).

**III.    CONCLUSION**

This action should be dismissed with prejudice and/or the jury demand stricken.

## <u>LOCAL RULE 7.1 CERTIFICATION</u>

Pursuant to Local Rule 7.1(a)(3), undersigned counsel certifies that he has conferred with counsel for the other parties in a good faith effort to resolve the Rule 12(f) issues raised in this Motion. Counsel for Defendant QBE Specialty Insurance Company and Defendant Sterling National Insurance Agency, Inc. does not object to the relief requested in the Rule 12(f) portion of this Motion. Counsel for the Plaintiffs does object to the relief sought in the Rule 12(f) portion of this Motion.

**CARLTON FIELDS, P.A.**
525 Okeechobee Blvd., Suite 1200
West Palm Beach, Florida 33401
Telephone: (561) 659-7070 / Fax: (561) 659-7368

By: /s/ David B. Esau
      Michael K. Winston (Fla. Bar No. 051403
      E-mail:  mwinston@carltonfields.com
      David B. Esau (Fla. Bar No. 650331
      E-mail: desau@carltonfields.com

*Attorneys for Wells Fargo Bank, N.A.,*
*and Wells Fargo Insurance*

## CERTIFICATE OF SERVICE

I hereby certify that on September 7, 2011, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

/s/  David B. Esau
David B. Esau

## SERVICE LIST

| | |
|---|---|
| Lance Harke<br>Howard Busman.<br>**HARKE & CLASBY, LLP**<br>155 South Miami Avenue<br>Suite 600<br>Miami, FL 33130<br>Telephone: 305-536-8220<br>Facsimile: 305-536-8229<br>*Counsel for Plaintiffs*<br><br>By Notice of Electronic Filing | Adam Moskowitz<br>Thomas A. Tucker Ronzetti<br>Robert Neary<br>**KOZYAK TROPIN & THROCKMORTON, P.A.**<br>2525 Ponce de Leon<br>9th Floor<br>Coral Gables, FL 33134<br>Telephone: 305-372-1800<br>Facsimile: 305-372-3508<br>*Counsel for Plaintiffs*<br>By Notice of Electronic Filing |
| Jeffrey N. Golant<br>1000 West McNab Road<br>Suite 150<br>Pompano Beach, FL 33069<br>Telephone: 954-942-5270<br>Facsimile: 954-942-5272<br>*Counsel for Plaintiffs*<br>By Notice of Electronic Filing | Chip Merlin<br>Mary E. Fortson<br>Sean M. Shaw<br>**MERLIN LAW GROUP**<br>777 South Harbour Island Boulevard<br>Tampa, FL 33602<br>Telephone: 813-229-1000<br>Facsimile: 813-229-3692<br>*Counsel for Plaintiffs*<br>By Notice of Electronic Filing |
| William S. Berk<br>William Xanttopoulos<br>**BERK, MERCHANT & SIMS, PLC**<br>2 Alhambra Plaza<br>Suite 700<br>Miami, FL 33134<br>Telephone: 786-338-2851<br>Facsimile:  786-364-1814<br>*Counsel for QBE Specialty Insurance Company and Sterling National Insurance Agency,, Inc.*<br>By Notice of Electronic Filing | Andrew L. Sandler<br>Robyn C. Quattrone<br>Jennifer Peck<br>**BUCKLEY SANDLER LLP**<br>1250 24th Street, NW<br>Suite 700<br>Washington, DC 20037<br>Telephone: 202-349-8000<br>Facsimile: 202-349-8080<br>*Counsel for QBE Specialty Insurance Company and Sterling National Insurance Agency,, Inc.*<br>By Notice of Electronic Filing |