UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  11-21233-CIV-ALTONAGA/Simonton

RAY WILLIAMS, *et al.*,

      Plaintiffs,

vs.

WELLS FARGO BANK N.A., *et al.*,

      Defendants.

_____/

**ORDER**

**THIS CAUSE** came before the Court on Defendants, QBE First Insurance Agency Inc.'s ("QBE First['s]") Motion to Dismiss ("QBE Motion") [ECF No. 47]; and Wells Fargo Insurance Inc.'s ("WFI['s]") Motion to Dismiss ("WF Motion") [ECF No. 48], both of which were filed on August 19, 2011.  The Motions seek dismissal of the claims asserted in the Amended Complaint [ECF No. 44] filed by Plaintiffs, Ray Williams, Luis Juarez, and Migdaliah Juarez (collectively, "Plaintiffs") on behalf of themselves and all others similarly situated.  Plaintiffs filed their Response to the QBE Motion ("QBE Response") [ECF No. 58] and their Response to the Wells Fargo Motion ("WF Response") [ECF No. 57] (collectively, "Responses") on September 6, 2011.  WFI [ECF No. 71] and QBE First [ECF No. 75]  filed their Reply memoranda on September 16, 2011.  The Court has considered the parties' written submissions and applicable law.

**I. BACKGROUND**[1]

    This putative class-action lawsuit involves "force-placed insurance."  (Am. Compl. ¶ 2). Plaintiffs are homeowners whose property-insurance policies lapsed and who were subsequently

---

[1]  The allegations of Plaintiffs' Amended Complaint are taken as true.

Case No.  11-21233-CIV-ALTONAGA/Simonton

charged for force-placed insurance.  (*See generally id.*).  Defendant, Wells Fargo Bank, N.A. ("Wells Fargo Bank"), is a national bank registered to do business in the State of Florida and is the successor in interest and/or assign of Wachovia as to all of Wachovia's home mortgages.  (*See id.* ¶ 4).  Defendant, WFI, is a division of Wells Fargo Bank, which Plaintiffs claim "exists only to collect kickbacks or commissions related to the force-placed insurance policies."  (*Id.* ¶ 34).[2]  Defendant, QBE Specialty Insurance Co. ("QBE Specialty"), is a surplus-line insurance provider doing business in the State of Florida.  (*See id.* ¶ 6).  QBE First is a "managing general agent/surplus-line insurance broker" that Plaintiffs claim "exists only to provide kickbacks and/or collect excessive commission related to the force-placed insurance policies."  (*Id.* ¶ 7).[3]

### 1. General Allegations

Each mortgage at issue is owned and/or serviced by Wells Fargo and requires borrowers to maintain insurance on their real property.  (*See id.* ¶ 17).  If a borrower fails to maintain the requisite insurance, the mortgage servicer may forcibly place insurance on the property.  (*See id.*).  In other words, once an insurance policy lapses, the mortgage servicer can purchase insurance for the home, "force-place" it, and then charge the borrower the full cost of the premium.  (*Id.* ¶ 18).

According to Plaintiffs, the premiums charged on the force-placed loans at issue in this case "are not the actual amount that Wells Fargo pays, because a substantial portion of the premiums are refunded to Wells Fargo through various kickbacks and/or unwarranted commissions."  (*Id.*).  To

---

[2]  WFI and Wells Fargo Bank are referred to collectively as "Wells Fargo" by Plaintiffs, and thus the Court uses this term as well.

[3]  QBE Specialty and QBE First are referred to collectively as "QBE" by Plaintiffs, and thus the Court uses this term as well.

Case No.  11-21233-CIV-ALTONAGA/Simonton

accomplish the forced placement, Wells Fargo enters into an exclusive arrangement with QBE to be the sole insurance provider for all force-placed policies.  (*See id.* ¶ 19).  Under this arrangement, QBE has access to and searches Wells Fargo's database to find lapsed insurance policies.  (*See id.* ¶ 26).  Then, QBE writes to the homeowners to notify them of the force-placed coverage and charges exorbitant rates to Plaintiffs, who have no way of refusing the force-placed charges.  (*See id.*).  The premiums are well in excess of those which can be obtained in the open market, generally costing at least five to six times — and up to ten times — more than what the borrower was either originally paying or what the borrower could obtain in the open market.  (*See id.* ¶¶ 19, 20).  Force-placed insurance is also applied retroactively for periods of time in the past where coverage has lapsed.  (*See id.* ¶ 31).

Wells Fargo receives commissions or kickbacks from the force-placed insurance companies or insurance brokers once one of the force-placed insurance policies is purchased.  (*See id.* ¶ 23).  The commission or kickback is paid by QBE to Wells Fargo in order to maintain the preexisting uncompetitive and exclusive relationship, to induce Wells Fargo to purchase excessively-priced force-placed insurance policies, and to cause Wells Fargo not to seek competitive bids in the market.  (*See id.* ¶ 25).  As a result of this arrangement, Wells Fargo and QBE have reaped significant profits.  (*See id.* ¶ 22).  Plaintiffs allege these practices constitute bad faith and are unconscionable.  (*See id.* ¶ 32).

### 2. Plaintiff Ray Williams

Plaintiff Ray Williams ("Mr. Williams") "obtained a mortgage from Wachovia Bank, which has a mortgage balance of approximately $85,000" and is serviced by Wells Fargo.  (*Id.* ¶ 38).  From

Case No.  11-21233-CIV-ALTONAGA/Simonton

the inception of the mortgage until October 17, 2010, Mr. Williams maintained, in full force and

effect, the insurance required by the mortgage contract.  (*See id.* ¶ 39).  On October 17, 2010,

however, the insurance policy lapsed.  (*See id.*).

Mr. Williams's insurance had lapsed for less than 30 days when, on November 15, 2010, Mr.

Williams secured new insurance for the property.  (*See id.* ¶ 40).  Thereafter, Wells Fargo, "without

seeking competitive bids on the open market or attempting to re-establish Mr. Williams's prior

insurance," used QBE to obtain "surplus-lines force-placed insurance" for Mr. Williams's property.

(*Id.* ¶ 41).  On December 27, 2010, Wells Fargo notified Mr. Williams "that it was retroactively

force-placing an insurance policy on the property for the approximate 30-day lapsed period and

adding the cost of the premium to his mortgage loan."  (*Id.* ¶ 42).  The cost of the premium totaled

approximately $1,743.00 for the 30-day lapsed period, amounting to nearly six times the amount of

the monthly premium ordinarily paid by Mr. Williams.  (*See id.* ¶ 43).

### 3.  Plaintiffs Luis Juarez and Migdaliah Juarez

Plaintiffs Luis and Migdaliah Juarez obtained a mortgage from Wachovia Bank secured by

a parcel of real property, which was serviced by Wells Fargo.  (*See id.* ¶ 45).  Mr. and Mrs. Juarez

maintained an insurance policy on the property, as required by the mortgage contract; however, the

policy lapsed.  (*See id.* ¶ 46).  Wells Fargo, "without seeking competitive bids on the open market

or attempting to re-establish [the Juarezes'] prior insurance," contracted with QBE to obtain

"surplus-line, force-placed[] insurance" for Mr. and Mrs. Juarez's property.  (*Id.* ¶ 48).  On July 16,

2010, Wells Fargo notified the Juarezes that it was force-placing an insurance policy on them for the

period of March 3, 2010 to March 3, 2011.  (*See id.* ¶ 49).  Despite being purchased in July 2010,

4

the insurance policy was backdated over four months to March 3, 2010, notwithstanding the fact that there was no damage to the property or claims arising out of the property for that four-month period. (*See id.* ¶ 50). The cost of the annual premium for that force-placed insurance policy totaled approximately $25,000.00 which is nearly four times the amount now paid by the Juarezes. (*See id.* ¶ 51).

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S. Ct. at 1950 (citing *Twombly*, 550 U.S. at 556). To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556).

When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). A court's analysis of a Rule 12(b)(6) motion "is limited primarily to the face of the complaint and the attachments thereto."

Case No. 11-21233-CIV-ALTONAGA/Simonton

*Brooks*, 116 F.3d at 1368. The Court may also consider other documents to be part of the pleadings for purposes of Rule 12(b)(6) where the plaintiff refers to the documents in the complaint and those documents are central to the plaintiff's claim. *Id.* at 1369.

### III.  ANALYSIS

**A.  Breach of Implied Covenant of Good Faith and Fair Dealing (Count I)**

Count I of the Amended Complaint asserts a claim against WFI and Wells Fargo Bank for breach of the implied covenant of good faith and fair dealing. (*See* Am. Compl. ¶¶ 68–74). WFI contends this claim must be dismissed as it relates to WFI because WFI is not a party to, or in any way bound by, the mortgage contracts at issue. (*See* WF Mot. 6–7).

"Under Florida law, every contract contains an implied covenant of good faith and fair dealing." *Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1151 (11th Cir. 2005); *see also Cnty. of Brevard v. Miorelli Eng'g, Inc.*, 703 So. 2d 1049, 1050 (Fla. 1997). Nonetheless, a breach of the implied covenant "is not an independent cause of action, but attaches to the performance of a specific contractual obligation." *Centurion Air*, 420 F.3d at 1151; *see also Burger King Corp. v. Weaver*, 169 F.3d 1310, 1316 (11th Cir. 1999) ("[A]n action for breach of the implied covenant of good faith cannot be maintained [under Florida law] in the absence of breach of an express contract provision."). "To allege a breach of the implied covenant, the party must demonstrate a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence; but, rather by a conscious and deliberate act, which unfairly frustrates the agreed common purpose and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement." *Shibata v. Lim*, 133 F. Supp. 2d 1311,

6

1319 (M.D. Fla. 2000) (citing *Cox v. CSX Intermodal, Inc.*, 732 So. 2d 1092, 1097–98 (Fla. 1st DCA 1999)).

In their Amended Complaint, Plaintiffs allege "Wells Fargo" — referring collectively to both WFI and Wells Fargo Bank — is a party to the mortgage contracts and breached the duty of good faith and fair dealing under those contracts. (Am. Compl. ¶¶ 72–75). Although, as WFI points out, Plaintiffs initially state that Wells Fargo Bank is the successor in interest and/or assign of Wachovia as to all of Wachovia's home mortgages (*see* WFI Reply [ECF No. 71] (citing Am. Compl. ¶ 4)), Plaintiffs later indicate that *both* WFI and Wells Fargo are successors in interest to Wachovia as related to these mortgages (*see* Am. Compl. ¶¶ 38, 45). Therefore, taking Plaintiffs' allegations as true, WFI is a party to the mortgage contract. Consequently, WFI's argument to the contrary fails at this motion-to-dismiss stage in litigation. Admittedly, Plaintiffs seem to indicate they are not entirely sure that both Wells Fargo Defendants are actually parties to the contracts. (*See* WF Resp. 8). Nonetheless, the Court presumes Plaintiffs' allegations are based on information and belief, rather than mere conjecture as to which entity (or entities) is a party to the mortgage contracts. Thus, it is inappropriate to resolve the factual dispute over whether WFI is actually a party to the mortgage contracts at this stage. Accordingly, Count I may proceed.

### B. Violation of RESPA (Count II)

Section 2605(m) of the Real Estate Settlement and Procedure Act ("RESPA"), 12 U.S.C. §§ 2601, *et seq.*, provides that "[a]ll charges . . . related to force-placed insurance imposed on the borrower by or through the services shall be bona fide and reasonable." 12 U.S.C. § 2605(m). In Count II, Plaintiffs allege that Wells Fargo Bank and WFI violated section 2605(m) because the

Case No. 11-21233-CIV-ALTONAGA/Simonton

charges related to the force-placed insurance were not "bona fide and reasonable." (Am. Compl. ¶¶ 77–84) (quoting RESPA § 2605(m)).

WFI maintains this claim must be dismissed because "the law underlying [Plaintiffs'] claim, including the '*bona fide* and reasonable' requirement, is not yet in effect." (WF Mot. 7) (emphasis in original). Specifically, WFI contends that the statutory provisions supporting Count II "do not become effective until after the newly created Bureau of Consumer Financial Protection finalizes its implementing regulations, which will not occur for some eighteen months after the July 21, 2011 'designated transfer date.'" (*Id.*). In response, Plaintiffs assert section 2605(m) took effect on July 22, 2010 — "several months before a new insurance policy was force-placed on Plaintiff Ray Williams's property and within days of the date on which a new policy was purchased for the Juarez Plaintiffs." (WF Resp. 9). The propriety of this claim turns on when section 2605(m) became effective; if that provision became effective after the force-placed insurance was purchased for Plaintiffs' properties, then the claim must fail as WFI cannot be held liable for acts proscribed by a statute that was not in effect at the time those acts were taken.

Sections 2605(k)–(m) of RESPA were enacted on July 21, 2010 by section 1463 of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 ("Dodd-Frank Act" or "Act"). *See* Dodd-Frank, Pub. L. No. 111-203, 124 Stat. 1376 (2010), at § 1463. Plaintiffs contend section 4 of the Dodd-Frank Act, which is titled "Effective Date," governs when the amendments enacted by section 1463 — including the "bona fide and reasonable" requirement at issue here — are to become effective. Section 4 states:

> Except as otherwise specifically provided in this Act or the amendments made by this Act, this Act and such amendments shall take effect 1 day after the date of enactment

8

Case No. 11-21233-CIV-ALTONAGA/Simonton

of this Act.

Dodd-Frank Act § 4.  Plaintiffs maintain there is no other effective date in the Act that is applicable
to section 1463, and as a result, the provisions of section 1463 — including the enactment of
subsections 2605(k)–(m) of RESPA — became effective on July 22, 2010 (one day after the
enactment of the Dodd-Frank Act).  (*See* WF Resp. 9–11).

Conversely, WFI contends section 1400(c) of the Act sets forth a different effective date
applicable to section 1463.  (*See* WF Mot. 7–8).  Both sections 1400(c) and 1463 are contained with
Title XIV of the Act, entitled "Mortgage Reform and Anti-Predatory Lending Act."  Dodd-Frank
Act, Title XIV.  Section 1400, the first section under Title XIV, states:

> (c) Regulations; Effective Date.--
>
>> (1) Regulations.--The regulations required to be prescribed under this title or
>> the amendments made by this title shall–
>>
>>> (A) be prescribed in final form before the end of the 18-month period
>>> beginning on the designated transfer date; and
>>>
>>> (B) take effect not later than 12 months after the date of issuance of
>>> the regulations in final form.
>>
>> (2) Effective date established by rule.--Except as provided in paragraph (3),
>> a section, or provision thereof, of this title shall take effect on the date on
>> which the final regulations implementing such section, or provision, take
>> effect.
>>
>> (3) Effective date.--A section of this title for which regulations have not been
>> issued on the date that is 18 months after the designated transfer date[4] shall
>> take effect on such date.

*Id.* § 1400(c).  WFI contends that according to section 1400(c), section 2605(m) of RESPA has not

---

[4]  "Designated transfer date" is defined in Section 1062 of the Dodd-Frank Act.

yet become effective.  (*See* WF Mot. 7–8).  The Court agrees.

The language of section 1400(c) is clear that any section or provision of Title XIV shall take effect on either the date on which the final regulations implementing such section, or provision, take effect; or, if regulations are not issued for that section, on the date that is 18 months after the designated transfer date.  *See* Dodd-Frank Act §§ 1400(c)(2), (3).  Nonetheless, Plaintiffs maintain 1400(c) does not apply because section 2605(m) — the provision containing the bona fide and reasonable requirement — does not require the implementation of any regulations.  (*See* WF Resp. 9–11).  Plaintiffs suggest that section 1400(c) only applies to those sections which require regulations to be implemented.  (*See id.*).  Plaintiffs' narrow construction of section 1400(c) is misplaced.

The title of section 1400(c) is "Regulations; Effective Date."  Dodd-Frank Act § 1400(c).  Plaintiffs claim this title limits the reading of the section to address only those sections and provisions of Title XIV that require regulations to be implemented.  (*See* WF Resp. 10–11).  However, this interpretation does not comport with the plain language of the title.  Instead, the title indicates that section 1400(c) addresses both regulations *and* effective dates.  In particular, the use of a semicolon in the title, rather than a colon, indicates that "Effective Date" is not used as a subcategory of "Regulations."  This is because a "semicolon stops the forward movement of a statement, whereas a colon marks forward movement."  Bryan A. Garner, *The Oxford Dictionary of Amer. Usage & Style* (New York: Oxford Univ. Press 2000).  Therefore, the semicolon suspends the thought regarding regulations and begins a new thought involving effective dates.  As a result, a plain reading of the title indicates that section 1400(c) addresses both the regulations required to

be implemented under Title XIV and the effective dates for all of the sections under Title XIV, and not, as Plaintiffs contend, only the effective dates of those sections of the Title that call for regulations.

A careful review of the subsections of section 1400(c) supports this reading of the statute. Section 1400(c)(1) addresses when and how regulations should be prescribed when they are required to be implemented by a section within Title XIV of the Dodd-Frank Act. *See* Dodd-Frank Act § 1400(c)(1). Sections 1400(c)(2) and (3) then discuss the effective date of any section or provision contained in Title XIV. Specifically, section 1400(c)(2) addresses the effective date of a section when regulations concerning that section are required to be implemented. *See id.* § 1400(c)(2). In contrast, section 1400(c)(3) sets forth the applicable effective date for a section under Title XIV for which regulations have not been issued. *See id.* § 1400(c)(3). A section that does not require the implementation of regulations would therefore fall within the latter category. Thus, even if section 1463 — which enacted section 2605(m) of RESPA — does not require regulations to be implemented, it still falls within the scope of section 1400(c) and consequently, does not become effective until 18 months after the designated transfer date.

This interpretation of section 1400(c) comports with the understanding of that section in both the U.S. Code Annotated, published by West Publishing, and the United States Code Service, published by Lexis Law Publishing. Both of those annotation services explicitly note that sections 2605(k)–(m) do not become effective until the time prescribed by section 1400(c) of the Dodd-Frank Act. *See* 12 U.S.C.S. § 2605 (cautioning that sections 2605(k)–(m) of RESPA are effective as provided by § 1400(c)); 12 U.S.C.A. § 2605 (noting that the enactment of sections 2605(k)–(m) are

effective pursuant to the terms of § 1400(c) of the Dodd-Frank Act).  Moreover, the Government

Printing Office's official version of the U.S. Code, in a section titled "Effective Date of 2010

Amendment," explicitly states:

> Amendment by section 1463 of Pub. L. 111–203 effective on the date on which final regulations implementing that amendment take effect, or on the date that is 18 months after the designated transfer date if such regulations have not been issued by that date, see section 1400(c) of Pub. L. 111–203, set out as a note under section 1601 of Title 15, Commerce and Trade.

12 U.S.C. § 2605 available at: http://www.gpo.gov/fdsys/pkg/USCODE-2010-title12/

pdf/USCODE-2010-title12-chap27-sec2605.pdf.

Because RESPA section 2605(m) was not effective prior to the issuance of the force-placed

insurance policies on Plaintiffs' property, Count II must be dismissed.

### C.  Unconscionability (Count III)

In Count III, Plaintiffs assert the provision in the mortgage contracts "that allows Wells Fargo

to force-place high-cost insurance and charge borrowers the cost of obtaining that insurance and

misrepresents why the cost of force-placed insurance is excessive, is procedurally and substantively

unconscionable."  (Am. Compl. ¶ 87).

"To succeed on an unconscionability claim, [plaintiffs] must demonstrate *both* procedural

and substantive unconscionability." *Bland v. Health Care & Ret. Corp. of Am.*, 927 So. 2d 252, 256

(Fla. 2d DCA 2006) (emphasis in original) (citations omitted).  "Procedural unconscionability relates

to the manner in which a contract is made and involves consideration of issues such as the bargaining

power of the parties and their ability to know and understand the disputed contract terms." *Id.*

"Substantive unconscionability . . . requires an assessment of whether the contract terms are 'so

Case No. 11-21233-CIV-ALTONAGA/Simonton

outrageously unfair' as 'to shock the judicial conscience.'" *Id.* (quoting *Gainesville Health Care Ctr., Inc. v. Weston*, 857 So. 2d 278, 284 (Fla. 1st DCA 2003)).

WFI contends this claim must be dismissed against it for several reasons.  First, WFI maintains it was not a signatory to the mortgage contracts at issue and thus cannot be responsible for any "unconscionable" provisions in those contracts.  (WF Mot. 8–9).  Second, WFI argues that "unconscionability" is not an affirmative cause of action under Florida law, but is merely a defense to the enforcement of a contract.  (*Id.* 9).  Lastly, it suggests that Plaintiffs fail to identify which provisions in their mortgage contracts are unconscionable.  (*See id.*).

As to WFI's first argument, as discussed earlier, the Amended Complaint alleges that WFI is a party to the mortgage contract.  (*See* Part III.A., *supra*).  Although WFI asserts the contrary is true, the Court cannot resolve this factual dispute at the motion-to-dismiss stage of litigation. Accordingly, this argument fails.

With regard to WFI's second argument — that unconscionability is not a cause of action under Florida law — Florida law is somewhat unclear in this regard.  Some Florida courts have recognized a common-law cause of action for unconscionability, at least in the context of condominium lease contracts. *See, e.g.*, *Avila S. Condo. Ass'n v. Kappa Corp.*, 347 So. 2d 599, 605 (Fla. 1977); *Steinhardt v. Rudolph*, 422 So. 2d 884, 890 (Fla. 3d DCA 1982) ("It is now recognized that a cause of action sounding in unconscionability lies against the enforceability of [99-year condominium] leases.").  Other courts seem to indicate that unconscionability is generally a defense to the enforcement of a contract under Florida law rather than an affirmative cause of action. *See, e.g., In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302, 1318 (S.D. Fla. 2010) (noting

Case No. 11-21233-CIV-ALTONAGA/Simonton

"ordinarily, unconscionability is properly asserted as a defense to a contract rather than an affirmative cause of action," but allowing claim to proceed to extent it sought declaratory judgment); *see also Barakat v. Broward Cnty. Hous. Auth.*, 771 So. 2d 1193, 1194 (Fla. 4th DCA 2000) ("Unconscionability is an affirmative defense which must be raised by proper pleading.").

Nonetheless, what is clear, is that even where courts have recognized a cause of action for unconscionability, they have held that money damages are not recoverable as a remedy for such a claim. *See Cowin Equip. Co., Inc. v. Gen. Motors Corp.*, 734 F.2d 1581, 1582 (11th Cir. 1984) ("[T]he equitable theory of unconscionability has never been utilized to allow for the affirmative recovery of money damages. The Court finds that neither the common law of Florida, nor that of any other state, empowers a court addressing allegations of unconscionability to do more than refuse enforcement of the unconscionable section or sections of the contract so as to avoid an unconscionable result.") (citation omitted); *see also* 8 WILLISTON ON CONTRACTS § 18:17 (4th ed.) (noting that a court that determines a contract is unconscionable is not authorized to award damages; "rather, the court is given the power to refuse to enforce the agreement in its entirety, to delete the unconscionable clause and enforce the remainder of the contract, or to limit the unconscionable clause's application so that an unconscionable result will be avoided.").

In Count III of the Amended Complaint, Plaintiffs seek a judgment requiring Wells Fargo to "refund an amount equal to all hidden profits or other financial benefits previously collected from Plaintiffs." (Am. Compl. ¶ 91). Because the Court cannot grant this relief on an "unconscionability" claim — even if one does exist under Florida law — Count III must be dismissed.

14

Case No. 11-21233-CIV-ALTONAGA/Simonton

**D.  Unjust Enrichment (Count IV)**

In Count IV, Plaintiffs allege QBE and Wells Fargo "received from Plaintiffs and Class Members a benefit in the form of overcharges for force-placed insurance policies which are excessive and unreasonable, and are the result of overcharging and overreaching." (Am. Compl. ¶ 93). They further claim Defendants will be unjustly enriched if allowed to retain this benefit. (*See id.* ¶ 97).

To state a claim for unjust enrichment, a plaintiff must show: "'(1) plaintiff has conferred [a] benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff.'" *Peoples Nat'l Bank of Commerce v. First Union Nat'l Bank of Fla., N.A.*, 667 So. 2d 876, 879 (Fla. 3d DCA 1996) (quoting *Hillman Constr. Corp. v. Wainer*, 636 So. 2d 576, 577 (Fla. 4th DCA 1994)).  "When a defendant has given adequate consideration to someone for the benefit conferred, a claim of unjust enrichment fails." *Baptista v. JP Morgan Chase Bank, N.A.*, 2011 WL 1772657, at *2 n.3 (11th Cir. 2011) (internal citation and quotation marks omitted).  In the Motions, QBE First and WFI contend this claim must be dismissed for several reasons, each of which is discussed in turn.

**1.  Direct Benefit**

QBE First asserts Plaintiffs fail to state a claim for unjust enrichment against it because QBE First did not receive Plaintiffs' premiums.  (*See* QBE Mot. 7).  QBE First maintains that it "merely received a commission from the insurance carrier, here QBE Specialty Insurance, and a tracking fee from Wells Fargo for the services provided to those two entities."  (*Id.*). It contends that the mere

15

receipt of an indirect benefit does not amount to unjust enrichment.  (*See id.*).  Similarly, WFI claims

Plaintiffs "fail[] to adequately allege that Wells Fargo Insurance received any money *directly* from

the Plaintiffs . . . or that Wells Fargo Insurance had any relationship whatsoever with the Plaintiffs,"

and asserts that "[t]hese omissions require dismissal."  (WF Mot. 11) (emphasis in original).  In

response, Plaintiffs maintain that they need not have direct dealings or be in contractual privity with

Defendants in order to bestow a direct benefit on them for purposes of an unjust-enrichment claim.

(*See* QBE Resp. 7; WF Resp. 14).  Plaintiffs are correct.

Although Defendants are correct that the benefit conferred under an unjust-enrichment claim

must be a direct benefit, *see Century Sr. Servs. v. Consumer Health Ben. Ass'n*, 770 F. Supp. 2d

1261, 1267 (S.D. Fla. 2011), the mere fact that there has been no direct contact between a defendant

and the plaintiff does not preclude a finding that the defendant received a direct benefit from that

plaintiff.  *See Romano v. Motorola, Inc.*, No. 07-CIV-60517, 2007 WL 4199781, at *2 (S.D.

Fla.2007) ("Defendant is correct in stating that 'Florida law does not support a cause of action for

unjust enrichment unless the plaintiff can allege that he conferred a direct benefit on the defendant.'

. . . However, Defendant erroneously equates direct *contact* with direct *benefit* in arguing that

"'[b]ecause plaintiff here did not purchase either his phone or his batteries from Motorola, plaintiff

conferred no direct benefit on Motorola.'") (internal citations omitted) (emphasis in original); *Zaki

Kulaibee Establishment v. McFlicker*, No. 08-60296-Civ, 2011 WL 1559791, at *9 (S.D. Fla. Apr.

25, 2011) (no direct contact in the form of contractual relationship required to show direct benefit);

*Stermer v. SCK Solutions, LLC*, No. 08-61751-CIV, 2009 WL 1849955, at *6 (S.D. Fla. June 26,

2009).  *But see W. Coast Life Ins. Co. v. Life Brokerage Partners LLC*, No. 08-80897-CIV, 2009 WL

2957749, at *10–11 (S.D. Fla. Sept. 9, 2009) (allegations that defendant "received compensation for its role in the transactions" was insufficient to establish that plaintiff conferred a benefit on defendant).

In other words, just because the benefit conferred by Plaintiffs on Defendants did not pass directly from Plaintiffs to Defendants — but instead passed through a third party — does not preclude an unjust-enrichment claim. Indeed to hold otherwise would be to undermine the equitable purpose of unjust enrichment claims. *See* 11 FLA. JUR 2d Contracts § 288 ("[I]f someone does enrich himself unjustly to the detriment of another, that person should be required to make restitution of all the benefits received, retained, or appropriated when it appears that to require it would be just and equitable."). It would not serve the principles of justice and equity to preclude an unjust enrichment claim merely because the "benefit" passed through an intermediary before being conferred on a defendant.[5]

In their Amended Complaint, Plaintiffs have sufficiently alleged that a payment arrangement existed between QBE First and those Defendants that did have direct contact with Plaintiffs; likewise, Plaintiffs have adequately alleged that a similar arrangement existed between WFI and those Defendants. (*See* Am. Compl. ¶¶ 5, 7, 23, 25, 26). Plaintiffs allege QBE First and WFI directly benefitted from their wrongful conduct related to the force-placed insurance arrangement. In particular, Plaintiffs claim WFI and QBE First received kickbacks and/or commissions, which were taken directly from the insurance premiums paid by Plaintiffs. (*See id.* ¶¶ 6, 7, 26–28, 96–97).

---

[5] To find otherwise would mean that a company could set up a shell parent company without any funds, funnel money through that shell company, and essentially launder the "benefit," thereby defeating any unjust enrichment claim.

Case No. 11-21233-CIV-ALTONAGA/Simonton

Therefore, although there was no direct contact between them and Plaintiffs, by paying the allegedly excessive premiums, Plaintiffs directly conferred a benefit on QBE First and WFI.

In sum, drawing all reasonable inferences in favor of Plaintiffs, the Court finds these allegations sufficient to show Plaintiffs conferred a direct benefit on QBE First and WFI, and thus dismissal of the claim is unwarranted. Whether a benefit was actually conferred is a factual question that cannot be resolved on a motion to dismiss. *See Sierra Equity Grp., Inc. v. White Oak Equity Partners, LLC*, 650 F. Supp. 2d 1213, 1229 (S.D. Fla. 2009) ("Whether the [defendants] did or did not receive a direct benefit from Plaintiff is a question of fact that cannot be resolved at the motion to dismiss stage in this case.").

### 2.   Plaintiffs' Ability to Avoid Paying the Allegedly Excessive Premiums

Second, both QBE First and WFI contend that even if a direct benefit has been conferred on them by Plaintiffs, the unjust enrichment claim still fails because Plaintiffs could have avoided the allegedly excessive insurance premiums. (*See* WF Mot. 11–12; QBE Mot. 8). They point out that Plaintiffs could have kept the insurance on their properties current, as they were required to do by their mortgage contracts, and note that if Plaintiffs had done so, Plaintiffs would not have been charged premiums for force-placed insurance. (*See* WF Mot. 11; QBE Mot. 8). Essentially, QBE First and WFI's argument is that the unjust-enrichment claim fails because the force-placed insurance process was provided for in the Plaintiffs' mortgage contracts, and Plaintiffs could have avoided that process by keeping their insurance current. This argument fails to persuade.

Plaintiffs do not allege that the force-placed insurance process, in and of itself, supports a claim for unjust enrichment. Instead, Plaintiffs allege that Defendants' manipulation of that process,

18

in order to maximize their profits, supports the unjust-enrichment claim.  (*See* Am. Compl. ¶ 35).

The fact that Plaintiffs, had they maintained insurance coverage on their properties, could have

avoided being subject to this manipulation does not render the claim insufficient, nor would such

an argument serve the principles of equity and justice that the unjust-enrichment claim is intended

to promote.

Furthermore, Defendants' reliance on *Lass v. Bank of America, N.A.*, NO. 11-10570-NMG,

2011 WL 3567280 (D. Mass. Aug. 11, 2011), is misplaced.  In *Lass*, the plaintiff's claims were

premised on the defendant-bank's lack of authority to force-place insurance on the plaintiff's

property and to collect a commission on the purchase of that insurance.  *See id.* at *2.  Specifically,

the plaintiff in that case challenged the bank's authority to force-place insurance coverage *at all*.  *See*

*id.*  Thus, the court found the contract's inclusion of the force-placed insurance provision, combined

with the plaintiff's ability to avoid that process, precluded the plaintiff's claim for unjust enrichment.

*See id.* at *7.  In contrast, Plaintiffs' claim here is premised on abuse and manipulation of the force-

placed insurance process, rather than the mere use of the process.  Unlike in *Lass*, Plaintiffs' claim

is not based on the mere fact that the force-placed premiums were higher than those which Plaintiffs

could have obtained on the market, but that they were *unreasonably* higher as a result of Defendants'

*bad faith* conduct.  Indeed, Plaintiffs make it clear in their Amended Complaint that they "do not

seek to prevent or significantly interfere with Defendants' ability to force place insurance coverage

pursuant to the mortgage contracts.  Rather, Plaintiffs demand that [Defendants] perform their

practices in good faith."  (Am. Compl. ¶ 34).  Consequently, this argument fails to persuade as well.

Case No. 11-21233-CIV-ALTONAGA/Simonton

### 3. Adequate Consideration

Next, QBE First and WFI assert the unjust-enrichment claim fails because Plaintiffs admit they received a benefit for the premiums that were charged, and thus adequate consideration was given for any benefit received. (*See* QBE Mot. 7–8; WF Mot. 12). This argument necessarily fails. The entire crux of Plaintiffs' Amended Complaint is that any consideration they received for the benefit conferred on Defendants was grossly inadequate. They allege the insurance policies were "unreasonably, uncompetitively, and excessively priced" for the sole purpose of maximizing profits and kickbacks to Defendants. (Am. Compl. ¶ 32). Whether the consideration received was in fact adequate is not an appropriate question for the Court to resolve at this stage.

### 4. Mortgage Contracts

Fourth, WFI contends Plaintiffs' unjust-enrichment claim is barred by Plaintiffs' mortgage contracts. (*See* WF Mot. 12). Specifically, WFI argues that the lender-placed insurance and charges related to it are governed by the Plaintiffs' mortgage contract, and therefore Plaintiffs' quasi-contractual claim of unjust enrichment fails as a matter of law. (*See id.* 13).

Florida courts have held that "'a plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter.'" *1021018 Alberta Ltd. v. Netpaying, Inc.*, 8:10-CV-568-T-27MAP, 2011 WL 1103635, at *5 (M.D. Fla. March 24, 2011) (quoting *Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So. 2d 696, 697 (Fla. 1st DCA 2008) (collecting cases)); *see also Zarrella v. Pac. Life Ins. Co.*, 755 F. Supp. 2d 1218, 1227 (S.D. Fla. 2010). However, a party may plead in the alternative for relief under an express contract and for unjust enrichment. *See ThunderWave, Inc. v. Carnival Corp.*, 954 F. Supp. 1562, 1566 (S.D. Fla.

20

Case No. 11-21233-CIV-ALTONAGA/Simonton

1997) (citing *Hazen v. Cobb-Vaughan Motor Co.*, 117 So. 853, 857–58 (Fla. 1928)).  But unjust

enrichment may only be pleaded in the alternative where one of the parties asserts that the contract

governing the dispute is invalid.  *See Zarrella*, 2010 WL 4663296, at *7 (quoting *In re Managed

Care Litig.*, 185 F. Supp. 2d 1310, 1337–38 (S.D. Fla. 2002)).

In its Motion, WFI contends it was not a party to the mortgage contract.  (*See* WF Mot. 7.)

In other words, WFI maintains there is no contract governing *its* relationship with Plaintiffs, and that

any argument to the contrary is baseless.  By doing so, WFI is essentially asserting that, to the extent

the mortgage contract governs the relationship between WFI and Plaintiffs, it is invalid.

Accordingly, WFI's argument that the unjust enrichment claim fails because of the existence of that

contract is unavailing.

### 5. Class Allegations

WFI also argues the claim should be dismissed because "Plaintiffs do not explain how they

intend to establish unjust enrichment damages related to the reasonableness of each putative class

member's insurance premium on a class-wide basis."  (WF Mot. 13.)  In doing so, WFI is essentially

challenging "the class aspects of this litigation, solely on the basis of what is alleged in the complaint

and before plaintiffs are permitted to complete the discovery to which they would otherwise be

entitled on questions relevant to class certification."  *Bryant v. Food Lion, Inc.*, 774 F. Supp. 1484,

1495 (D.S.C. 1991).  WFI, in challenging the class certification at this stage, has "'the burden of

demonstrating from the face of plaintiffs' complaint that it will be impossible to certify the classes

alleged by the plaintiffs regardless of the facts the plaintiffs may be able to prove.'" *Romano*, 2007

WL 4199781, at *2 (quoting *Bryant*, 774 F. Supp. at 1495).  WFI has not demonstrated that

Case No. 11-21233-CIV-ALTONAGA/Simonton

determining class-wide damages under this theory is impossible.

Based on the foregoing, Count IV may proceed.

**E. Tortious Interference with a Business Relationship (Count V)**

In Count V, Plaintiffs claim QBE First tortiously interfered with Plaintiffs' contractual relationship with their loan servicer, Wells Fargo.  (*See* Am. Compl. ¶¶ 100–03).  To state a claim for tortious interference, a plaintiff must show: (1) the existence of a business relationship; (2) that defendant had knowledge of the relationship; (3) the defendant intentionally and unjustifiably interfered with the relationship; and (4) the plaintiff suffered damage as a result. *See Gregg v. U.S. Indus., Inc.*, 887 F.2d 1462, 1473 (11th Cir. 1989); *Tamiami Trail Tours, Inc. v. J.C. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985).  QBE First suggests Plaintiffs have failed to allege facts sufficient to support the third and fourth elements of this claim.  (*See* Mot. 9–12).

In particular, QBE First maintains Plaintiffs have failed to articulate any actions taken by QBE First that could constitute direct or intentional interference with Plaintiffs' business relationship with Wells Fargo, and that they have failed to plead sufficient facts to show QBE First acted with malice or other bad motive.  (*See id.* 9).  Plaintiffs respond that they do present factual allegations regarding actions taken by QBE First that interfered with that relationship, and that they repeatedly allege these actions were taken in bad faith.  (*See* QBE Resp. 14).  Additionally, they argue that a plaintiff is not required to plead malice to state a claim for tortious interference.  (*See id.*).

Accepting the allegations in the Amended Complaint as true, the Court finds Plaintiffs do state a claim for tortious interference.  Plaintiffs repeatedly allege that QBE First acted in bad faith when charging *excessive* and *unwarranted* fees and when paying/receiving *improper* commissions

22

and kickbacks; they claim that by doing so, QBE First interfered with Plaintiffs' contractual relationships with Wells Fargo. (*See* Am. Compl. ¶¶ 25, 26, 102, 103). Plaintiffs claim QBE First was involved in paying kickbacks to Wells Fargo in order to obtain an exclusive arrangement with Wells Fargo whereby borrowers would be charged exorbitant premiums, and a substantial portion of these were then used to pay kickbacks and commissions to the various entities involved. (*See id.* ¶¶ 7, 19, 25, 102, 103). Plaintiffs allege that in doing so, QBE First wrongfully interfered with Plaintiffs' contractual relationship with their loan servicer, Wells Fargo, and as a result, Plaintiffs were damaged in having to pay excessive premiums. (*See id.* ¶ 102, 103). These allegations, viewed in the light most favorable to Plaintiffs, adequately state a claim for tortious interference.

### F. Rule 8(a)

Finally, WFI asserts Plaintiffs fail to meet the pleading requirements of Federal Rule of Civil Procedure 8(a) because they improperly lump Defendants together. (*See* WF Mot. 5). Specifically, WFI takes issue with Plaintiffs' grouping together of Wells Fargo Bank and WFI, and referring to the two collectively as "Wells Fargo." (*Id.*).

Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). "Under this rule, when a complaint alleges that multiple defendants are liable for multiple claims, courts must determine whether the complaint gives adequate notice to each defendant." *Pro Image Installers, Inc. v. Dillon*, No. 3:08cv273/MCR/MD, 2009 WL 112953, at *1 (N.D. Fla. Jan. 15, 2009) (citing *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001)). Although a complaint against multiple defendants is usually read as making the same allegation against each defendant individually, *see Crowe v. Coleman*, 113 F.3d 1536, 1539

(11th Cir. 1997), "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Accordingly, at times, a plaintiff's "grouping" of defendants in a complaint may require a more definite statement. *See Veltmann v. Walpole Pharmacy, Inc.*, 928 F. Supp. 1161, 1164 (M.D. Fla. 1996).

For example, the court in *Veltmann* found a complaint insufficient where it grouped its allegations against *all* named defendants, making it very difficult to determine which defendant committed which act:

> Plaintiffs' Complaint makes general allegations against all of the named defendants. The complaint fails to separate each alleged act by each defendant into individually numbered paragraphs. It is virtually impossible to ascertain from the Complaint which defendant committed which alleged act.
>
> This particular defect in pleading would be enough to grant a motion to dismiss with leave to amend, or, more properly perhaps, grant a motion for more definite statement pursuant to [Rule] 12(e) . . . .

*Id.* Normally, however, "'when multiple defendants are named in a complaint, the allegations can and usually are to be read in such a way that each defendant is having the allegation made about him individually.'" *Duran v. City of Satellite Beach*, No. 6:05-CV-906-PCF-KRS, 2005 WL 2129300, at *6 (M.D. Fla. Sept. 2, 2005) (quoting *Crowe*, 113 F.3d at 1539); *see also Sams v. Prison Health Servs., Inc.*, No. 8:06-cv-862-T-24 MAP, 2007 WL 788365, at *3 (M.D. Fla. Mar. 14, 2007) ("[D]espite Defendants' arguments, the Plaintiff's lumping together categories of Defendants in her allegations is permissible under Rules 8(a) and 12(b)(6)."); *Freshwater v. Shiver*, No. 6:05-CV-756-ORL19DAB, 2005 WL 2077306, at *2 (M.D. Fla. Aug. 29, 2005).

In the Amended Complaint, Plaintiffs group Defendants into two separate groups, the Wells

Fargo Defendants (Wells Fargo Bank and WFI) and the QBE Defendants (QBE First and QBE Specialty Insurance).  (*See generally* Am. Compl.).  The Amended Complaint then identifies which claims are against which group of Defendants.  From these allegations it can be reasonably inferred that both WFI and Wells Fargo Bank were involved in the conduct attributed to "Wells Fargo."  In other words, where claims are asserted against the collective Wells Fargo Defendants, the claims should be read as alleging all acts against both WFI and Wells Fargo Bank individually.  When read in this manner, the allegations provide notice to both WFI and Wells Fargo Bank of the claims against them.  Plaintiffs' grouping together categories of Defendants in their allegations is permissible under Rules 8(a) and 12(b)(6).  *See Sams*, 2007 WL 788365, at *3; *see also Crowe*, 113 F.3d at 1539 (stating that where the complaint alleges claims against multiple defendants in a single count, the allegations can and should be read in such a way that each defendant is having the allegation made about him personally); *In re Polaroid ERISA Litig.*, 362 F. Supp. 2d 461, 471 (S.D.N.Y. 2005) ("Rule 8 does not require Plaintiffs to identify each of the [ ] Defendants by name each time the Complaint makes an allegation that applies equally to all.").  Moreover, the Complaint pleads specific facts regarding the relationship between WFI and Wells Fargo Bank, providing an additional factual basis to aid these Defendants in understanding the allegations asserted against them.  *See In re Polaroid*, 362 F. Supp. 2d at 471 ("The Complaint is sufficient because it pleads specific facts about the relationship between Morgans Management and the other Defendants.").

In sum, this is not a case where *no* distinctions are made between the Defendants; Plaintiffs break the Defendants into two groups.  *See Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001).  Nor is this a "shotgun pleading" where every claim incorporates by reference all previous

Case No. 11-21233-CIV-ALTONAGA/Simonton

allegations and paragraphs. *See, e.g.*, *id.* Reading the Complaint as alleging all claims against "Wells Fargo" to be claims against both WFI and Wells Fargo Bank allows these Defendants to meaningfully respond.

## IV. CONCLUSION

Based on the foregoing, it is

**ORDERED AND ADJUDGED** as follows:

1. The Motions **[ECF Nos. 47, 48]** are **GRANTED in part** and **DENIED in part**.

2. The Motions are **DENIED** with respect to Counts I, IV, and V.

3. The Motions are **GRANTED** with respect to Counts II and III.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 19th day of September, 2011.

_Cecilia M. Altonaga_
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record

26