UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-21233-CIV-ALTONAGA/Simonton

**RAY WILLIAMS,** *et al.*,

       Plaintiffs,

vs.

**WELLS FARGO BANK N.A.,** *et al.*,

       Defendants.
_____/

## ORDER

**THIS CAUSE** came before the Court on Defendant, QBE Specialty Insurance Company's ("QBE Specialty['s]") Motion to Dismiss ("Motion") [ECF No. 52], filed on September 2, 2011. The Motion seeks dismissal of the claims asserted against QBE Specialty in the Amended Complaint [ECF No. 44] filed by Plaintiffs, Ray Williams, Luis Juarez, and Migdaliah Juarez, on behalf of themselves and all others similarly situated ("Plaintiffs"). Plaintiffs filed their Response to the Motion [ECF No. 77] on September 19, 2011, and on September 29, 2011 QBE Specialty filed its Reply [ECF No. 92]. The Court has considered the parties' written submissions and applicable law.

### I. BACKGROUND[1]

This putative class action lawsuit involves "force-placed insurance." (Am. Compl. ¶ 2). Plaintiffs are homeowners whose property insurance policies lapsed, and who were subsequently charged for force-placed insurance. (*See generally* Am. Compl.). Defendant, Wells Fargo Bank, N.A. ("Wells Fargo Bank"), is a national bank registered to do business in the state of Florida and

---

[1] The allegations of Plaintiffs' Amended Complaint are taken as true.

CASE NO. 11-21233-CIV-ALTONAGA

is the successor in interest and/or assign of Wachovia as to all of Wachovia's home mortgages. (*See id.* ¶ 4). Defendant, Wells Fargo Insurance, Inc. ("WFI"), is a division of Wells Fargo Bank, which Plaintiffs claim "exists only to collect kickbacks or commissions related to the force-placed insurance policies." (*Id.* ¶ 34).[2] QBE Specialty is a surplus-line insurance provider doing business in the State of Florida. (*See id.* ¶ 6). Defendant, QBE First Insurance Agency, Inc. ("QBE First"), is a "managing general agent/surplus-line insurance broker" that Plaintiffs claim "exists only to provide kickbacks and/or collect excessive commission related to the force-placed insurance policies." (*Id.* ¶ 7).[3]

**1. General Allegations**

Each mortgage at issue is owned and/or serviced by Wells Fargo and requires borrowers to maintain insurance on their real property. (*See id.* ¶ 17). If a borrower fails to maintain the requisite insurance, the mortgage servicer may forcibly place insurance on the property. (*See id.*). In other words, once an insurance policy lapses, the mortgage servicer can purchase insurance for the home, "force-place" it, and then charge the borrower the full cost of the premium. (*Id.* ¶ 18).

According to Plaintiffs, the premiums charged on the force-placed loans at issue in this case "are not the actual amount that Wells Fargo pays, because a substantial portion of the premiums are refunded to Wells Fargo through various kickbacks and/or unwarranted commissions." (*Id.*). To accomplish the forced placement, Wells Fargo enters into an exclusive arrangement with QBE to be

---

[2] WFI and Wells Fargo Bank are referred to collectively as "Wells Fargo" by Plaintiffs, and thus the Court uses this term as well.

[3] QBE Specialty and QBE First are referred to collectively as "QBE" by Plaintiffs, and thus the Court uses this term as well.

CASE NO. 11-21233-CIV-ALTONAGA

the sole insurance provider for all force-placed policies. (*See id.* ¶ 19). Under this arrangement, QBE has access to and searches Wells Fargo's database to find lapsed insurance policies. (*See id.* ¶ 26). Then, QBE writes to the homeowners to notify them of the force-placed coverage and charges exorbitant rates to Plaintiffs, who have no way of refusing the force-placed charges. (*See id.*). The premiums are well in excess of those which can be obtained in the open market, generally costing at least five to six times — and up to ten times — more than what the borrower was either originally paying or what the borrower could obtain in the open market. (*See id.* ¶¶ 19, 20). Force-placed insurance is also applied retroactively for periods of time in the past where coverage has lapsed. (*See id.* ¶ 31).

Wells Fargo receives commissions or kickbacks from the force-placed insurance companies or insurance brokers once one of the force-placed insurance policies is purchased. (*See id.* ¶ 23). The commission or kickback is paid by QBE to Wells Fargo in order to maintain the preexisting uncompetitive and exclusive relationship, to induce Wells Fargo to purchase excessively-priced force-placed insurance policies, and to cause Wells Fargo not to seek competitive bids in the market. (*See id.* ¶ 25). As a result of this arrangement, Wells Fargo and QBE have reaped significant profits. (*See id.* ¶ 22). Plaintiffs allege these practices constitute bad faith and are unconscionable. (*See id.* ¶ 32).

**2. Plaintiff Ray Williams**

Plaintiff, Ray Williams, "obtained a mortgage from Wachovia Bank, which has a mortgage balance of approximately $85,000" and is serviced by Wells Fargo. (*Id.* ¶ 38). From the inception of the mortgage until October 17, 2010, Mr. Williams maintained, in full force and effect, the

CASE NO. 11-21233-CIV-ALTONAGA

insurance required by the mortgage contract. (*See id.* ¶ 39). On October 17, 2010, however, the insurance policy lapsed. (*See id.*).

Mr. Williams's insurance had lapsed for less than 30 days when, on November 15, 2010, Mr. Williams secured new insurance for the property. (*See id.* ¶ 40). Thereafter, Wells Fargo, "without seeking competitive bids on the open market or attempting to re-establish Mr. Williams's prior insurance," used QBE to obtain "surplus-lines force-placed insurance" for Mr. Williams's property. (*Id.* ¶ 41). On December 27, 2010, Wells Fargo notified Mr. Williams "that it was retroactively force-placing an insurance policy on the property for the approximate 30-day lapsed period and adding the cost of the premium to his mortgage loan." (*Id.* ¶ 42). The cost of the premium totaled approximately $1,743.00 for the 30-day lapsed period, amounting to nearly six times the amount of the monthly premium ordinarily paid by Mr. Williams. (*See id.* ¶ 43).

### 3. Plaintiffs Luis Juarez and Migdaliah Juarez

Plaintiffs, Luis and Migdaliah Juarez, obtained a mortgage from Wachovia Bank secured by a parcel of real property, which was serviced by Wells Fargo. (*See id.* ¶ 45). Mr. and Mrs. Juarez maintained an insurance policy on the property, as required by the mortgage contract; however, the policy lapsed. (*See id.* ¶ 46). Wells Fargo, "without seeking competitive bids on the open market or attempting to re-establish [the Juarezes'] prior insurance," contracted with QBE to obtain "surplus-line, force-placed[] insurance" for Mr. and Mrs. Juarez's property. (*Id.* ¶ 48). On July 16, 2010, Wells Fargo notified the Juarezes that it was force-placing an insurance policy on them for the period of March 3, 2010 to March 3, 2011. (*See id.* ¶ 49). Despite being purchased in July 2010, the insurance policy was backdated over four months to March 3, 2010, notwithstanding the fact that

4

CASE NO. 11-21233-CIV-ALTONAGA

there was no damage to the property or claims arising out of the property for that four-month period. (*See id.* ¶ 50). The cost of the annual premium for that force-placed insurance policy totaled approximately $25,000.00, which is nearly four times the amount now paid by the Juarezes. (*See id.* ¶ 51).

## II. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S. Ct. at 1950 (citing *Twombly*, 550 U.S. at 556). To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556).

When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). A court's analysis of a Rule 12(b)(6) motion "is limited primarily to the face of the complaint and the attachments thereto." *Id.*, 116 F.3d at 1368. The Court may also consider other documents to be part of the pleadings for

CASE NO. 11-21233-CIV-ALTONAGA

purposes of Rule 12(b)(6) where the plaintiff refers to the documents in the complaint and those documents are central to the plaintiff's claim. *Id.* at 1369.

### III.  ANALYSIS

#### A.  Unjust Enrichment (Count IV)

In Count IV, Plaintiffs allege QBE and Wells Fargo "received from Plaintiffs and Class Members a benefit in the form of overcharges for force-placed insurance policies which are excessive and unreasonable, and are the result of overcharging and overreaching." (Am. Compl. ¶ 93). They further claim Defendants will be unjustly enriched if allowed to retain this benefit. (*See id.* ¶ 97).

To state a claim for unjust enrichment, a plaintiff must show: "'(1) plaintiff has conferred [a] benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff.'" *Peoples Nat'l Bank of Commerce v. First Union Nat'l Bank of Fla., N.A.*, 667 So. 2d 876, 879 (Fla. 3d DCA 1996) (quoting *Hillman Constr. Corp. v. Wainer*, 636 So. 2d 576, 577 (Fla. 4th DCA 1994)). "When a defendant has given adequate consideration to someone for the benefit conferred, a claim of unjust enrichment fails." *Baptista v. JP Morgan Chase Bank, N.A.*, 640 F.3d 1194, 1198 n.3 (11th Cir. 2011) (internal citation and quotation marks omitted). In the Motion, QBE Specialty contends this claim must be dismissed for three reasons, each of which is discussed in turn.

##### 1. Adequate Consideration

First, QBE Specialty asserts the unjust-enrichment claim fails because Plaintiffs received a

CASE NO. 11-21233-CIV-ALTONAGA

benefit for the premiums that were charged, and thus adequate consideration was given for any benefit received. (*See* Mot. 7–8). This argument necessarily fails. The entire crux of Plaintiffs' Amended Complaint is that any consideration they received for the benefit conferred on Defendants was grossly inadequate. They allege the insurance policies were "unreasonably, uncompetitively, and excessively priced" for the sole purpose of maximizing profits and kickbacks to Defendants. (Am. Compl. ¶ 32). Whether the consideration received was in fact adequate is not an appropriate question for the Court to resolve at this stage.

### 2. Plaintiffs' Ability to Avoid Paying the Allegedly Excessive Premiums

Second, QBE Specialty contends that the unjust enrichment claim fails because Plaintiffs could have avoided the allegedly excessive insurance premiums. (*See* Mot. 8). It points out that Plaintiffs could have kept the insurance on their properties current, as they were required to do by their mortgage contracts, and notes that if Plaintiffs had done so, Plaintiffs would not have been charged premiums for force-placed insurance. (*See id.*). Essentially, QBE Specialty's argument is that the unjust-enrichment claim fails because Plaintiffs had the ability to avoid the force-placed insurance process by keeping their insurance current. This argument fails to persuade.

Plaintiffs do not allege that the force-placed insurance process, in and of itself, supports a claim for unjust enrichment. Instead, Plaintiffs allege that Defendants' manipulation of that process, in order to maximize their profits, supports the unjust-enrichment claim. (*See* Am. Compl. ¶ 35). In fact, Plaintiffs make it clear in their Amended Complaint that they "do not seek to prevent or significantly interfere with Defendants' ability to force place insurance coverage pursuant to the mortgage contracts. Rather, Plaintiffs demand that [Defendants] perform their practices in good

7

CASE NO. 11-21233-CIV-ALTONAGA

faith." (Am. Compl. ¶ 34). The fact that Plaintiffs, had they maintained insurance coverage on their properties, could have avoided being subject to this manipulation does not render the claim insufficient, nor would such an argument serve the principles of equity and justice that the unjust-enrichment claim is intended to promote.

### 3. Mortgage Contracts

Finally, QBE Specialty contends Plaintiffs' unjust-enrichment claim is barred because Plaintiffs agreed to the force-placement of insurance in their mortgage contracts. (*See* Mot. 7–8). Specifically, QBE Specialty points out that Plaintiffs' mortgage contracts specifically allow for the force-placement of insurance in the event Plaintiffs' voluntary insurance coverage lapses, and that the contracts warned Plaintiffs that the cost of the force-placed premiums would likely be significantly higher than what the borrowers could obtain on their own. (*See id.* 7). Therefore, according to QBE Specialty, Plaintiffs' quasi-contractual claim of unjust enrichment fails as a matter of law. (*See id.* 7–8).

Florida courts have held that "'a plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter.'" *1021018 Alberta Ltd. v. Netpaying, Inc.*, No. 8:10-CV-568-T-27MAP, 2011 WL 1103635, at *5 (M.D. Fla. Mar. 24, 2011) (quoting *Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So. 2d 696, 697 (Fla. 1st DCA 2008) (collecting cases)); *see also Zarrella v. Pac. Life Ins. Co.*, 755 F. Supp. 2d 1218, 1227 (S.D. Fla. 2010). However, a party may plead in the alternative for relief under an express contract and for unjust enrichment. *See ThunderWave, Inc. v. Carnival Corp.*, 954 F. Supp. 1562, 1566 (S.D. Fla. 1997) (citing *Hazen v. Cobb-Vaughan Motor Co.*, 117 So. 853, 857–58 (Fla. 1928)). But unjust

CASE NO. 11-21233-CIV-ALTONAGA

enrichment may only be pleaded in the alternative where one of the parties asserts that the contract governing the dispute is invalid. *See Zarrella*, 2010 WL 4663296, at *7 (quoting *In re Managed Care Litig.*, 185 F. Supp. 2d 1310, 1337–38 (S.D. Fla. 2002)).

In its Motion, QBE Specialty contends it was not a party to the mortgage contract. (*See* Mot. 8). In other words, QBE Specialty maintains there is no contract governing *its* relationship with Plaintiffs, and that any argument to the contrary is baseless. By doing so, QBE Specialty is essentially asserting that, to the extent the mortgage contract governs the relationship between QBE Specialty and Plaintiffs, it is invalid. Accordingly, QBE Specialty's argument that the unjust enrichment claim fails because of the existence of that contract is unavailing.

Based on the foregoing, Count IV may proceed.

**B. Tortious Interference with a Business Relationship (Count V)**

In Count V, Plaintiffs claim QBE Specialty tortiously interfered with Plaintiffs' contractual relationship with their loan servicer, Wells Fargo. (*See* Am. Compl. ¶¶ 100–03). To state a claim for tortious interference, a plaintiff must show: (1) the existence of a business relationship; (2) that defendant had knowledge of the relationship; (3) the defendant intentionally and unjustifiably interfered with the relationship; and (4) the plaintiff suffered damage as a result. *See Gregg v. U.S. Indus., Inc.*, 887 F.2d 1462, 1473 (11th Cir. 1989); *Tamiami Trail Tours, Inc. v. J.C. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985). QBE Specialty suggests Plaintiffs have failed to allege facts sufficient to support the third and fourth elements of this claim. (*See* Mot. 9–12).

In particular, QBE Specialty maintains Plaintiffs have failed to articulate any actions taken by QBE Specialty that could constitute direct or intentional interference with Plaintiffs' business

CASE NO. 11-21233-CIV-ALTONAGA

relationship with Wells Fargo, and that they have failed to plead sufficient facts to show QBE Specialty acted with malice or other bad motive. (*See id.* 9). Plaintiffs respond that they do present factual allegations regarding actions taken by QBE Specialty that interfered with that relationship, and that they repeatedly allege these actions were taken in bad faith. (*See* Resp. 11). Additionally, they argue that a plaintiff is not required to plead malice to state a claim for tortious interference. (*See id.* 11–12).

Accepting the allegations in the Amended Complaint as true, Plaintiffs state a claim for tortious interference. Plaintiffs repeatedly allege that QBE acted in bad faith when charging *excessive* and *unwarranted* fees and when paying/receiving *improper* commissions and kickbacks; they claim that by doing so, QBE interfered with Plaintiffs' contractual relationships with Wells Fargo. (*See* Am. Compl. ¶¶ 25, 26, 102, 103). Plaintiffs claim QBE Specialty was involved in paying kickbacks to Wells Fargo in order to obtain an exclusive arrangement with Wells Fargo whereby borrowers would be charged exorbitant premiums, and a substantial portion of these were then used to pay kickbacks and commissions to the various entities involved. (*See id.* ¶¶ 7, 19, 25, 102, 103). Finally, Plaintiffs allege that in doing so, QBE Specialty wrongfully interfered with Plaintiffs' contractual relationships with their loan servicer, Wells Fargo, and as a result, Plaintiffs were damaged in having to pay excessive premiums. (*See id.* ¶¶ 102, 103).

### C. Rule 8(a)

Lastly, QBE Specialty asserts Plaintiffs' claims fail because they improperly group Defendants together. (*See* Reply 2–4). Specifically, QBE Specialty takes issue with Plaintiffs' "lumping" together of QBE Specialty and QBE First, and referring to the two collectively as "QBE."

(*Id.* 2).

Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). "Under this rule, when a complaint alleges that multiple defendants are liable for multiple claims, courts must determine whether the complaint gives adequate notice to each defendant." *Pro Image Installers, Inc. v. Dillon*, No. 3:08cv273/MCR/MD, 2009 WL 112953, at *1 (N.D. Fla. Jan. 15, 2009) (citing *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001)). Although a complaint against multiple defendants is usually read as making the same allegation against each defendant individually, *see Crowe v. Coleman*, 113 F.3d 1536, 1539 (11th Cir. 1997), "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Accordingly, at times, a plaintiff's "grouping" of defendants in a complaint may require a more definite statement. *See Veltmann v. Walpole Pharmacy, Inc.*, 928 F. Supp. 1161, 1164 (M.D. Fla. 1996).

For example, the court in *Veltmann* found a complaint insufficient where it grouped its allegations against *all* named defendants, making it very difficult to determine which defendant committed which act:

> Plaintiffs' Complaint makes general allegations against all of the named defendants. The complaint fails to separate each alleged act by each defendant into individually numbered paragraphs. It is virtually impossible to ascertain from the Complaint which defendant committed which alleged act.
>
> This particular defect in pleading would be enough to grant a motion to dismiss with leave to amend, or, more properly perhaps, grant a motion for more definite statement pursuant to [Rule] 12(e) . . . .

*Id.* Normally, however, "'when multiple defendants are named in a complaint, the allegations can

and usually are to be read in such a way that each defendant is having the allegation made about him individually.'" *Duran v. City of Satellite Beach*, No. 6:05-CV-906-PCF-KRS, 2005 WL 2129300, at *6 (M.D. Fla. Sept. 2, 2005) (quoting *Crowe*, 113 F.3d at 1539); *see also Sams v. Prison Health Servs., Inc.*, No. 8:06-cv-862-T-24 MAP, 2007 WL 788365, at *3 (M.D. Fla. Mar. 14, 2007) ("[D]espite Defendants' arguments, the Plaintiff's lumping together categories of Defendants in her allegations is permissible under Rules 8(a) and 12(b)(6)."); *Freshwater v. Shiver*, No. 6:05-CV-756-ORL19DAB, 2005 WL 2077306, at *2 (M.D. Fla. Aug. 29, 2005).

In the Amended Complaint, Plaintiffs group Defendants into two separate groups, the Wells Fargo Defendants (Wells Fargo Bank and WFI) and the QBE Defendants (QBE First and QBE Specialty Insurance). (*See generally* Am. Compl.). The Amended Complaint identifies which claims are against which group of Defendants. From these allegations it can be reasonably inferred that both QBE Specialty and QBE First were involved in the conduct attributed to "QBE." In other words, where claims are asserted against the collective QBE Defendants, the claims should be read as alleging all acts against both QBE Specialty and QBE First individually. When read in this manner, the allegations provide notice to both QBE Specialty and QBE First of the claims against them. Plaintiffs' grouping together categories of Defendants in this manner is permissible under Rules 8(a) and 12(b)(6). *See Sams*, 2007 WL 788365, at *3; *see also Crowe*, 113 F.3d at 1539 (stating that where the complaint alleges claims against multiple defendants in a single count, the allegations can and should be read in such a way that each defendant is having the allegation made about him personally); *In re Polaroid ERISA Litig.*, 362 F. Supp. 2d 461, 471 (S.D.N.Y. 2005) ("Rule 8 does not require Plaintiffs to identify each of the [] Defendants by name each time the

CASE NO. 11-21233-CIV-ALTONAGA

Complaint makes an allegation that applies equally to all."). Additionally, the Complaint pleads specific facts regarding the relationship between QBE Specialty and QBE First, providing an additional factual basis to aid these Defendants in understanding the allegations asserted against them. *See In re Polaroid*, 362 F. Supp. 2d at 471 ("The Complaint is sufficient because it pleads specific facts about the relationship between Morgans Management and the other Defendants.").

Moreover, QBE Specialty's repeated assertion that it cannot be held liable for the claims asserted against it because "QBE Specialty's only role in these transactions was to write the [force-placed insurance] policies" (Resp. 3; *see also id.* 5–6), is contradicted by the allegations of the Amended Complaint (*see, e.g.*, Am. Compl. ¶¶ 19, 22, 25). Whether QBE Specialty actually had a more limited role in the scheme than is alleged by Plaintiffs is not an appropriate question for the Court to resolve at this motion-to-dismiss stage.

In sum, this is not a case where *no* distinctions are made between the Defendants; Plaintiffs break the Defendants into two groups. *See Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001). Nor is this a "shotgun pleading" where every claim incorporates by reference all previous allegations and paragraphs. *See, e.g.*, *id.* Reading the Complaint as alleging all claims against "QBE" to be claims against both QBE Specialty and QBE First allows QBE Specialty to meaningfully respond.

## IV. CONCLUSION

Based on the foregoing, it is

**ORDERED AND ADJUDGED** that QBE Specialty's Motion to Dismiss **[ECF No. 52]** is **DENIED**.

CASE NO. 11-21233-CIV-ALTONAGA

**DONE AND ORDERED** in Chambers at Miami, Florida, this 3rd day of October, 2011.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record