### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA

### CASE NO.  11-21233-CIV-ALTONAGA/Simonton

**RAY WILLIAMS,** *et al.*,

     Plaintiffs,

vs.

**WELLS FARGO BANK N.A.**, *et al.*,

     Defendants.

_____/

### <u>ORDER</u>

**THIS CAUSE** came before the Court on Defendant, Wells Fargo Bank, N.A.'s ("Wells Fargo Bank['s]") Motion to Dismiss ("Motion") [ECF No. 60], filed on September 7, 2011.  The Motion seeks dismissal of the claims asserted against Wells Fargo Bank in the Amended Complaint [ECF No. 44] filed by Plaintiffs, Ray Williams, Luis Juarez, and Migdaliah Juarez, on behalf of themselves and all others similarly situated ("Plaintiffs").  Plaintiffs filed their Response to the Motion [ECF No. 89] on September 26, 2011, and on October 6, 2011 Wells Fargo Bank filed its Reply [ECF No. 96].  The Court has considered the parties' written submissions and applicable law.

### I. BACKGROUND[1]

This putative class-action lawsuit involves "force-placed insurance."  (Am. Compl. ¶ 2).  Plaintiffs are homeowners whose property-insurance policies lapsed and who were subsequently charged for force-placed insurance.  (*See generally id.*).  Wells Fargo Bank is a national bank registered to do business in the State of Florida and is the successor in interest and/or assign of

---

[1]  The allegations of Plaintiffs' Complaint are taken as true.

Wachovia as to all of Wachovia's home mortgages.  (*See id.* ¶ 4).  Defendant, Wells Fargo Insurance, Inc. ("WFI"), is a division of Wells Fargo Bank, which Plaintiffs claim "exists only to collect kickbacks or commissions related to the force-placed insurance policies."  (*Id.* ¶ 34).[2] Defendant, QBE Specialty Insurance Co. ("QBE Specialty"), is a surplus-line insurance provider doing business in the State of Florida.  (*See id.* ¶ 6).  Defendant, QBE First Insurance Agency, Inc. ("QBE First"), is a "managing general agent/surplus-line insurance broker" that Plaintiffs claim "exists only to provide kickbacks and/or collect excessive commission related to the force-placed insurance policies."  (*Id.* ¶ 7).[3]

### A.  General Allegations

Each mortgage at issue is owned and/or serviced by Wells Fargo and requires borrowers to maintain insurance on their real property.  (*See id.* ¶ 17).  If a borrower fails to maintain the requisite insurance, the mortgage servicer may forcibly place insurance on the property.  (*See id.*).  In other words, once an insurance policy lapses, the mortgage servicer can purchase insurance for the home, "force-place" it, and then charge the borrower the full cost of the premium.  (*Id.* ¶ 18).

According to Plaintiffs, the premiums charged on the force-placed loans at issue in this case "are not the actual amount that Wells Fargo pays, because a substantial portion of the premiums are refunded to Wells Fargo through various kickbacks and/or unwarranted commissions."  (*Id.*).  To accomplish the forced placement, Wells Fargo enters into an exclusive

---

[2]  WFI and Wells Fargo Bank are referred to collectively as "Wells Fargo" by Plaintiffs, and thus the Court uses this term as well.

[3]  QBE Specialty and QBE First are referred to collectively as "QBE" by Plaintiffs, and thus the Court uses this term as well.

Case No. 11-21233-CIV-ALTONAGA/Simonton

arrangement with QBE to be the sole insurance provider for all force-placed policies. (*See id.* ¶ 19). Under this arrangement, QBE has access to and searches Wells Fargo's database to find lapsed insurance policies. (*See id.* ¶ 26). Then, QBE writes to the homeowners to notify them of the force-placed coverage and charges exorbitant rates to Plaintiffs, who have no way of refusing the force-placed charges. (*See id.*). The premiums are well in excess of those which can be obtained in the open market, generally costing at least five to six times — and up to ten times — more than what the borrower was either originally paying or what the borrower could obtain in the open market. (*See id.* ¶¶ 19, 20). Force-placed insurance is also applied retroactively for periods of time in the past where coverage has lapsed. (*See id.* ¶ 31).

Wells Fargo receives commissions or kickbacks from the force-placed insurance companies or insurance brokers once one of the force-placed insurance policies is purchased. (*See id.* ¶ 23). The commission or kickback is paid by QBE to Wells Fargo in order to maintain the preexisting uncompetitive and exclusive relationship, to induce Wells Fargo to purchase excessively-priced force-placed insurance policies, and to cause Wells Fargo not to seek competitive bids in the market. (*See id.* ¶ 25). As a result of this arrangement, Wells Fargo and QBE have reaped significant profits. (*See id.* ¶ 22). Plaintiffs allege these practices constitute bad faith and are unconscionable. (*See id.* ¶ 32).

### B. Plaintiff Ray Williams

Plaintiff Ray Williams ("Mr. Williams") "obtained a mortgage from Wachovia Bank, which has a mortgage balance of approximately $85,000" and is serviced by Wells Fargo. (*Id.* ¶ 38). From the inception of the mortgage until October 17, 2010, Mr. Williams maintained the

Case No. 11-21233-CIV-ALTONAGA/Simonton

insurance required by the mortgage contract.  (*See id.* ¶ 39).  On October 17, 2010, however, the insurance policy lapsed.  (*See id.*).

Mr. Williams's insurance had lapsed for less than 30 days when, on November 15, 2010, Mr. Williams secured new insurance for the property.  (*See id.* ¶ 40).  Thereafter, Wells Fargo, "without seeking competitive bids on the open market or attempting to re-establish Mr. Williams's prior insurance," used QBE to obtain "surplus-lines force-placed insurance" for Mr. Williams's property.  (*Id.* ¶ 41).  On December 27, 2010, Wells Fargo notified Mr. Williams "that it was retroactively force-placing an insurance policy on the property for the approximate 30-day lapsed period and adding the cost of the premium to his mortgage loan."  (*Id.* ¶ 42).  The cost of the premium totaled approximately $1,743.00 for the 30-day lapsed period, amounting to nearly six times the amount of the monthly premium ordinarily paid by Mr. Williams.  (*See id.* ¶ 43).

C.     **Plaintiffs Luis Juarez and Migdaliah Juarez**

Plaintiffs Luis and Migdaliah Juarez obtained a mortgage from Wachovia Bank secured by a parcel of real property, which was serviced by Wells Fargo.  (*See id.* ¶ 45).  Mr. and Mrs. Juarez maintained an insurance policy on the property, as required by the mortgage contract; however, the policy lapsed.  (*See id.* ¶ 46).  Wells Fargo, "without seeking competitive bids on the open market or attempting to re-establish [the Juarezes'] prior insurance," contracted with QBE to obtain "surplus-line, force-placed[] insurance" for Mr. and Mrs. Juarez's property.  (*Id.* ¶ 48).  On July 16, 2010, Wells Fargo notified the Juarezes that it was force-placing an insurance policy on them for the period of March 3, 2010 to March 3, 2011.  (*See id.* ¶ 49).  Despite being purchased in July 2010, the insurance policy was backdated over four months to March 3, 2010,

4

Case No. 11-21233-CIV-ALTONAGA/Simonton

notwithstanding the fact that there was no damage to the property or claims arising out of the property for that four-month period. (*See id.* ¶ 50). The cost of the annual premium for that force-placed insurance policy totaled approximately $25,000.00, which is nearly four times the amount now paid by the Juarezes. (*See id.* ¶ 51).

## II. ANALYSIS

Wells Fargo Bank raises several arguments in support of its Motion. The Court addresses the arguments in the order in which they have been presented by the parties.

### A.    Rule 12(b)(6)

Wells Fargo Bank contends that the claims asserted against it in the Amended Complaint fail to satisfy the standard under Federal Rule of Civil Procedure 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 129 S. Ct. at 1950 (citing *Twombly*, 550 U.S. at 556). To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 556).

Case No. 11-21233-CIV-ALTONAGA/Simonton

When reviewing a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and take the factual allegations therein as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). A court's analysis of a Rule 12(b)(6) motion "is limited primarily to the face of the complaint and the attachments thereto." *Brooks*, 116 F.3d at 1368. The court may also consider other documents to be part of the pleadings for purposes of Rule 12(b)(6) where the plaintiff refers to the documents in the complaint and those documents are central to the plaintiff's claim. *Id.* at 1369.

### 1.      Breach of the Covenant of Good Faith and Fair Dealing (Count I)

In Count I, Plaintiffs assert a claim of breach of the implied covenant of good faith and fair dealing against Wells Fargo Bank and WFI. (*See* Am. Compl. ¶¶ 68–74). Wells Fargo Bank contends this claim must be dismissed as it relates to Wells Fargo Bank because Plaintiffs fail to indicate whether the claim is brought against Wells Fargo Bank in its role as the *servicer* of Plaintiffs' loans or as the *owner* of the loans. (*See* Mot. 14). Wells Fargo Bank suggests this distinction is "critical" because

> if Plaintiffs are pursuing their claims against Wells Fargo Bank solely in its capacity as the servicer of their loans, the breach of contract claims . . . would require a threshold analysis of agency principals [sic] regarding whether Wells Fargo Bank, as agent of the loan owner, is bound by the implied covenants in the Plaintiffs' mortgages.

(*Id.*).

In their Amended Complaint, Plaintiffs allege "Wells Fargo" — referring collectively to both WFI and Wells Fargo Bank — is a party to the mortgage contracts and breached the duty of good faith and fair dealing under those contracts. (Am. Compl. ¶¶ 72–75). Plaintiffs allege that Wells Fargo Bank is the successor in interest and/or assign of Wachovia as to all of Wachovia's

home mortgages.  (*See id.* ¶ 4).  Whether Wells Fargo Bank is the loan *owner*, *servicer*, or both, is irrelevant at this stage.  Taking Plaintiffs' allegations as true, Wells Fargo is bound by the mortgage contracts, and any argument to the contrary fails at this motion-to-dismiss stage. Plaintiffs' allegations that Wells Fargo Bank, a party to the mortgage contracts, acted in bad faith in contravention of Plaintiffs' reasonable expectations under those contracts, sufficiently allege a claim for breach of the implied covenant.

### 2.      Violation of RESPA (Count II)

In Count II, Plaintiffs claim Wells Fargo Bank violated section 2605 of the Real Estate Settlement and Procedure Act ("RESPA"), 12 U.S.C. §§ 2601, *et seq.*, which provides that "[a]ll charges . . . related to force-placed insurance imposed on the borrower by or through the servicer shall be bona fide and reasonable."  12 U.S.C. § 2605(m).  As the Court noted in the Order of September 19 [ECF No. 76], that section of RESPA is not yet in effect.  (*See* Sept. 19 Order 7–12).  Because RESPA section 2605(m) was not effective prior to the issuance of the force-placed insurance policies on Plaintiffs' property, Count II must be dismissed.[4]

### 3.      Unconscionability (Count III)

In Count III, Plaintiffs assert the provision in the mortgage contracts "that allows Wells Fargo to force-place high-cost insurance and charge borrowers the cost of obtaining that insurance and misrepresents why the cost of force-placed insurance is excessive, is procedurally and substantively unconscionable."  (Am. Compl. ¶ 87).  Wells Fargo Bank maintains this claim must be dismissed for several reasons, one of which is that unconscionability is not a cause of action under Florida law.  That same argument was raised by WFI in its Motion to Dismiss

---

[4]  Plaintiffs appear to concede this claim must be dismissed as they do not respond to Wells Fargo Bank's arguments regarding Count II.

Case No. 11-21233-CIV-ALTONAGA/Simonton

("WFI Motion") [ECF No. 48], and addressed by the Court in the September 19 Order.  The Court has already held that Count III must be dismissed because, even if unconscionability is a cause of action under Florida law, the Court cannot grant the relief sought by Plaintiffs under their unconscionability claim.  (*See* Sept. 19 Order 13–14).  "[E]ven where courts have recognized a cause of action for unconscionability, they have held that money damages are not recoverable as a remedy for such a claim."  (*Id.* 14 (citing *Cowin Equip. Co., Inc. v. Gen. Motors Corp.*, 734 F.2d 1581, 1582 (11th Cir. 1984), and 8 Williston on Contracts § 18:17 (4th ed.)).  Count III seeks a judgment requiring Wells Fargo to "refund an amount equal to all hidden profits or other financial benefits previously collected from Plaintiffs."  (Am. Compl. ¶ 91).  Because the Court cannot grant this relief on an "unconscionability" claim, Count III must be dismissed.

### 4. Unjust Enrichment (Count IV)

In Count IV, Plaintiffs allege QBE and Wells Fargo "received from Plaintiffs and Class Members a benefit in the form of overcharges for force-placed insurance policies which are excessive and unreasonable, and are the result of overcharging and overreaching."  (Am. Compl. ¶ 93).  They further claim Defendants will be unjustly enriched if allowed to retain this benefit.  (*See id.* ¶ 97).  Wells Fargo Bank contends this claim must be dismissed as it relates to Wells Fargo Bank for four reasons.  (*See* Mot. 18–20).

### a. Direct Benefit

First, Wells Fargo Bank maintains the unjust enrichment claim must be dismissed because Plaintiffs fail to allege that Wells Fargo Bank received any money directly from the Plaintiffs.  (*See id.* 18–19).  As the Court explained in the September 19 Order,

just because the benefit conferred by Plaintiffs on Defendants did not pass directly from Plaintiffs to Defendants — but instead passed through a third party — does not preclude an unjust-enrichment claim. Indeed to hold otherwise would be to undermine the equitable purpose of unjust enrichment claims. *See* 11 FLA. JUR. 2d Contracts § 288 ("[I]f someone does enrich himself unjustly to the detriment of another, that person should be required to make restitution of all the benefits received, retained, or appropriated when it appears that to require it would be just and equitable."). It would not serve the principles of justice and equity to preclude an unjust enrichment claim merely because the "benefit" passed through an intermediary before being conferred on a defendant.[5]

_____

[5]    To find otherwise would mean that a company could set up a shell parent company without any funds, funnel money through that shell company, and essentially launder the "benefit," thereby defeating any unjust enrichment claim.

(Sept. 19 Order 17).

Plaintiffs have sufficiently alleged that a payment arrangement existed between Wells Fargo Bank and the Defendants that did have direct contact with Plaintiffs. (*See* Am. Compl. ¶¶ 5, 7, 23, 25, 26). Plaintiffs allege Wells Fargo Bank directly benefitted from its wrongful conduct related to the force-placed insurance arrangement. In particular, Plaintiffs claim Wells Fargo Bank received kickbacks and/or commissions which were taken directly from the insurance premiums paid by Plaintiffs. (*See id.* ¶¶ 6, 7, 26–28, 96–97). Therefore, even if there was no direct contact between Wells Fargo Bank and Plaintiffs, by paying the allegedly excessive premiums, Plaintiffs directly conferred a benefit on Wells Fargo Bank. Drawing all reasonable inferences in favor of Plaintiffs, the Court finds these allegations sufficient to show Plaintiffs conferred a direct benefit on Wells Fargo Bank, and thus dismissal of the claim on this basis is unwarranted.

          **b.**    **Plaintiffs' Ability to Avoid Paying the Allegedly Excessive Premiums**

Second, Wells Fargo Bank contends that even if a direct benefit has been conferred on it

9

by Plaintiffs, the unjust enrichment claim still fails because Plaintiffs could have avoided the allegedly excessive insurance premiums.  (*See* Mot. 19).   Essentially, Wells Fargo Bank's argument is that the unjust-enrichment claim fails because the force-placed insurance process was provided for in the Plaintiffs' mortgage contracts, and Plaintiffs could have avoided that process by keeping their insurance current.  The Court rejected this very same argument in the September 19 Order, explaining:

> Plaintiffs do not allege that the force-placed insurance process, in and of itself, supports a claim for unjust enrichment.  Instead, Plaintiffs allege that Defendants' manipulation of that process, in order to maximize their profits, supports the unjust-enrichment claim.  (*See* Am. Compl. ¶ 35).  The fact that Plaintiffs, had they maintained insurance coverage on their properties, could have avoided being subject to this manipulation does not render the claim insufficient, nor would such an argument serve the principles of equity and justice that the unjust-enrichment claim is intended to promote.

(Sept. 19 Order 18–19).

### c.        Adequate Consideration

Third, Wells Fargo Bank asserts the unjust-enrichment claim fails because Plaintiffs admit they received a benefit for the premiums that were charged, and thus adequate consideration was given for any benefit received.  (*See* Mot. 19–20).  This argument necessarily fails.  The entire crux of Plaintiffs' Amended Complaint is that any consideration they received for the benefit conferred on Defendants was grossly inadequate.  They allege the insurance policies were "unreasonably, uncompetitively, and excessively priced" for the sole purpose of maximizing profits and kickbacks to Defendants.   (Am. Compl. ¶ 32).   Whether the consideration received was in fact adequate is not an appropriate question for the Court to resolve at this stage.

Case No. 11-21233-CIV-ALTONAGA/Simonton

### d.    Mortgage Contracts

Finally, Wells Fargo Bank maintains the unjust-enrichment claim fails because it is barred by Plaintiffs' mortgage contracts.  (*See* Mot. 20).  Essentially, Wells Fargo Bank argues that the lender-placed insurance and charges related to it are governed by the Plaintiffs' mortgage contracts, and therefore Plaintiffs' quasi-contractual claim of unjust enrichment fails as a matter of law.  (*See id.*).

Florida courts have held that "'a plaintiff cannot pursue a quasi-contract claim for unjust enrichment if an express contract exists concerning the same subject matter.'"  *1021018 Alberta Ltd. v. Netpaying, Inc.*, 8:10-CV-568-T-27MAP, 2011 WL 1103635, at *5 (M.D. Fla. Mar. 24, 2011) (quoting *Diamond "S" Dev. Corp. v. Mercantile Bank*, 989 So. 2d 696, 697 (Fla. 1st DCA 2008) (collecting cases)); *see also Zarrella v. Pac. Life Ins. Co.*, 755 F. Supp. 2d 1218, 1227 (S.D. Fla. 2010).  However, a party may plead in the alternative for relief under an express contract and for unjust enrichment.  *See ThunderWave, Inc. v. Carnival Corp.*, 954 F. Supp. 1562, 1566 (S.D. Fla. 1997) (citing *Hazen v. Cobb-Vaughan Motor Co.*, 117 So. 853, 857–58 (Fla. 1928)).  But unjust enrichment may only be pleaded in the alternative where one of the parties asserts that the contract governing the dispute is invalid.  *See Zarrella*, 2010 WL 4663296, at *7 (quoting *In re Managed Care Litig.*, 185 F. Supp. 2d 1310, 1337–38 (S.D. Fla. 2002)).

Wells Fargo Bank contends it may not be a party to the mortgage contracts.  (*See* Mot. 14–15).  In particular, Wells Fargo Bank indicates that it may merely be the *servicer* of the mortgages and thus would be subject to the contracts only under a possible agency theory.  (*See id.*).  In other words, Wells Fargo Bank suggests there may not be contracts governing *its*

11

relationship with Plaintiffs.  By doing so, Wells Fargo Bank is essentially asserting that, to the

extent the mortgage contracts govern the relationship between Wells Fargo Bank and Plaintiffs,

they may be invalid.  Accordingly, Wells Fargo Bank's argument that the unjust enrichment

claim fails because of the existence of the contracts is unavailing.

### B.     Federal Preemption in the Context of National Banks[5]

Wells Fargo Bank contends Plaintiffs' state law claims for unconscionability, breach of

the implied covenant of good faith and fair dealing, and unjust enrichment are preempted by the

National Bank Act ("NBA").[6]    Because the Court has already determined that the

unconscionability claim must be dismissed (*see* Part A.3, *supra*), it only addresses Wells Fargo

Bank's preemption argument with respect to the latter two claims.

National banks are chartered by the federal government pursuant to the NBA, and are

regulated by the Office of the Comptroller of the Currency ("OCC").  *See* 12 U.S.C. §§ 1, *et seq.*

The NBA grants national banks "all such incidental powers as shall be necessary to carry on the

---

[5]  Although there are three categories of preemption, express preemption, field preemption, and conflict preemption, Wells Fargo's Motion only addresses conflict preemption. (*See* Mot. 5).  "Conflict preemption occurs either when it is physically impossible to comply with both the federal and the state law or when the state law stands as an obstacle to the objective of the federal law." *Fla. State Conf. of the NAACP v. Browning*, 522 F.3d 1153, 1167 (11th Cir. 2008).  As with express and field preemption, "conflict preemption will not be found unless it is the clear intent and purpose of Congress." *Video Trax, Inc. v. NationsBank, N.A.*, 33 F. Supp. 2d 1041, 1048 (S.D. Fla. 1998) (citing *CSX Transportation, Inc. v. Easterwood*, 507 U.S. 658, 664 (1993)).

[6]  Title X of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010 ("Dodd-Frank Act"), Pub. L. No. 111-203, 124 Stat. 1376 (2010), modified the regulations governing preemption under the NBA.  *See id.* §§ 1041–48.  However, that portion of the Dodd-Frank Act did not become effective until July 21, 2011.  *See* Dodd-Frank Act § 1048 (making the preemption amendment effective on the "designated transfer date"); 75 Fed. Reg. 57252 (Sept. 20, 2010) (establishing the designated transfer date as July 21, 2011).  Additionally, Title X of the Dodd-Frank Act calls for prospective application of the amendments made thereunder.  *See* Dodd-Frank Act § 1043.  The claims involved in the present action arose prior to July 21, 2011; accordingly, they are analyzed under the preemption rules in effect prior to the changes imposed by the Dodd-Frank Act.

business of banking." 12 U.S.C. § 24. Congress has authorized the OCC to oversee the operations of national banks and to define these "incidental powers." *NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 256 (1995); *see also* 12 U.S.C. § 93a.

"To insure that national banks can carry out the business of banking without the impairment of inconsistent or intrusive state laws, courts have 'repeatedly made clear that federal control shields national banking from unduly burdensome and duplicative state regulation.'" *In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302, 1311 (S.D. Fla. 2010) ("*In re Checking I*") (quoting *Watters v. Wachovia Bank*, 550 U.S. 1, 11 (2007)). In fact, although there is generally a presumption against preemption, "the regulation of national banks is one area where the opposite holds true." *Baptista v. JP Morgan Chase Bank N.A.*, No. 6:10-cv-139-Orl-22DAB, 2010 WL 2342436, at *3 (M.D. Fla. June 4, 2010) ("*Baptista I*").

Consequently, the Supreme Court has consistently upheld the use of the federal preemption doctrine to shield the banking activities of national banks from the application of state law. *See, e.g., Barnett Bank of Marion Cnty., N.A. v. Nelson*, 517 U.S. 25, 32 (1996); *Franklin Nat'l Bank of Franklin Square v. New York*, 347 U.S. 373, 376–79 (1954); *Watters*, 550 U.S. at 11. For example, in *Barnett Bank*, the Court held that a federal law allowing national banks to "act as the agent for any fire, life, or other insurance company" preempted a state law outlawing banks from engaging in insurance activities. *Barnett Bank*, 517 U.S. at 28 (quoting 12 U.S.C. § 92). Similarly, the Court in *Franklin National Bank* determined federal statutes which authorize national banks to receive savings deposits preempted New York state legislation that prohibited national banks from using the word "saving" or "savings" in their advertising or business. *Franklin Nat'l Bank*, 347 U.S. at 376–79. The Court held that because advertising is

Case No. 11-21233-CIV-ALTONAGA/Simonton

one of the incidental powers necessary to carry on the business of banking, the government cannot allow the banks to receive savings deposits without permitting them to advertise the same. *See id.*

Likewise, in *Watters*, the Court concluded that a national bank's mortgage business, even when conducted by a subsidiary of that bank rather than the bank itself, cannot be subject to state mortgage lending requirements such as registration, inspection and enforcement regimes. *Watters*, 550 U.S. at 6–8. The Court explained that "[s]tates are permitted to regulate the activities of national banks where doing so does not prevent or significantly interfere with the national bank's or the national bank regulator's exercise of its powers. But when state prescriptions significantly impair the exercise of authority, enumerated or incidental under the NBA, the State's regulations must give way." *Id.* at 12.

The aforementioned cases each addressed state laws that were specifically targeted at national banks. In contrast, "state laws of general applicability . . . have been found not to be preempted." *In re Checking I*, 694 F. Supp. 2d at 1311–12 (citing *Baldanzi v. WFC Holdings Corp.*, No. 07 Civ. 9551(LTS)(GWG), 2008 WL 4924987, at *2 (S.D.N.Y. Nov. 14, 2008) ("In contrast to findings of federal preemption in cases involving specific state regulations that conflict with the NBA, causes of action sounding in contract, consumer protection statutes and tort have repeatedly been found by federal courts not to be preempted.")); *see also Cuomo v. Clearing House Ass'n, L.L.C.*, 129 S. Ct. 2710 (2009). The general rule is that states may regulate the activities of national banks so long as they do not prevent or significantly interfere with the exercise of the banks' authority. *See Barnett Bank*, 517 U.S. at 33.

14

As the Ninth Circuit emphasized when examining the NBA's preemptive effect in the context of mortgage-related lending, "[s]tate laws of general application, which merely require all businesses (including national banks) to refrain from fraudulent, unfair, or illegal behavior, do not necessarily impair a bank's ability to exercise its real estate lending powers." *Martinez v. Wells Fargo Home Mortg., Inc.*, 598 F.3d 549, 555 (9th Cir. 2010). This is because "[s]uch laws are not designed to regulate real estate lending, nor do they have a disproportionate or other substantial effect on lending." *Id.* The *Martinez* court noted that the OCC itself has issued an advisory letter cautioning banks that they may be subject to laws that prohibit unfair or deceptive acts or practices. *Id.* (citing OCC Advisory Letter, Guidance on Unfair or Deceptive Acts or Practices, AL 2002-3, 2002 WL 521380, at *2, *7 n.2 (Mar. 22, 2002)).

This is consistent with the OCC's regulations concerning the applicability of state law to national banks' real estate lending activities. In particular, 12 C.F.R. § 34.4 provides:

> (b) State laws on the following subjects are not inconsistent with the real estate lending powers of national banks and apply to national banks to the extent that they only incidentally affect the exercise of national banks' real estate lending powers:
>
>> (1) Contracts;
>>
>> (2) Torts; . . . .

12 C.F.R. § 34.4.

In the instant case, Wells Fargo Bank contends Counts I and IV are preempted by the NBA and the regulations promulgated thereunder. Contrary to Wells Fargo's assertions, however, the claims asserted by Plaintiffs do not conflict with the NBA or the cited OCC regulations. At most, these laws only *incidentally* affect the exercise of a bank's powers.

Case No. 11-21233-CIV-ALTONAGA/Simonton

Wells Fargo Bank relies on *Schilke v. Wachovia Mortgage, FSB*, 758 F. Supp. 2d 549 (N.D. Ill. 2010), in support of its contention that Plaintiffs' claims are preempted. Nonetheless, the defendant in *Schilke* was a federal savings association, not a national bank. *Id.* That case did not address the preemptive effect of the NBA and OCC regulations; it dealt instead with preemption under the Home Owners Loan Act ("HOLA") and the regulations of the Office of Thrift Supervision ("OTS"). *See id.* at 560 (noting that the preemptive scope of the NBA was not germane to that case). Notably, in comparison to the NBA, HOLA has a much broader preemptive reach because its regulations, unlike those issued under the NBA, state that OTS "occupies the entire field of lending regulation for federal savings associations." 21 C.F.R. § 560.2(a); *see also Davis v. Chase Bank U.S.A., N.A.*, 650 F. Supp. 2d 1073, 1083 (C.D. Cal. 2009) ("OTS preemption is more sweeping because 'OTS occupies the entire field of lending regulation for federal savings associations' in connection with HOLA.") (citing 12 C.F.R. § 560.2(a)); *Agustin v. PNC Fin. Servs. Grp., Inc.*, 707 F. Supp. 2d 1080, 1097 (D. Haw. 2010) ("[M]any courts have cautioned against applying the OTS/HOLA analysis in the OCC context."). In contrast, when analyzing the preemptive effect of the NBA, courts have held that "federal regulation in this field is not so pervasive that we can reasonably infer that Congress left no room for the states to supplement it." *In re Checking I*, 694 F. Supp. 2d at 1313; *see also T.C. Jefferson v. Chase Home Fin.*, No. C 06-6510, 2008 WL 1883484, at *7 (N.D. Cal. Apr. 29, 2008) (noting that the NBA "does not 'preempt the field' of banking"). Indeed, [s]tates . . . have always enforced their general laws against national banks — and have enforced their banking-related laws against national banks for at least 85 years . . . ." *Cuomo v. Clearing House Ass'n, L.L.C.*, 129 S. Ct. 2710, 2720 (2009) (collecting cases).

16

Case No. 11-21233-CIV-ALTONAGA/Simonton

Moreover, the fact that the OCC's regulations have touched on the area of insurance does not mean that any state law affecting national banks' insurance activities is preempted. Wells Fargo Bank points out that OCC regulations have addressed the insurance activities of national banks. (*See* Reply 2–3). It notes the OCC has directed that state laws cannot "prevent or restrict" insurance activities conducted by national banks and their subsidiaries. (*See id.* 2 (citing OCC Interpretive Letter 812)). However, the OCC has emphasized that although "state laws that obstruct, impair, or condition a national bank's ability to fully exercise its powers to conduct activities authorized under Federal law do not apply to national banks," state laws on subjects, including contracts and torts, that "are not inconsistent with the powers of national banks and apply to national banks to the extent that they only incidentally affect the exercise of national bank powers" are applicable to national banks. 12 C.F.R. § 7.4009(b) and (c)(2). The laws at issue here do not seek to prevent or restrict banks' ability to engage in insurance activities. They are not directed at the activities of national banks in any way; instead, they merely incidentally affect the exercise of national banks' insurance activities.

For example, Count I alleges a breach of the implied covenant of good faith and fair dealing. The covenant of good faith and fair dealing is a contract law of general applicability that prohibits one party from taking a conscious or deliberate act that "unfairly frustrates the agreed common purpose and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement." *Shibata v. Lim*, 133 F. Supp. 2d 1311, 1319 (M.D. Fla. 2000). It is not directed at national banks or their activity, nor does it mandate what national banks can or cannot do. In other words, the covenant does not force Wells Fargo Bank to "'set its contracts in a certain way, but rather merely to *adhere* to the contracts it does

17

create.'"  *Trombley v. Bank of Am. Corp.*, 715 F. Supp. 2d 290, 296 (D.R.I. 2010) (quoting

*Davis*, 650 F. Supp. 2d at 1086) (emphasis in original).  The covenant is a law of contract that is

consistent with national banks' lending powers and only incidentally affects the exercise of those

powers.

Indeed, numerous courts have recognized that this type of claim is not preempted by the

NBA.  *See LaCuesta v. Wells Fargo Bank, N.A.*, No. 2:10-cv-0064-KJD-PAL, 2010 WL

3860731, at * 2 (D. Nev. Sept. 27, 2010) (holding that NBA does not preempt a claim for breach

of the duty of good faith and fair dealing); *Trombley*, 715 F. Supp. 2d at 296 (finding that the

covenant of good faith and fair dealing is a contract law of general applicability which is not

preempted by the NBA); *Davis*, 650 F. Supp. 2d at 1086 (holding that contract-based claims

"have at most an incidental effect on the exercise of [a bank's] lending powers"); *Poskin v. TD

Banknorth, N.A.*, 687 F. Supp. 2d 530, 558–59 (W.D. Pa. 2009) (holding that common law

breach of good faith and fair dealing claim is not preempted by the NBA); *Great Western

Resources, L.L.C. v. Bank of Ark., N.A.*, No. 05-CV-5152, 2006 WL 626375, at *3 (W.D. Ark.

Mar. 13, 2006) (holding "that plaintiffs' claims for breach of contract . . . and breach of implied

covenant of good faith are not subject to complete preemption [by the NBA]").

Although Wells Fargo Bank has certain rights under the NBA and OCC regulations, it is

not authorized "to ignore general contract or tort law."  *In re Checking I*, 694 F. Supp. 2d at

1313; *see also Trombley*, 715 F. Supp. 2d at 296.  The covenant of good faith and fair dealing is

a law of general application "that do[es] not vitiate the purposes of the NBA, and banks could

comply with both the NBA, OCC regulations[,] and state laws if they refrained from engaging in

the criticized . . . procedures." *In re Checking I*, 694 F. Supp. 2d at 1313.  Therefore this claim is not preempted by the NBA, and it may proceed.

Similarly, the unjust-enrichment claim in Count II is a "state law[] of general application that do[es] not vitiate the purposes of the NBA." *In re Checking I*, 694 F. Supp. 2d at 1313.  It is not directed at national banks or their activity, nor does it mandate what national banks can or cannot do.  Moreover, Plaintiffs' unjust-enrichment claim does not challenge Wells Fargo Bank's retention of a benefit from Plaintiffs in relation to the force-placed insurance process; instead it focuses on the manner in which Wells Fargo Bank manipulated the force-placed insurance process.  In other words, Plaintiffs' claim is not addressed at Wells Fargo Bank being "enriched" by Plaintiffs, but at it being "*unjustly* enriched."  The claim does not seek to impose requirements on Wells Fargo Bank's conduct; it simply seeks the return of funds unjustly paid to Wells Fargo Bank pursuant to the force-placed insurance scheme.  Courts have held similar claims not to be preempted by the NBA.  *See In re Countrywide Fin. Corp. Mortg. Mktg. & Sales Practices Litig*, 601 F. Supp. 2d 1201, 1223 (S.D. Fla. July 13, 2011) (finding unjust enrichment claim was not preempted by the NBA); *In re Checking II*, 2011 WL 2746171, at *7– 8 (same).

In conclusion, although the NBA allows banks to engage in "insurance activities," these laws of general applicability do not conflict with banks' rights to do so.  The laws do not forbid or significantly impair conduct permitted by federal law.  They do not undermine the supremacy of federal law.  Moreover, notwithstanding Wells Fargo Bank's contentions to the contrary (*see* Reply 5), none of Plaintiffs' claims question Wells Fargo Bank's *ability* to charge fees or premiums related to force-placed insurance or to collect commissions from the force-placing of

Case No. 11-21233-CIV-ALTONAGA/Simonton

insurance.  Plaintiffs only challenge the *manner* in which Wells Fargo Bank manipulated those

charges and the force-placed insurance process in general.  "A desire to limit a bank's authority

to charge a fee is not synonymous with a desire to hold a bank liable for the bad-faith manner in

which" it exercises that authority.  *In re Checking Account Overdraft Litig.*, No. 09-MD-02036,

2011 WL 2746171, at *7 (S.D. Fla. July 13, 2011) ("*In re Checking II*").  The former is not

permitted in light of the NBA's preemptive reach, but the latter is.  *See id.* (citing *Baptista v.*

*JPMorgan Chase Bank, N.A.*, 640 F.3d 1194 (11th Cir. 2011) (*"Baptista II"*)).  In the present

action, Plaintiffs are not challenging the bank's right to impose force-placed insurance policies.

Instead, the issue is whether Wells Fargo has been unjustly enriched by manipulating the force-

placed insurance process so as to obtain kickbacks, and whether by doing so, it has violated its

duty of good faith and fair dealing under the contracts.[7]

---

[7]  Wells Fargo Bank contends this case is analogous to *Martinez v. Wells Fargo Home Mortg.,* *Inc.*, 598 F.2d 549 (9th Cir. 2010).  (*See* Reply 5–6).  In *Martinez*, the court found the plaintiff's claims under California's Unfair Competition Law ("UCL") were preempted by the NBA.  *See id.* at 556–57.  In that case, the plaintiff claimed that an $800 underwriting fee charged by the bank was an excessive overcharge.  *See id.* at 552.  The court held the plaintiff's claim was preempted by OCC regulation 12 C.F.R.  § 7.4002(b)(2), which states that "[t]he establishment of non-interest charges and fees, their amounts, and the method of calculating them are business decisions to be made be each bank . . . ."  The court emphasized that while some claims under the UCL would survive preemption, the claims raised in that case were directly in conflict with OCC regulations.  *See id.* 555–56.

Here, unlike in *Martinez*, Plaintiffs are not merely challenging the imposition of the force-placed premiums or the amounts of those premiums.  Instead, they challenge the manipulation of the force-placed insurance process in general, the payment arrangement between Wells Fargo Bank and the other Defendants, and Wells Fargo Bank's participation in the overall scheme intended to provide illegal kickbacks and commissions to the entities involved. Whereas in *Martinez* the bank simply imposed a fee directly on the plaintiff, here, Wells Fargo Bank is alleged to have colluded with other entities in bad faith in order to develop a scheme whereby the entities could manipulate the force-placed insurance process to their benefit.  Both the unjust-enrichment claim and breach-of-the-implied-covenant claim are aimed at that manipulation of the force-placed insurance process.  Thus, the claims raised by Plaintiffs significantly differ from those raised in *Martinez*. In fact, this case is analogous to *Gutierrez v. Wells Fargo & Co.*, No. C 07-05923 WHA, 2010 WL 1233885 (N.D. Cal. Mar. 26, 2010), which distinguished *Martinez*.  In *Gutierrez*, similar to the present case, the plaintiff's UCL claims challenged Wells Fargo's "manipulation

20

It is clear that enforcement of these state laws would not interfere with "the NBA's purpose of creating a uniform federal regulatory system for national banks." *Mwantembe v. TD Bank, N.A.*, 669 F. Supp. 2d 545, 554 (E.D. Pa. 2009). Because enforcing these state laws will not interfere with the national banks' operation or otherwise unduly burden or impair their ability to engage in the business of lending or insurance-related activities, there is no basis for invoking federal preemption. Accordingly, the motion to dismiss on this basis must be denied.

### C.    Rule 8(a)

Wells Fargo Bank also asserts Plaintiffs fail to meet the pleading requirements of Federal Rule of Civil Procedure 8(a) because they improperly lump Defendants together. (*See* Mot. 13–14). Specifically, Wells Fargo Bank takes issue with Plaintiffs' grouping together of Wells Fargo Bank and WFI, and referring to the two collectively as "Wells Fargo." (*Id.*).

Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). "Under this rule, when a complaint alleges that multiple defendants are liable for multiple claims, courts must determine whether the complaint gives adequate notice to each defendant." *Pro Image Installers, Inc. v. Dillon*, No. 3:08cv273/MCR/MD, 2009 WL 112953, at *1 (N.D. Fla. Jan. 15, 2009) (citing *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001)). Although a complaint against multiple defendants is usually read as making the same allegation against each defendant individually, *see Crowe v. Coleman*, 113 F.3d 1536, 1539 (11th Cir. 1997), "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Accordingly, at times, a plaintiff's "grouping" of defendants in a complaint may require a more definite

---

of customer transactions" in order to maximize fees, and therefore the court held they were not preempted by the NBA. *Id.* at *2.

Case No. 11-21233-CIV-ALTONAGA/Simonton

statement.  *See Veltmann v. Walpole Pharmacy, Inc.*, 928 F. Supp. 1161, 1164 (M.D. Fla. 1996).

For example, the court in *Veltmann* found a complaint insufficient where it grouped its allegations against *all* named defendants, making it very difficult to determine which defendant committed which act:

> Plaintiffs' Complaint makes general allegations against all of the named defendants.  The complaint fails to separate each alleged act by each defendant into individually numbered paragraphs.  It is virtually impossible to ascertain from the Complaint which defendant committed which alleged act.
>
> This particular defect in pleading would be enough to grant a motion to dismiss with leave to amend, or, more properly perhaps, grant a motion for more definite statement pursuant to [Rule] 12(e) . . . .

*Id.*  Normally, however, "'when multiple defendants are named in a complaint, the allegations can and usually are to be read in such a way that each defendant is having the allegation made about him individually.'"  *Duran v. City of Satellite Beach*, No. 6:05-CV-906-PCF-KRS, 2005 WL 2129300, at *6 (M.D. Fla. Sept. 2, 2005) (quoting *Crowe*, 113 F.3d at 1539); *see also Sams v. Prison Health Servs., Inc.*, No. 8:06-cv-862-T-24 MAP, 2007 WL 788365, at *3 (M.D. Fla. Mar. 14, 2007) ("[D]espite Defendants' arguments, the Plaintiff's lumping together categories of Defendants in her allegations is permissible under Rules 8(a) and 12(b)(6)."); *Freshwater v. Shiver*, No. 6:05-CV-756-ORL19DAB, 2005 WL 2077306, at *2 (M.D. Fla. Aug. 29, 2005).

In the Amended Complaint, Plaintiffs group Defendants into two separate groups, the Wells Fargo Defendants (Wells Fargo Bank and WFI) and the QBE Defendants (QBE First and QBE Specialty Insurance).  (*See generally* Am. Compl.).  The Amended Complaint identifies which claims are against which group of Defendants.  From these allegations it can be reasonably inferred that both WFI and Wells Fargo Bank were involved in the conduct attributed to "Wells Fargo."  In other words, where claims are asserted against the collective Wells Fargo

22

Case No. 11-21233-CIV-ALTONAGA/Simonton

Defendants, the claims should be read as alleging all acts against both WFI and Wells Fargo Bank individually. When read in this manner, the allegations provide notice to both WFI and Wells Fargo Bank of the claims against them.

Plaintiffs' grouping together categories of Defendants in their allegations is permissible under Rules 8(a) and 12(b)(6). *See Sams*, 2007 WL 788365, at *3; *see also Crowe*, 113 F.3d at 1539 (stating that where the complaint alleges claims against multiple defendants in a single count, the allegations can and should be read in such a way that each defendant is having the allegation made about him personally); *In re Polaroid ERISA Litig.*, 362 F. Supp. 2d 461, 471 (S.D.N.Y. 2005) ("Rule 8 does not require Plaintiffs to identify each of the [] Defendants by name each time the Complaint makes an allegation that applies equally to all."). Moreover, the Complaint pleads specific facts regarding the relationship between WFI and Wells Fargo Bank, providing an additional factual basis to aid these Defendants in understanding the allegations asserted against them. *See In re Polaroid*, 362 F. Supp. 2d at 471 ("The Complaint is sufficient because it pleads specific facts about the relationship between Morgans Management and the other Defendants.").

In sum, this is not a case where *no* distinctions are made between the Defendants; Plaintiffs break the Defendants into two groups. *See Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001). Nor is this a "shotgun pleading" where every claim incorporates by reference all previous allegations and paragraphs. *See, e.g.*, *id.* Reading the Complaint as alleging all claims against "Wells Fargo" to be claims against both WFI and Wells Fargo Bank allows Wells Fargo Bank to meaningfully respond.

Case No. 11-21233-CIV-ALTONAGA/Simonton

**D.      Jury Demand**

Lastly, Wells Fargo Bank suggests that pursuant to section 24 of their mortgage contract, Luis and Migdaliah Juarez waived their right to a trial by jury in any action arising out of their mortgage.  (*See* Mot. 20).  Consequently, Wells Fargo Bank requests that the Juarezes' demand for a jury trial be stricken.  (*See id.*).  Plaintiffs contend the demand should not be stricken. Specifically, Plaintiffs assert that in a case such as this, where some claims are triable by a jury and others are not, the "most judicious approach" is to use an advisory jury as provided for under Federal Rule of Civil Procedure 39.

Neither party disputes that a party may waive its right to a jury trial by contract.  Here, however, even if the waiver in the Juarezes' mortgage contract is valid — and Plaintiffs do not seem to present any argument suggesting it is not — it is of no avail to Wells Fargo Bank at this point.  The jury waiver is contained in the mortgage contract, and thus was part of a contractual relationship.  As noted earlier, Wells Fargo Bank indicates it may not be a party to the mortgage contract.  In particular, Wells Fargo Bank suggests it may be the *servicer* of the mortgage and thus would be subject to the contract only under a *possible* agency theory.  (*See* Mot. 14–15). Thus, Wells Fargo Bank cannot invoke the jury waiver.  *See Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1166 (9th Cir. 1996) (noting that "a jury waiver is a contractual right and generally may not be invoked by one who is not a party to the contract"); *Hulsey v. West*, 966 F.2d 579, 581 (10th Cir. 1992) ("a jury waiver provision in a contract affects only the rights of the parties to that contract").

Case No. 11-21233-CIV-ALTONAGA/Simonton

## IV. CONCLUSION

Based on the foregoing, it is

**ORDERED AND ADJUDGED** as follows:

1.  The Motion **[ECF No. 60]** is **GRANTED in part** and **DENIED in part**.

2.  The Motion is **GRANTED** with respect to Counts II and III.

3.  The Motion is **DENIED** with respect to Counts I and IV.

4.  The Motion to Strike the jury demand is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 14th day of October, 2011.

_Cecilia M. Altonaga_
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record