**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.  11-21233-CIV-ALTONAGA/SIMONTON**

**RAY WILLIAMS, et al.,**

   **Plaintiffs,**

**v.**

**WELLS FARGO BANK, N.A., et al.,**

   **Defendants.**
_____/

**ORDER ON PLAINTIFFS' EMERGENCY MOTION**
**TO COMPEL THE WELLS FARGO DEFENDANTS**
**TO PRODUCE SIX CATEGORIES OF DOCUMENTS**

   This matter was before the undersigned Magistrate Judge on October 13, 2011,

for a telephonic hearing regarding Plaintiffs' Emergency Motion to Compel the Wells

Fargo Defendants to Produce Six Categories of Documents (DE # 97).  The Motion is

referred to the undersigned by the Honorable Cecilia M. Altonaga, the District Judge

assigned to the case (DE # 29).  This Order incorporates the oral rulings made by the

undersigned on the record at the hearing on the Motion.  For the reasons stated on the

record during the hearing and as set forth in this Order, the Plaintiffs' Motion is Granted

in part, and Denied in part.

   I.   **BACKGROUND**

   This putative class action lawsuit centers around "force-placed insurance"

policies issued by QBE Insurance Corporation, or its subdivisions, ("QBE") to certain

homeowners whose mortgages are held by Wells Fargo Bank.  The crux of the Plaintiffs'

allegations is that the homeowners have been charged excessive insurance rates for the

forced-place insurance as part of a "kickback" scheme between Wells Fargo and QBE.[1]

The Plaintiffs filed the instant Motion seeking to compel the production of documents and information relevant to issues of class certification.  Specifically, according to the Motion, on August 9, 2011, the Plaintiffs propounded their First Request for Production and First Five Interrogatories to the Wells Fargo Defendants ("Defendants") which, as of the date of filing of the Motion, had not been sufficiently responded to by the Defendants.[2]  Plaintiffs contended that, although the Defendants had produced a handful of documents, the Defendants objected to answering all of the Plaintiffs' Interrogatories.  In addition, the Plaintiffs asserted that Defendant Wells Fargo Insurance had produced a corporate representative for deposition who lacked basic knowledge of the designated topics relevant to force-placed insurance.

Thus, because the Plaintiffs' expert summaries were due on Monday, October 17, 2011, in an effort to expeditiously obtain the information needed by the Plaintiffs' expert in order to prepare the summary, the Plaintiffs sought immediate production of six specific categories of documents identified in the Motion.  According to the Plaintiffs, the six categories of documents represented a small subset of the documents and information originally requested by the Plaintiffs in their first discovery requests.

---

[1] The facts of this case are set forth more fully in the Court's October 3, 2011 Order on the Defendants' Motion to Dismiss (DE # 93) and thus are not repeated in this Order.

[2] The Wells Fargo Defendants are comprised of Wells Fargo Bank, N.A., and Wells Fargo Insurance, Inc., each of which were named as separate Defendants in this action.

Thus, at the hearing, the undersigned heard arguments regarding the six categories of documents requested by the Plaintiffs as follows:

1.     <u>A copy of the rate and rule manuals used by Assurant for only LPI and REO insurance for Wells Fargo in FL, TX, LA, and CA</u>

At the hearing, the Plaintiffs explained that only two companies, QBE and Assurant, write lender-placed insurance ("LPI") for Wells Fargo.  The Plaintiffs therefore contended that the information sought in this category was necessary to ascertain whether QBE's lender-placed insurance rates were reasonable in comparison to Assurant's rates.

In response, the Defendants argued that the information sought by the Plaintiffs might include proprietary information that the Defendants had obtained from Assurant, and therefore the Defendants were bound to keep such information confidential pursuant to the contract between the Defendants and Assurant.  The Defendants admitted, however, that they never sought to ascertain either Assurant's position on producing the requested materials, or permission to disclose such documents.  In addition, the Defendants contended that prior to the Plaintiffs' Emergency Motion, which specifically indicated that the Plaintiffs were seeking documents related to Assurant, the Defendants did not read the Plaintiffs' discovery requests as seeking information regarding Assurant's rate and rule manuals.

At the hearing, the Court determined that the information contained in this category of documents was relevant to the putative class action and was included in the discovery requested in the Plaintiffs' August discovery requests.  Therefore, the Court ordered the Defendants to produce the documents identified in this category of documents by noon on October 14, 2011.  However, the Court limited the use of those

3

documents to the terms of the Confidentiality Order previously signed by the Parties in this action.  Further, the Court ordered that, to the extent that Assurant sought to keep the rate and rules manuals from being disclosed, Assurant could seek relief from the Court on an emergency basis by noon on October 14, 2011.

2.     <u>Copy of quarterly and annual performance or experience reports from Assurant regarding Hazard Outsourcing/Lender Placed Insurance/REO property insurance</u>

As to the second category of documents, the Wells Fargo Defendants again argued that the documents were confidential Assurant documents and not those of Wells Fargo.  In addition, the Defendants asserted that the documents were not relevant. The Plaintiffs asserted that the information sought in this category had previously been requested in Requests for Production Nos. 3, 4 and 5.  Also, Plaintiffs argued that the requested information was relevant to this action because the information could establish the standard business practices related to lender-placed insurance and reasonable rates charged for that insurance by Assurant compared to the rates charged by QBE insurance.

The Court found that these documents were also relevant and ordered them produced by noon on October 14, 2011, with the use of those documents being limited as set forth in the Confidentiality Agreement.  The Court further provided that, like the documents requested in category 1, if Assurant believed that the production would violate its rights, Assurant could seek relief from the Court.

3.     <u>Documents showing the amounts charged Wells Fargo by QBE for the LPI placed on named plaintiffs</u>

At the hearing, the Plaintiff asserted that this category of documents was requested in Requests for Production 3, 9, 13, and Interrogatories 3 and 4.

4

Counsel for the Wells Fargo Defendants indicated that Wells Fargo had collected documents responsive to this category and had forwarded those documents to QBE for review.  Counsel for QBE, who also attended the hearing telephonically, confirmed that QBE had recently received the responsive documents from the Wells Fargo Defendants for QBE's review prior to the documents being produced to the Plaintiffs.  Counsel for QBE indicated that QBE was in the process of reviewing the documents.

Thus, since there was no objection made at the hearing that the documents were not relevant or otherwise discoverable, the Court ordered the Defendants to produce the documents by noon on October 14, 2011.

4.   Monthly reports of Hazard Outsourcing activities and charges (invoices) sent by QBE to WF showing charges to Wells Fargo by loan number

The Defendants contended that this category of documents also consisted of QBE documents and thus the Wells Fargo Defendants were waiting for approval from QBE as to whether the documents could be produced to the Plaintiffs.

Again, because the documents are relevant to this action and there was no objection at the hearing to the production of this category of documents, the Court ordered the Defendants to produce the documents by noon on October 14, 2011.  In addition, the Court noted that although QBE had just received the documents from the Wells Fargo Defendants for review, QBE was on notice and aware of the Plaintiffs' request for this category of documents much earlier when QBE was served with the Defendants' responses to the Plaintiffs' discovery requests.

5.   Monthly reports of amounts added to borrowers' loans for LPI by Wells Fargo and amounts collected for LPI from borrowers

At the hearing, the Wells Fargo Defendants contended that a report directly responsive to this category of documents did not exist, but indicated that the Wells

Fargo Defendants had already produced higher level management reports with comparable information.  In addition, the Defendants stated that if the Plaintiffs wanted a report reflecting borrowers' information, the information for that report would come from QBE.

In response, the Plaintiffs confirmed that they had received the management reports from the Wells Fargo Defendants the evening before the hearing.  Counsel for the Plaintiffs therefore agreed to review the documents that were produced and advise the Defendants whether those documents sufficiently provided the information requested in this category of documents.

6.    **A list of all loans for which Wells Fargo paid a net premium greater than zero to QBE for Hazard Outsourcing Services with following information. Report each product as a separate line or record**

At the hearing, Counsel for the Wells Fargo Defendants asserted that they did not have the requested information.  Specifically, the Wells Fargo Defendants contended that although portions of the requested information was in Wells Fargo's possession, other responsive information would be in QBE's possession.  The Wells Fargo Defendants contended that this was because portions of Wells Fargo's insurance and escrow business had been outsourced to QBE.  In addition the Defendants contended that the information requested might consist, of at least, 500,000 names.

Counsel for the Plaintiffs contended that Plaintiffs' expert indicated that the data requested in this category should be maintained by Wells Fargo as required by certain regulations.  In addition, the Plaintiffs indicated that they wanted whatever information the Wells Fargo Defendants had in their possession that was reasonably accessible, and did not seek to obtain the names or identity of those persons who held the loans. Plaintiffs' Counsel also contended that the term "net premium greater than zero" is an

6

insurance industry term and refers to information, which according to the Plaintiffs'

expert, would be maintained and continuously reviewed by the Defendants.

Based upon the arguments of counsel, the Court ordered the Wells Fargo

Defendants to provide an affidavit by 5:00 p.m. on October 13, 2011 explaining, in detail,

why the requested information could not be produced to the Plaintiffs.  Following receipt

of such an affidavit, Plaintiffs may seek further relief, if the parties are unable to resolve

the issues related to production of the requested information.

Accordingly, for the reasons stated above and at the hearing on the Plaintiffs'

Emergency Motion, it is hereby

**ORDERED AND ADJUDGED** that the Plaintiffs' Emergency Motion to Compel

the Wells Fargo Defendants to Produce Six Categories of Documents is **GRANTED**  in

part, as stated on the record and in the body of this Order.

**DONE AND ORDERED** in chambers in Miami, Florida, on October 20, 2011.

_Andrea M. Simonton_
**ANDREA M. SIMONTON
UNITED STATES MAGISTRATE JUDGE**

Copies furnished via CM/ECF to:
The Honorable Cecilia Altonaga,
        United States District Judge
All counsel of record