UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:11-CV-21233-SCOLA/BANDSTRA

RAY WILLIAMS, et al.

    Plaintiffs,

v.

WELLS FARGO BANK, N.A., et al.

    Defendants.

_____/

### PLAINTIFFS' SECOND MOTION FOR SANCTIONS AGAINST DEFENDANTS WELLS FARGO BANK N.A. AND WELLS FARGO INSURANCE INC.

Plaintiffs, RAY WILLIAMS and LUIS JUAREZ (hereinafter "Plaintiffs" or the "Named Plaintiffs"), move this Court, pursuant to its inherent authority and Federal Rules of Civil Procedure 16 and 37, to impose sanctions on Defendants Wells Fargo Bank, N.A. ("Wells Fargo Bank") and Wells Fargo Insurance Inc. ("Wells Fargo Insurance") (together "Wells Fargo") for their continued bad faith conduct in discovery during this litigation and state as follows.

### INTRODUCTION

Wells Fargo has acted inappropriately throughout the entire discovery process which compelled this Court to remark: "I have never felt more strongly that a defendant is stonewalling the process and acting in bad faith. . . .I think Wells Fargo is doing everything in its power to keep the plaintiffs from getting sufficient information regarding their forced placed insurance so that they will not be able to have any expert report."  [D.E. 102 at 24].  Wells Fargo, and their counsel have filed false affidavits that were ordered by this Court, have inappropriately objected and withheld discovery, have produced inadequate, Court-ordered, corporate representatives, and now (after seven months of denials) finally produced tape recordings they made and possessed of the Named Plaintiffs about the issues in this case.  Enough is enough.

Despite the strong admonishment by this Court and Plaintiffs' agreement to simply overlook their prior misconduct and drop the First Motion to Compel, believing Wells Fargo's assurance that their discovery misconduct was over, [D.E. 172], clear evidence of Wells Fargo's bad faith conduct has just come to light warranting severe sanctions against Wells Fargo and their counsel.  Plaintiffs just learned that Wells Fargo Bank recorded phone calls from homeowners who wish to complain or ask questions about their force-placed insurance policies and in Wells Fargo's own robot calls made to the homeowners.  Wells Fargo, however, did not admit the existence of or produce any such recordings in response to the Initial Disclosures as well as Plaintiffs' numerous requests for production, which included specific requests for all documents (defined to include recordings) regarding or referencing the Named Plaintiffs and all documents referencing consumer complaints or inquiries.

It was only *after* Plaintiffs' counsel discovered from a non-party, Assurant, that such recordings even existed, and after undersigned counsel specifically demanded any such recordings, that Wells Fargo's attorney suddenly "found" these specific recordings in his law firm's spam filter and produced them to Plaintiffs' counsel.[1]  The recent production of these recordings belies continuous representations by Wells Fargo's attorneys to Plaintiffs' counsel prior to taking each Plaintiff's deposition.  This gamesmanship on the part of Wells Fargo must cease.  Accordingly, Plaintiffs ask this Court to impose whatever sanctions it deems necessary to put an end to Wells Fargo's bad-faith conduct.

---

[1] At this time, Plaintiffs are still in the process of reviewing these numerous recordings.  Many of the calls are Plaintiffs asking specific questions to the alleged representatives of Wells Fargo about their insurance (we have learned in discovery that Wells Fargo contracted out dealing with Plaintiffs to QBE).  Moreover, on several of the recordings the sound is muffled and Plaintiffs are attempting to extract a clearer sound.

CASE NO. 1:11-CV-21233-SCOLA/BANDSTRA

## BACKGROUND

This putative class action against Wells Fargo, QBE Specialty Insurance Co. ("QBE Specialty"), and QBE First Insurance Agency ("QBE First") concerns bad faith practices surrounding the forced-placement of insurance policies with inflated premiums on mortgagors' homes. As alleged in the First Amended Complaint ("FAC"), Defendants enter into exclusive, noncompetitive agreements whereby QBE First and QBE Specialty monitor the active mortgages owned by Wells Fargo Bank for voluntary insurance policies that have lapsed. FAC ¶ 26. Once a lapsed policy is discovered, QBE First and QBE Specialty automatically place one of their exorbitantly priced policies on the homeowner's property with the homeowner paying the inflated premiums. *Id.* ¶¶ 17, 25-28. The premiums charged are up to ten times what the homeowner would have paid had the policies been purchased on a competitive basis on the open market. *Id.* ¶ 20. Kickbacks and commissions are then paid among the Defendants based upon the price of the premium, which incentivizes the Defendants to keep the premiums at these excessive prices.

Wells Fargo's campaign to delay this litigation began almost immediately after Plaintiffs brought this action. The record is replete with their misconduct; a short review will show why sanctions are now necessary.

On August 9, 2011, Plaintiffs propounded their First Request for Production and First Interrogatories to Wells Fargo. Among the documents sought, Plaintiffs requested (1) all documents regarding or referencing the Named Plaintiffs and (2) all documents referencing any consumer complaints or inquiries. (Plaintiffs' First Request to Produce, attached hereto as Ex. A, at 10-11). These requests were specifically served to ensure the truthfulness of Wells Fargo's

counsels' statement that all responsive documents specifically regarding Plaintiffs were produced with the required Initial Disclosures. Plaintiffs were careful to define the term "document" to include sound recordings. (*Id.* at 2). Wells Fargo's responses to these requests were due on September 8, 2011. Plaintiffs' counsel agreed to extend the deadline to September 12, 2011 and asked that Wells Fargo produce whatever documents or responses they could at that time. Counsel for Wells Fargo did not respond to this request.

Despite the Parties' agreement to extend the deadline to September 12, 2011, Wells Fargo, without conferring with Plaintiffs' counsel, moved to extend the time for their discovery responses to September 28, 2011, the same day for which the parties had scheduled the deposition of Wells Fargo Insurance's corporate representative and one day *after* the agreed date for the deposition of Wells Fargo Bank's representative. The Court denied Wells Fargo's request and ordered that it respond to Plaintiffs' requests by September 16, 2011. [D.E. 66]. When that day came, despite multiple extensions and the Court's order, Wells Fargo responded by objecting to *all* of Plaintiffs' requests without producing a single responsive document. When Wells Fargo did finally produce documents responsive to the requests, they produced only a handful of documents that related only to the Named Plaintiffs.[2]

With the expert discovery deadline looming, on October 12, 2011, Plaintiffs were forced to file a motion to compel Wells Fargo to produce just six of the categories of documents that Wells Fargo had withheld. [D.E. 97]. Magistrate Judge Simonton held a telephonic hearing on Plaintiffs' motion the next day. At the hearing, Counsel for Wells Fargo took contradictory positions (the information is public but we cannot produce it) and professed not to understand the

---

[2] However, the aforementioned recordings, as well as the "loan notes" related to the Named Plaintiffs, were not included in this production.

4

scope of the most of the documents Plaintiffs were requesting.[3] Wells Fargo's conduct led the Court to remark:

> I have to tell you that, quite frankly, listening to you, Mr. Winston, and reading the requests and your responses and noting the history of the litigation with respect to Wells Fargo Insurance, reading the deposition transcript to the extent that I did, I have never felt more strongly that a defendant is stonewalling the process and acting in bad faith.
>
> Well, there was one case where I think I did feel, I did feel that way . . . where I recommended a default be entered against a defendant who I felt was stonewalling and being disingenuous with the court. . . . ***I think Wells Fargo is doing everything in its power to keep the plaintiffs from getting sufficient information regarding their forced placed insurance*** so that they will not be able have any expert report.

Hr'g Tr. of Oct. 13, 2011, attached hereto as Ex. B, at 24 (emphasis added).

Judge Simonton ordered Wells Fargo to produce the requested documents or provide affidavits as to why the documents could not be produced.[4] *Id*. at 42-44. Wells Fargo filed two affidavits in response, both of which included misrepresentations as to why the requested

---

[3] Referring to Plaintiffs' Category 1 request, seeking the rate and rule manuals for certain states, counsel for Wells Fargo argued that "all of the information they are asking for, if they are looking for the rates is available in the Internet." [Ex. B at 14]. At the same time, counsel for Wells Fargo contended that this publicly available information was confidential and could not be produced: "there is a contract with Assurant that requires that Wells Fargo Bank and/or Wells Fargo Insurance keep the information confidential, and that they not disclose it, and Assurant is not here to fight this fight, Your Honor." *Id.* The Court noted that this was an "inherently contradictory statement," that Wells Fargo had never called Assurant to advise about the request or the Motion, and ordered that the pricing material be produced. *Id.* at 14, 21-22.

[4] Among the documents Wells Fargo was ordered to produce were documents from another of Wells Fargo's lender-placed vendors, Assurant, Inc. (Ex. B at 36-43). Counsel for Wells Fargo informed the Court at the October 13, 2011 hearing that the documents Plaintiffs had requested were proprietary, and that it had not gotten approval from Assurant to produce them. (*Id.* at 36-39). Wells Fargo subsequently produced the Assurant documents pursuant to the Court's order. In a recent filing in a related action, however, counsel for Assurant represented that Assurant had *not* produced any documents in this case, reflecting a lack of awareness of the production of Assurant documents in this action. *See Kunzelmann v. Wells Fargo Bank, N.A.,* Case. No. 11-cv-81373 (S.D. Fla.) (D.E. 20 at 10-11).

documents could not be produced.[5] As a result, Plaintiffs were forced to file a Motion to Compel Documents and for Sanctions. [D.E. 131, 132]. Only after Wells Fargo was threatened with sanctions did they begin to work with the Plaintiffs and produce documents. [D.E. 172]. Still, Wells Fargo did not include any recordings among the documents that they produced.

Wells Fargo has not limited its delay tactics to paper discovery. Wells Fargo produced 30(b)(6) witnesses for deposition only after this Court entered three separate orders mandating that the depositions proceed. [D.E. 74, 83, 87]. When the depositions finally took place, Wells Fargo Bank's representative was unprepared and had no knowledge or minimal knowledge of many subject areas that had been noticed. For example, although the deposition was first noticed on August 9, 2011, the witness had not reviewed any documents until the day before the deposition, when she met with counsel. *See* Vanden Branden Dep., September 27, 2011, Ex. C at 26-27, 66. Even then, she reviewed only the deposition notice, the named plaintiffs' mortgages, and lender-placed insurance letters that had been sent to the named plaintiffs. Ex. C at 57-58. She had also reviewed contracts between QBE and Wells Fargo Bank, but only for about five minutes.[6] Ex. C at 25-26, 114-15.

On January 24, 2012, at a telephonic meeting in a related case with counsel for Assurant, Inc., another provider of force-placed policies to Wells Fargo, Plaintiffs' counsel learned for the first time that Wells Fargo has recordings of consumer complaints relating to force-placed insurance. As a result, Plaintiffs' counsel demanded production of the recordings of complaints by the Named Plaintiffs in this case. Wells Fargo's counsel first stated that no such recordings

---

[5] A detailed explanation of the misrepresentations is given in Plaintiffs' Second Motion to Compel that was filed under seal [D.E. 131, 132]. Plaintiffs refer to and incorporate those arguments here.

[6] Wells Fargo Bank subsequently produced an additional 30(b)(6) witness in Miami for deposition and reimbursed counsel for Plaintiffs for fees and costs associated with the first 30(b)(6) deposition.

exist. Plaintiffs wrote to him again, this time demanding that he verify with his client that such statements were true, Wells Fargo's counsel stated: "In any event, I have asked Wells Fargo Bank to re-verify that there are no recordings and will advise once I receive a response."

After further email communication, Wells Fargo's counsel stated he just found out that many recordings for one of the Plaintiffs in fact existed, but that the recordings were never produced because they were somehow blocked by their law firm's spam filter system. Mr. Winston stated as follows:

> … Wells Fargo Bank got back with me late yesterday regarding recorded calls. Their records showed that they emailed a "zip" file with .wav files of calls for Mr. Juarez several months ago for them to be produced. Unfortunately, our records do not show receipt of the email. From our investigation, it appears that because of the file size, file type or for some other reason, the email was blocked at some point before it got here. We had them resend the email yesterday afternoon and it again did not show up so it is not an issue of someone accidentally deleting something. …

Plaintiffs have still not received any confirmation regarding the other class representative. Had Plaintiffs' counsel not learned of these recordings from non-parties and inquired about them, it is likely that their existence would never have come to light. Moreover, it is only through luck and circumstance that Plaintiffs acquired these recordings before the class certification hearing. This Court's original Scheduling Order had the class certification hearing taking place on January 20, 2012, [D.E. 46], which would have been well before Plaintiffs discovered the existence of these recordings. The recordings of the Named Plaintiffs' calls are important to this case, and to certification, because Wells Fargo claims that the Named Plaintiffs are not adequate representatives of the class, and has used the representatives' dealings with Wells Fargo in an attempt to defeat certification. *See* Wells Fargo's Mem. In Opp. To Pls.' Mot. for Class Certification [D.E. 144 at 8] ("Dr. Juarez is no babe-in-the-woods when it comes to lender placed insurance. Over the past few years, he purchased no fewer than six different properties in

7

Florida and Massachusetts, at least four of which had lender placed insurance policies placed on them . . . .  In fact, Dr. Juarez is a walking example of some of the individualized issues that abound in this case."); *see also* [D.E. 144 at 6-9, 13-15].  Yet, at the same time Wells Fargo knowingly deprived Plaintiffs of evidence directly memorializing those interactions.

Additionally, a significant allegation in this action is the interplay between the Defendants and their respective roles in the force-placed insurance process, including consumer communications.  Indeed, Plaintiffs took multiple depositions of all Defendants without the benefit of these recordings.  With class certification discovery originally set to close on September 26, 2011, [D.E. 29], and then amended to close on November 11, 2011 [D.E. 46], Wells Fargo has ensured that Plaintiffs cannot, prior to the class certification hearing, ascertain to whom these calls were with (Wells Fargo or QBE entities) or challenge the representations made in the calls by the representatives of the Defendants.[7]  This represents a real and identifiable prejudice inflicted upon the Plaintiffs. The well-documented evidence of Wells Fargo's gamesmanship and obstruction supports the imposition of sanctions here.[8]

## ARGUMENT

"A court may impose sanctions for litigation misconduct under its inherent power." *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1306 (11th Cir. 2009) (internal citations omitted).  "The court's inherent power derives from the court's need to

---

[7] If it is true that these representatives are affiliated with the QBE Entities, then it would have also been QBE Entities' duty to disclose and produce the recordings as well.

[8] Indeed, it appears that their attempts to frustrate Plaintiffs' discovery has not ended.  Plaintiffs recently noticed several Wells Fargo officers for deposition.  Wells Fargo's attorneys responded by informing Plaintiffs' counsel which one individual they would allow Plaintiffs to depose based upon their interpretation of what the "case is centered around."  Defendants' counsels' refusal to produce deponents based upon their unilateral assertion of what the issues are in this case is a blatant violation of Federal Rule of Civil Procedure 26, and indeed, this Court's own Order [D.E. 98], and further warrants the imposition of sanctions here.

Case 1:11-cv-21233-RNS Document 196 Entered on FLSD Docket 02/08/2012 Page 9 of 14

CASE NO. 1:11-CV-21233-SCOLA/BANDSTRA

manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases." *Id*. (citation and internal quotations omitted). Absent such power, the Court would be impotent to manage the expeditious disposition of its docket, enforce its orders, and guard the integrity of its proceedings. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 45 (1991). "The key to unlocking a court's inherent power is a finding of bad faith." *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998). A party demonstrates bad faith by, *inter alia*, delaying or disrupting the litigation or hampering enforcement of a court order. *Eagle Hosp. Physicians,* 561 F.3d at 1306.

Federal Rule of Civil Procedure 16 provides that "[o]n motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney ... fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16. The sanctions authorized by Rule 37(b)(2) include the following:

   (i)  directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
  (ii)  prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
 (iii)  striking pleadings in whole or in part;
  (iv)  staying further proceedings until the order is obeyed;
   (v)  dismissing the action or proceeding in whole or in part;
  (vi)  rendering a default judgment against the disobedient party; or
 (vii)  treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A).

This rule gives district judges broad discretion to fashion appropriate sanctions for violation of discovery orders. *Malautea v. Suzuki Motor Co., Ltd.,* 987 F.2d 1536 (11th Cir. 1993). Rule 37 sanctions are imposed not only to prevent unfair prejudice to the litigants but

also to insure the integrity of the discovery process. *Sphinx Int'l, Inc., v. Nat'l Union Fire Ins. Co. of Pitt.,* 2003 WL 24871000, at *8 (M.D. Fla. Mar. 21, 2003) (citation omitted). A district court may impose sanctions pursuant to Federal Rule of Civil Procedure 37 for failing to comply with a discovery order or failing to disclose or supplement information as required by Rule 26. Fed. R. Civ. P. 37.

Wells Fargo's withholding of phone recordings continues its pattern of delay and obstruction and warrants the imposition of sanctions. At the start of this litigation and for several months thereafter, Plaintiffs' counsel repeatedly asked Wells Fargo to produce all materials in its possession related to the Named Plaintiffs pursuant to Federal Rule Civil Procedure 26(a). Wells Fargo refused to initially produce the information and stated in the initial disclosures that it was "diligently investigating the claims in this case to determine what, if any, relevant material it may have in its possession" and would "supplement these responses as soon as that information is available." (Wells Fargo Defs.' Initial Disclosures, Ex. D, at 3). The recordings were provided to Plaintiffs long after Wells Fargo had represented to Plaintiffs that all the relevant materials had been produced and only after Plaintiffs learned of their existence from a non-party.

The recordings are also responsive to at least two requests in Plaintiffs' First Request for Production. Plaintiffs requested that Wells Fargo produce "all documents regarding and/or referencing the Named Plaintiffs … including but not limited to all … communications" and "[a]ll documents referencing any complaints or inquiries made by consumers." (Ex. A, at 10-11). Plaintiffs defined "document" to include "any written, printed . . . recorded or otherwise reproduced or stored communication or representation, whether comprised of letters, words,

numbers, data, pictures, sounds or symbols, or any combination thereof."[9] (*Id.* at 2). The recordings are directly responsive to both of these requests.

Moreover, Wells Fargo's attorneys cannot claim in good faith that they had no knowledge that these recordings existed. First, the attorneys were in possession of Wells Fargo's call logs that reflect incoming calls from borrowers. Furthermore, during Plaintiff Juarez's deposition, Wells Fargo's counsel questioned Dr. Juarez about phone calls he had made to Wells Fargo Bank when he learned that insurance had been force-placed on his home, and even referenced a specific call made by Dr. Juarez to the Defendants. (*See* Juarez Dep., Ex. E at 94:14-22; 95:16-22; 142:1-17, 162:8-13 (Nov. 4, 2011)). Now, on the eve of the class certification hearing, although Wells Fargo has produced some recordings, it is not at all clear if it has produced *all* recordings in its possession. Together with the recordings, the Wells Fargo Defendants' counsel produced a spreadsheet identifying 26 separate recordings relating to Dr. Juarez. *See* Ex. F. However, "loan notes"[10] previously produced by counsel reflect other phone communications with Dr. Juarez and other internal phone communications relating to his account. *See* Ex. G. Indeed, the February 25, 2011 phone call about which the Wells Fargo's counsel questioned Dr. Juarez during his deposition was not among the recordings produced and is not listed on Wells Fargo's spreadsheet.

It is also unclear if any recordings related the other Named Plaintiff, Ray Williams, exist. Wells Fargo produced two recordings of Mr. Williams that are unrelated to this case, however, Mr. Williams' loan notes reflect calls made to Wells Fargo Bank relating to the force-placed

---

[9] This definition is consistent with Federal Rule of Civil Procedure 34(a)(1)(A), which specifically provides for the production of "sound recordings" pursuant to a request for production.

[10] The "loan notes" are essentially Wells Fargo Bank's internal record of the history of communications, contact, and other information once a borrower has contacted them with an issue.

11

insurance. Furthermore, Mr. Williams testified that he made numerous calls to Wells Fargo Bank and Defendants' counsel specifically referenced calls made by Mr. Williams to Wells Fargo Bank. (Williams Dep., Ex. H, at 89: 1-25 (Nov. 8, 2011)).

Wells Fargo has done everything possible to obstruct this litigation and run out the clock on discovery. Their withholding of recordings of the Named Plaintiffs' calls is just one more tactic in an ongoing course of misconduct. Their blatant disregard for the Rules of the judiciary and this Court must not go unpunished.

**WHEREFORE**, Plaintiffs respectfully request that the Court enter an Order for Sanctions against Wells Fargo Defendants, compelling Wells Fargo to:

(i) produce an appropriate Wells Fargo representative with knowledge of all the calls and the documents for deposition to be taken Plaintiffs' counsel's offices in Miami;

(ii) produce an appropriate Carlton Fields representative for deposition on the sequence of events on all of the "lost" recordings at Plaintiffs' counsel's offices in Miami;

(iii) produce any previously taken corporate representatives for re-deposing to the extent they have specific knowledge of the audio and missing documents at Plaintiffs' counsel's offices in Miami;

(iv) an extension of the 10 deposition limit so the aforementioned depositions as well as the recently noticed depositions can take place; and,

(v) such other relief as is just and proper, including attorneys' fees and costs.

CASE NO. 1:11-CV-21233-SCOLA/BANDSTRA

## **CERTIFICATE OF GOOD FAITH CONFERENCE**

Pursuant to Local Rule 7.1(a)(3)(A), we hereby certify that counsel for the movant has conferred with Counsel for Wells Fargo in a good faith effort to resolve the issues raised in this motion, but has been unable to resolve the issues.

Respectfully submitted,

/s/ *Adam M. Moskowitz*

Lance A. Harke, P.A.
lharke@harkeclasby.com
Sarah Clasby Engel, P.A.
sengel@harkeclasby.com
Howard M. Bushman, P.A.
hbushman@harkeclasby.com
**HARKE CLASBY & BUSHMAN LLP**
9699 NE Second Avenue
Miami Shores, Florida 33138
Telephone: (305) 536-8220
Facsimile: (305) 536-8229

Adam M. Moskowitz, Esq.
amm@kttlaw.com
Rachel Sullivan, Esq.
rs@kttlaw.com
Robert J. Neary, Esq.
rn@kttlaw.com
**KOZYAK, TROPIN, & THROCKMORTON, P.A.**
2525 Ponce de Leon Blvd., 9th Floor
Coral Gables, FL 33134
Telephone: (305) 372-1800
Facsimile: (305) 372-3508

Chip Merlin, Esq.
cmerlin@merlinlawgroup.com
Mary E. Fortson, Esq.
mfortson@merlinlawgroup.com
Sean M. Shaw, Esq.
sshaw@merlinlawgroup.com
**MERLIN LAW GROUP, P.A.**
777 S. Harbour Island Blvd., Suite 950
Tampa, FL 33602
Telephone: 813-229-1000
Facsimile: 813-229-3692

Jeffrey N. Golant, Esq.
jgolant@jeffreygolantlaw.com
**LAW OFFICES OF JEFFREY N. GOLANT, P.A.**
1000 W. McNab Road, Suite 150
Pompano Beach, FL 33069
Telephone: 954-942-5270
Facsimile: 954-942-5272

*Counsel for Plaintiffs*

CASE NO. 1:11-CV-21233-SCOLA/BANDSTRA

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of February, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

/s/ *Adam M. Moskowitz*

335134/4116-101