**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 11-21233-Civ-SCOLA**

RAY WILLIAMS, *et al.*,

      Plaintiffs,

vs.

WELLS FARGO BANK, N.A., *et al.*,

      Defendants.

_____/

**ORDER DENYING DEFENDANTS' MOTION TO EXCLUDE EXPERT, AND**
**ORDER GRANTING PLAINTIFFS' MOTION TO CERTIFY CLASS ACTION**

THIS MATTER is before the Court on the on the QBE Defendants' Motions to Exclude Expert Witness Briny Birnbaum (ECF Nos. 142 & 150), and the Plaintiff's Corrected Motion for Class Certification (ECF No. 129). For the reasons explained in this order, the Motions to Exclude the Expert are denied and the Motion for Class Certification is granted.

## I. BACKGROUND

In this putative class-action lawsuit, the Plaintiffs have alleged that the Wells Fargo Defendants and the QBE Defendants colluded in a scheme to artificially inflate the premiums charged to homeowners for force-placed insurance on property, after the homeowners self-placed insurance policies had lapsed. The Plaintiffs' claims of unjust enrichment and breach of the covenant of good faith and fair-dealing challenge the alleged manipulation of the force-placed insurance process in general, the payment arrangement between Wells Fargo Bank and the other Defendants, and Wells Fargo Bank's participation in the overall scheme intended to provide illegal kickbacks and commissions to the entities involved.

The Plaintiffs have moved to certify a class, consisting of all borrowers that had mortgages with and/or serviced by Wells Fargo Bank, on property located within the State of Florida, that were charged premiums for a force-placed insurance policy within the applicable statute of limitations through April 7, 2011. The Defendants contend that a class should not be certified in this matter because there are too many individual considerations that must be taken into account as to each putative class-member. Relatedly, the Defendants have moved to exclude

the testimony of the Plaintiffs' expert, offered in support of their request to certify a class.  On February 9, 2012, the Court held a hearing on the parties' arguments regarding class certification.  The Motion for class certification was initially briefed based on the Plaintiffs' proposed nationwide class.  After the briefing, but before the hearing, the Plaintiffs revised the proposed class definition, limiting the class to only Florida properties.

## II.  LEGAL STANDARDS

### A.  *Motion To Exclude Expert Witness*

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  A trial court determining the admissibility of expert testimony under Rule 702 must engage in a three-part inquiry, considering whether: "(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in [*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993)]; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.  *Rosenfeld v. Oceania Cruises, Inc.*, 654 F.3d 1190, 1193 (11th Cir. 2011).  "*Daubert* instructs courts to consider the following factors: (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community."  *McCorvey v. Baxter Healthcare Corp*., 298 F.3d 1253, 1256 (11th Cir. 2002).

It is not the role of the trial court to make conclusions about the persuasiveness of the expert's opinions, rather, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."  *Rosenfeld*, 654 F.3d at 1193. (quotations/citations omitted).  "[I]n most cases, objections to the inadequacies of a study are more appropriately considered an objection going to the weight of the evidence rather than its admissibility."  *Id.* (quotations/citations omitted).  Before certifying a class action, a district court must sufficiently

evaluate and weigh expert testimony on the issue of class certification.  *Sher v. Raytheon Co.*, 419 F. App'x 887, 890 (11th Cir. 2011).

**B.  Motion To Certify Class**

The decision to certify a class action is governed by Federal Rule of Civil Procedure 23. The party seeking certification must demonstrate, first, that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  "A class action may be maintained if Rule 23(a) is satisfied and if . . . the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

"The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2550 (2011) (quotations omitted).  Rule 23's "four requirements – numerosity, commonality, typicality, and adequate representation – effectively limit the class claims to those fairly encompassed by the named plaintiff's claims."  *Id.*  (quotations omitted).

### III.DISCUSSION

**A.  Motion To Exclude Expert Witness**

The Plaintiffs have proffered expert witness Birny Birnbaum in support of their Motion for Class Certification.  The parties have agreed that the court can consider the deposition transcripts in lieu of live testimony at the hearing.  Birnbaum has testified on two primary issues: (1) that the Plaintiffs' theory of liability can be established on a class-wide basis (as opposed to requiring an individualized inquiry), and (2) that damages are subject to uniform, class-wide determination.  Birnbaum is an MIT-educated economist with more than twenty years of experience in the insurance industry, including extensive experience in credit-related insurance and force-placed insurance.  He has worked as an expert and analyst for several governmental entities, and has recently testified before Congress regarding force-placed homeowners' insurance.  Birnbaum has provided expert testimony regarding insurance ratemaking and related issues before numerous courts and legislative bodies.  For the past fifteen years, he has worked

3

as a consulting economist in the insurance industry– with a special focus on risk classification and residential property insurance, including force-placed insurance, and he is the author of several publications in this field.

QBE's primary point of contention with Birnbaum's testimony is that he is not a certified actuary.  As a threshold issue, QBE has conceded that its force-placed insurance rates were not set by an actuary, but were arrived at by simply adding 20% to the rates of another insurance company.  (Cert. Hr'g Tr. 20:13 – 21:14; 68:18 – 69:9, Feb. 9, 2012, ECF No. 204.)  It is not necessary for someone to be an actuary to critique this procedure, so long as they have specialized knowledge of the force-placed insurance market.  Based on Birnbaum's background, and his proffered opinions in this matter, the Court finds that it is beyond peradventure that Birnbaum is qualified to give his expert opinions about the excessiveness of QBE's rates.  This is particularly true here where Birnbaum's opinion is that QBE's actions of setting rates based only on what other insurers charge is not an actuarially-sound method of determining reasonable rates.

Even if expertise in actuarial science were required, the record reveals that Birnbaum has previously supervised actuaries, ensuring that the actuarial work was performed competently, and has also performed actuarial analyses himself, while working for the Texas Department of Insurance.  Birnbaum has also previously provided expert testimony on actuarial issues in numerous litigations involving credit-related insurance.  Given this experience, this Court finds that Birnbaum is qualified to give his expert opinion relating to actuarial analysis in this matter.

QBE also challenges the methodologies that were proposed by Birnbaum, namely the component-rating mythology and the loss-ratio methodology.  As the Plaintiffs point out, these are the two methods set out in the National Association of Insurance Commissioner's Creditor Placed Insurance Model Act.  It is hard to conceive how these methods – industry standards – could be deemed unreliable as a matter of law.  The Court finds that the methodologies proposed for use by Birnbaum are sufficiently reliable as they are generally accepted in the insurance community, and can be tested and subject to peer review.

Finally, the Defendants attack Birnbaum on the basis that some of his opinions are not fully formed; Birnbaum had candidly indicated that some of his ultimate conclusions require additional data in the form of discovery productions from the Defendants.  The Defendants make this argument without a hint of irony or embarrassment, given that the Magistrate Judge in this case has previously remarked that she has "never felt more strongly that a defendant is

4

stonewalling the [discovery] process and acting in bad faith." (Mot. to Compel Hr'g 24:1-4, Oct. 13, 2011, ECF No. 102.) The Magistrate Judge went on to note that it was her opinion that "Wells Fargo is doing everything in its power to keep the plaintiffs from getting sufficient information regarding their force-placed insurance so that they will not be able to have any expert report." (*Id.* at 24:15-18.)

In the areas where Birnbaum's opinions are not fully formed, Birnbaum has articulated the manner and methodology that he will be able to use once he receives full and complete disclosure from Wells Fargo and QBE. He has described with specificity the data that he needs to complete his analysis, and had further explained that the records containing the data are standard records kept by an insurance company. Further, Birnbaum has given preliminary opinions based on the limited data that the Defendants have produced to date. These preliminary findings, based on his extensive training and experience, demonstrate his ability to render liability and damage opinions on a class-wide basis.

Having considered the motion, the arguments, the record, and the relevant legal authorities, and having conducted a complete *Daubert* analysis, the Court finds that Birnbaum is qualified to proffer the testimony rendered in this case regarding the class-wide determination of whether the force-placed insurance premiums were excessive, and if so at what rates. The Court further finds that the methodologies proposed by Birnbaum are reliable and that Birnbaum's testimony will assist the trier of fact, through the application of technical and specialized expertise, to understand the evidence and to determine facts in issue. The Defendants' motion to exclude Birnbaum is denied.

### B.  Motion To Certify Class

As a threshold matter, to understand why this matter is appropriate for class certification, the ultimate issue must be clarified. As alleged by the Plaintiffs, this case is about the Wells Fargo Defendants and QBE Defendants collusion, in bad faith, to develop a scheme involving kickbacks and commissions relating to force-placed insurance. This purported scheme was systemic as to all policies of property-insurance that were held by and/or serviced by Wells Fargo Bank. In other words, the alleged unlawful scheme was not specific to any individual borrower, but was organized and implemented uniformly, across the board to any lender whose homeowners' property-insurance policy had lapsed.

1. ___Numerosity___

Federal Rule of Civil Procedure 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  While there is no fixed rule, generally a class size less than twenty-one is inadequate, while a class size of more than forty is adequate.  *Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 489-90 (S.D. Fla. 2003) (citing *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986)).  A plaintiff must present some evidence that the class to be certified will satisfy the numerosity requirement of Rule 23.

At the February 9, 2012 hearing, the Plaintiffs presented evidence that over 20,000 insurance policies were force-placed by Wells Fargo and QBE from 2009 to 2011 in the State of Florida.  (Notice of Filing Exhibits Used At Class Certification 6, ECF No. 198-1 ("Class Cert. Exs.").)  This evidence was not challenged, nor objected to, by Wells Fargo or QBE.  Even accounting for a reduced number of class members due to a revised class definition (as discussed below) the Plaintiffs have met their burden in producing sufficient evidence to establish that the class size in this matter is so numerous that joinder of all members is impracticable.  Even if the reduced class size were only 1% of this figure, it would still render a sufficient amount of class members to warrant certification.

2. ___Commonality___

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (citation omitted). The common contention of injury "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.*  "What matters to class certification . . . is . . . the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation."  *Id.* (citation omitted).

The Plaintiffs argue that all members of the proposed class were injured in the same manner, namely by being charged inflated premiums for the force-placed insurance.  Wells Fargo and QBE argue that although there may be common questions of fact, the answers to those questions will be highly individualized in this matter.  At oral argument, Wells Fargo and QBE argued that different theories of liability may apply to different class members (*e.g.*, the breach of contract claim may apply to class members whose mortgage was held by Wells Fargo while

the unjust enrichment claim may apply to class members who mortgage was merely serviced by Wells Fargo).  The Defendants argue against class certification on the basis that while there may be common questions to this case, there are no common answers.

The essence of this case, as alleged, is a common scheme to systematically, and without any individual consideration, force-place insurance at an excessive rate to every person whose self-placed property insurance had lapsed.  The determination of the truth or falsity of the Plaintiffs' allegations that Wells Fargo and QBE engaged in a scheme to force-place insurance with inflated and excessive premiums will resolve an issue that is central to the validity of each one of the claims in one stroke.

This case is distinguishable from the factual scenario that the Supreme Court addressed in *Dukes* where even if the plaintiffs were able to prove that Wal-Mart's policy had a disparate impact on female employees, each individual plaintiff-employee would still need to establish that she suffered an adverse employment action as a result of that discriminatory policy.  *See Dukes*, 131 S. Ct. at 2552.  Here, the ultimate question of liability is whether the force-placed insurance premiums charged to homeowners were unlawfully inflated and excessive.  If they were, that same answer will apply to every plaintiff in the class.  There will not be a secondary factual inquiry required, as was the case in *Dukes*.  Any distinctions between class-members with respect to theories of liability, as argued by Wells Fargo and QBE, could be adequately addressed through the use of discrete subclasses, if necessary at all.  Accordingly, the Plaintiffs have established that there are questions of law or fact common to the class.

### 3. *Typicality*

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  "To meet the typicality requirement, the named representatives must be able to establish the bulk of the elements of each class member's claims when they prove their own claims."  *Brooks v. S. Bell Tel. & Tel. Co.*, 133 F.R.D. 54, 58 (S.D. Fla. 1990).

Plaintiffs assert that the named class representatives, Ray Williams and Luis Juarez, are typical of members of the class in that their claims arise from the same conduct by Wells Fargo and QBE and are based on the same legal theories as those brought on behalf of the proposed class.  Wells Fargo and QBE focus their arguments on the particular factual circumstances of Williams and Juarez to argue that they are atypical.  Wells Fargo's arguments that Juarez is not

7

in privity with Wells Fargo (and the silent admission that Williams is in privity with Wells Fargo) actually demonstrates that these class representatives are typical of the class as a whole. Some class members have their mortgages held by Wells Fargo, while others have their mortgages serviced by Wells Fargo, the same scenario as Williams and Juarez. It appears to be Plaintiffs' theory that those class members in privity would seek to recover under the breach of contract claim, while those class members not in privity would seek to recover under the unjust enrichment claim. Regardless of which claim a class member were seeking to recover under, however, the theory of liability is identical, namely that Wells Fargo and QBE colluded and charged the class member excessive and inflated insurance premiums for their force-placed insurance.

QBE argues that Williams's and Juarez's claims are not typical of proposed class members who (1) were charged a premium for force-placed insurance but were later refunded, or (2) never paid a premium because their loan was foreclosed upon, or (3) made a claim against their force-placed policy. All of these arguments, however, are moot in light of the class definition adopted by this Court, below. Williams and Juarez are typical of the class in that they were both charged and either paid or still owe Wells Fargo for the alleged excessive and inflated premiums for the force-placed property insurance. The claims of Williams and Juarez are typical of the claims of the class.

### 4. *Adequate Representation*

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." The requirement of adequate representation addresses two issues: "(1) whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation and . . . (2) whether plaintiffs have interests antagonistic to those of the rest of the class." *Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 495 (S.D. Fla. 2003) (citations omitted).

There is no argument that Plaintiffs' counsel are not fully qualified, experienced, and generally able to prosecute this class action. Wells Fargo argues, however, that there are three fundamental conflicts among putative class members. The first purported conflict involves class members who have benefited from the force-placed insurance because they have made claims for damage to their homes to the force-placed carrier. These individuals have been excluded by the class definition adopted by the Court. The next conflict argued by Wells Fargo is class members who have not yet paid, but currently owe, Wells Fargo for the allegedly excessive insurance

premiums.  As pointed out at the February 9, 2012 hearing, these individuals, if the class action is successful, will simply be able to have their obligation reduced – they would not, as Wells Fargo suggests – be required to pay the premiums in order to recover damages in this litigation as a matter of law.  With respect to this second category of class members, Wells Fargo indicated at the February 9, 2012 hearing, that if this class action were permitted to go forward Wells Fargo would change its business practice of permitting these homeowners to maintain their unpaid force-placed insurance premiums in an escrow account, and would proceed against the homeowners, requiring immediate repayment of the force-placed insurance premiums.  (Cert. Hr'g Tr. 49:3-18, Feb. 9, 2012, ECF No. 204.)

The third category of conflicted individuals involves proposed class members who are in default on their mortgage loans.  As argued by Wells Fargo, these individuals will not want to press the issue of whether the premiums they pay for force-placed insurance are excessive when to do so will subject them to foreclosure counterclaims on their mortgages – in other words, Wells Fargo will immediately initiate foreclosure proceedings on any homeowner in default if they choose to exercise their rights through this class action.

Wells Fargo has unabashedly set out its threats to retaliate against any homeowner seeking to avoid the alleged excessive and inflated force-placed insurance premiums through this litigation.  Wells Fargo will not be permitted to create a conflict of interest, where none would otherwise exist, by establishing post-litigation, vindictive business practices.  While it is unclear as to whether those homeowners would have a separate cause of action for the retaliatory actions of Wells Fargo, they will at least be permitted to proceed in this class action.  The Court finds that the representative parties will fairly and adequately protect the interests of the class.

### 5. *Predominance*

After all the requirements of Rule 23(a) have been met, a court must still determine that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  "Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief."  *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir. 2004).

Put simply, if the addition of more plaintiffs to a class requires the presentation of significant amounts of new evidence, that strongly suggests that individual issues (made relevant only through the inclusion of these new class members) are important. . . . . If, on the other hand, the addition of more plaintiffs leaves the quantum of evidence introduced by the plaintiffs as a whole relatively undisturbed, then common issues are likely to predominate.

*Id.* at 1255 (internal citation omitted).

Wells Fargo and QBE argue that Plaintiffs claims for unjust enrichment are not appropriate for class action treatment, citing *Vega v. T-Mobile USA*, 564 F.3d 1256 (11th Cir. 2009). In *Vega* the Eleventh Circuit Court of Appeals found that there was "no evidence that the circumstances under which T-Mobile accepted a benefit from each of the putative class members . . . were common." *Vega*, 564 F.3d at 1275. Wells Fargo and QBE argue that an individuated inquiry will be necessary to determine whether class members were aware that force-placed insurance would be more expensive than self-placed coverage. The Defendants are incorrect in this assertion. The Plaintiffs claim is that Wells Fargo and QBE secretly colluded to artificially and unjustly inflate the cost of the force-placed insurance. Therefore, it is not relevant whether a particular class member was aware that force-placed insurance is generally more expensive because the claim in this case is not just that the force-placed insurance was more expensive, but that the force-placed insurance was artificially and unjustly more expensive due to the illicit actions of Wells Fargo and QBE.

The specific and unique factual allegations in this matter are distinguishable from the cases cited by Wells Fargo and QBE addressing unjust enrichment claims generally. For example, Wells Fargo argues that Juarez's mortgage warns him that the cost of force-placed insurance may significantly exceed the cost of self-placed insurance. Wells Fargo does not, however, argue that Juarez, or any potential class member, was forewarned that force-placed insurance may be unjustly excessive and artificially inflated as a result of Wells Fargo and QBE's deceptive practices. As the Plaintiffs have articulated, "[i]t is not the *amount* of the premiums that Plaintiffs challenge; it is what was included in those amounts after the premiums had been manipulated by Defendants' force-placed scheme." (Pls.' Reply 12, ECF No. 179.)

Wells Fargo also argues extensively that individuated defenses to groups within the proposed class should defeat certification. Specifically, Wells Fargo asserts that individuals who have had a foreclosure judgment entered against them, individuals who have undergone a loan modification, individuals who have entered into a short sale agreement, or individuals who have

had their force-placed insurance cancelled out in full, would all require special and individuated treatment. All of these arguments are moot in light of the Court's revised class definition, set out and adopted below.

Given the nature of the Plaintiffs' allegations, the Court finds that the addition or subtraction of individual plaintiffs within the class will not affect the quantity or quality of the evidence available. Adding additional plaintiffs would not require additional evidence, as it appears that the Plaintiffs would be able to establish their case without any evidence specific to a particular class member based on the nature of the Plaintiffs' theory of liability.

Wells Fargo and QBE argue that class certification should be denied because of the individualized damages issues that exist in this suit. Wells Fargo and QBE concede that individuated damages considerations alone are not sufficient to defeat class certification. The Defendants' argument is that the methods for computing damages will be so substantial as to amount to no method at all. The Plaintiffs have proffered the testimony of their expert witness, Birny Birmbaum, who has opined that, calculating damages will be a straightforward process, and can be applied in a uniform manner across the class. (Report of Birny Birnbaum 4, 21, ECF No. 125-1.) Mr. Birmbaum has also indicated, based on his experience as an insurance regulator and participant in enforcement actions against insurance companies for overcharging consumers, the methodology described in his Report is common for providing restitution to consumers who were overcharged. (*Id.*) The Court finds that the Plaintiffs have met their burden of presenting a plausible economic methodology to demonstrate impact on a class-wide basis.

Finally, the Court finds that resolving the issues raised by the Plaintiffs in a class action would be superior to other available methods to fairly and efficiently resolve this controversy. Since the damage amounts allegedly owed to each individual defendant are relatively low – especially as compared to the costs of prosecuting the types of claims in this case involving complex, multi-level business transactions between sophisticated Defendants – the economic reality is that many of the class members would never be able to prosecute their claims through individual lawsuits. Wells Fargo and QBE's argument regarding manageability is also not convincing. As the Plaintiffs point out, even a large and complex class action lawsuit would be more manageable, from the Court's perspective, than being inundated with thousands of individual lawsuits with overlapping factual allegations and all involving the same proof to establish an identical illicit scheme against the same Defendants. Moreover, the Plaintiffs have

already demonstrated that this case can proceed efficiently, moving from the initial pleading stage to class certification, and conducing significant discovery in a relatively short time.

### IV. CONCLUSION

For the reasons explained in this Order, it is **ORDERED and ADJUDGED** that the Plaintiff's Corrected Motion for Class Certification (ECF No. 129) is **GRANTED**. Relatedly, QBE Defendants' Motions to Exclude Expert Witness Briny Birnbaum (ECF Nos. 142 & 150) are **DENIED**. This Court certifies the following class to proceed under the Counts remaining in the Plaintiffs' Amended Complaint:

> All borrowers that had mortgages with and/or serviced by Wells Fargo Bank, on property located within the State of Florida, that were charged, and who either paid or who still owe, premiums for a force-placed insurance policy within the applicable statute of limitations through April 7, 2011 ("the Class Period"), unless (1) the lender has obtained a foreclosure judgment against the borrower; (2) the borrower has entered into a short-sale agreement with the lender; (3) the borrower has granted a deed in lieu of foreclosure to the lender; (4) the borrower has entered into a loan modification agreement with the lender; (5) the borrower has filed a claim for damages which has been paid in full or part by the force-placed insurer; or, (6) the cost of force-placed insurance was canceled out in full.

Having considered the factors enumerated in Rule 23(g), it is **FURTHER ORDERED** that Kozyak, Tropin & Throckmorton and Harke Clasby & Bushman are appointed as co-lead class counsel. Within fourteen days of this Order, Plaintiffs' class counsel shall submit to the Court a proposed schedule for providing the class members the requisite notice, as outlined in Rule 23(c)(2).

**DONE and ORDERED** in chambers, at Miami, Florida, on February 21, 2012.

_____
**ROBERT N. SCOLA, JR.**
**UNITED STATES DISTRICT JUDGE**

Copies to:
*Counsel of record*